# 09-60973

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. _____

CIV - ALTONAGA
MAGISTRATE JUDGE
BROWN

| | |
|---|---|
| TRANSAMERICA CORPORATION, | ) |
| Plaintiff, | ) |
| v. | ) |
| MONIKER ONLINE SERVICES, LLC; OVERSEE.NET; | ) |
| MONIKER PRIVACY SERVICES, INC.; and JOHN | ) |
| DOES 1-10 a/k/a "H.W. Barnes," "G.H. Wagenaars," | ) |
| "Net41 Media," "Virtual Sky," "Domains Ventures," and | ) |
| "Domain Park Limited," | ) |
| Defendants. | ) |

### COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Transamerica Corporation demands judgment against Defendants, and for its cause of action states as follows.

1.      This is an action for service mark counterfeiting arising from Defendants' surreptitious ownership and use of so-called "pay-per-click" websites displaying spurious depictions of Plaintiff's "Transamerica" service mark with links to third-party websites advertising financial services in competition with Plaintiff's subsidiaries, the following example of which appeared at www.transamericaannuity.com within the period of time relevant to this Complaint:

2.     On information and belief, Defendants have also placed thousands of spurious depictions of Plaintiff's "Transamerica" service mark on websites like the following one at www.ontransamericalifeinsurance.com, having registered the associated domain names to fictitious individuals and nonexistent or shell entities, in a clandestine enterprise to attract consumers by display of the "Transamerica" name and send them to the websites of third parties engaged in the advertising and sale of life insurance:



3.     In addition to service mark counterfeiting within the meaning of Sections 31(1) and 45 of the Federal Trademark Act of 1946, as amended (the "Lanham Act"), U.S.C. §§ 1114(1) and 1127, and 18 U.S.C. § 2320(e), arising from Defendants unlawful conduct over the last four years (hereinafter the "relevant period"), this Complaint alleges service mark infringement and unfair competition under Lanham Act §§ 32(1) and 43(a),

15 U.S.C. § 1114(1) and 1125(e); violation of the Anticybersquatting Consumer Protection Act ("ACPA"), codified at Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); service mark dilution under the Federal Trademark Dilution Act, codified at Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); violation of the Florida anti-dilution statute, Fla.Stat.Ann. § 495.151; violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*; and common law unfair competition.

### Jurisdiction and Venue

4.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338.

5.      This Court has supplemental jurisdiction over Plaintiff's state and common law claims pursuant to 28 U.S.C. § 1367(a), because they form part of the same case and  controversy and derive from a common nucleus of operative facts.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

7.      This Court has personal jurisdiction over Moniker Online Services, LLC, a/k/a Moniker Privacy Services, Inc. (collectively "Moniker"), as Moniker is located, domiciled, doing business and otherwise found in Florida.

8.      This Court has personal jurisdiction over the remaining Defendants as they are doing business in Florida, engaged in business activities directed to Florida, committing a pattern of tortious conduct in Florida, using personal property in Florida as

a means of perpetrating that conduct, and purposefully availing themselves of the opportunity to conduct commercial activities in Florida.

### Parties

9.     Transamerica Corporation is a Delaware corporation with headquarters in Cedar Rapids, Iowa.

10.    On information and belief, Moniker Online Services, LLC is a Florida limited liability company located at 20 S.W. 27th Ave., Suite 201, Pompano Beach, Fl 33069.

11.    On information and belief, "Moniker Privacy Services, Inc." is a fictitious entity employed by Defendants as a so-called "proxy" to conceal the ownership of Internet domain names and websites owned in whole or part and used by Moniker.

12.    On information and belief, Oversee.net is a California corporation located at 515 South Flower Street, 44th Floor, Los Angeles, CA 90071.

13.    On information and belief, Oversee.net owns and controls Moniker, acts in collusion with Moniker for all purposes relevant to this Complaint, and has been unjustly enriched by the unlawful conduct of Moniker and the Doe defendants.

14.    On information and belief, Net41 Media is a defunct Nevada corporation with a former registered office at Business Filings Incorporated, 500 Reno, Nevada 89511, tel. (775) 247-4329, e-mail net41@net41.com, reported by Moniker as the ostensible registrant of the domain name TRANSAMERICALIFEINS.COM during the relevant period.

15.    On information and belief, there is not, and never was, an entity named Net41 Media at either of the street addresses reported by Moniker for that entity during

4

the relevant period, and the telephone number currently reaches a private answering machine.

16.     On information and belief, Net41 Media is a shell company set up by Moniker independently or in collaboration with one or more Doe defendants to hide their ownership of TRANSAMERICALIFEINS.COM.

17.     On information and belief, "H.W. Barnes" is a fictitious individual reported by Moniker as owner of the domain names TRANSAMERICALIFEINS.COM and TRANSAMERICACREDITREPORT.COM during the relevant period, ostensibly located at Van Hogendorpstraat 74, Oisterwijk 89503, The Netherlands, with a telephone number at  +31.36946676 and an e-mail address of hwb@zooreports.com.  Plaintiff's investigation reveals that there is no street named Van Hogendropstraat in Oisterwijk, the reported zip code does not exist, the reported area code does not exist, and the telephone number does not exist, and the domain name ZOOREPORTS.COM leads back to the same false information.

18.     On information and belief, "H.W. Barnes" was set up by Moniker independently or in collaboration with one or more Doe defendants to hide their ownership of the domain names TRANSAMERICALIFEINS.COM and TRANSAMERICACREDITREPORT.COM.

19.     On information and belief, "Virtual Sky" is a fictitious or shell entity that was reported by Moniker as the owner of the Internet domain names TRANSAMERICASERVICES.COM, TRANSAMERICANSERVICE.COM, and TRANSAMERICANSERVICES.COM, ostensibly located at P.O. Box 20543 SMB,

George Town, Grand Cayman 32084, with a telephone and facsimile number at +1.3456734835, and email address virtualsky@gmail.com.

20. On information and belief, "Virtual Sky" was set up by Moniker independently or in collaboration with one or more Doe defendants to hide their ownership TRANSAMERICASERVICES.COM, TRANSAMERICANSERVICE.COM and TRANSAMERICANSERVICES.COM.

21. On information and belief, Domains Ventures is a fictitious or shell entity reported by Moniker during the relevant period as the owner of the Internet domain names TRANSAMERICASERVICES.COM and TRANSAMERICANSERVICE.COM, ostensibly located at 136 Xiaoxue Road, Xiamen, Fujian 361001 China, with a telephone and fax number at +86.252612, and email address domainventures_online@yahoo.com.

22. On information and belief, Domains Ventures was set up by Moniker independently or in collaboration with one or more Doe defendants to hide their ownership of the domain names TRANSAMERICASERVICES.COM and TRANSAMERICANSERVICE.COM.

23. On information and belief, Domain Park Limited is a fictitious or shell entity reported by Moniker as the owner of the internet domain names TRANSAMERICAHITS.NET, ostensibly located at Markgrafenstr., 56, Suite 131, Berlin 10117, Germany, with a telephone number of +1.2676535381, and an e-mail address hostmaster@domainparkltd.com.

24. On information and belief, Domain Park Limited was set up by Moniker independently or in collaboration with one or more Doe defendants to hide their ownership of the Internet domain name TRANSAMERICAHITS.COM.

25.     On information and belief, G.H. Wagenaars is a fictitious individual registered by Moniker as owner of the Internet domain name TRANSAMERICACREDITREPORT.COM, ostensibly located at Van Hogendorpstraat 74, Oisterwijk 5066, The Netherlands, with a telephone number at +31.36946676, all of which information is false and contrived.

26.     On information and belief, G.H. Wagenaars was set up by Moniker independently or in collaboration with one or more Doe defendants to hide their ownership of the Internet domain name TRANSAMERICACREDITREPORT.COM.

27.     Plaintiff is not aware of the true names and capacities of Defendants John Does 1-10, or ABC Corporations 1-10.  On information and belief, these Defendants have colluded with Moniker and Oversee.net in the unlawful conduct described in this Complaint.  Plaintiff will amend the Complaint to allege the names and capacities of these Defendants when ascertained.

28.     On information and belief, each Defendant has acted in concert with Moniker in respect to some or all of the unlawful conduct alleged in this Complaint.

29.     On information and belief, each Defendant was the proxy, alter ego, alias, agent, servant, employee, partner, parent, subsidiary, or joint venturer, of Moniker in respect to some or all of the unlawful conduct alleged in this Complaint.

30.     On information and belief, the unlawful conduct of each Defendant alleged in this Complaint was in the scope of its relationship with Moniker, and each Defendant acted with the knowledge, participation, permission, consent and/or authority of Moniker in respect to some or all of the unlawful conduct alleged in this Complaint.

31.     On information and belief, each Defendant aided and abetted Moniker, and has been aided and abetted by Moniker, in respect to some or all of the unlawful conduct alleged in this Complaint.

### Background

32.     Plaintiff is a holding company for a group of subsidiaries (hereinafter the "Transamerica Companies") engaged in the sale of life insurance, investment and retirement services.

33.     Plaintiff's largest subsidiary, Transamerica Life Insurance Company, has been underwriting insurance through its predecessors since 1906, and had more than $1.1 trillion of insurance in force as of December 31, 2008.

34.     The Transamerica Companies include Transamerica Capital, Inc., a wholesale marketing and sales group that assists financial professionals in providing products to help investors accumulate assets, draw income during retirement, and meet other financial needs; Transamerica Financial Advisors, Inc., a full service broker/dealer; and Transamerica Investment Management, LLC. a provider of investment management services.

35.     The Transamerica Companies operate through marketing divisions and operating units, including Transamerica Reinsurance, engaged in the supply of reinsurance and structured solutions, product development and consulting services to financial service companies in the life and annuity markets; Transamerica Retirement Services, assisting businesses in the structuring of retirement plans for their employees; and Transamerica Worksite Marketing, providing voluntary supplemental products including term life, universal life, cancer, accident, and vision insurance.

36.    The Transamerica Companies and their predecessors have used the name "Transamerica" since 1929 as a trade name and service mark.

37.    Plaintiff owns the following United States service mark registrations, copies of which are appended to this Complaint as Exhibit A:

| Mark | Reg. No. | Services |
|------|----------|----------|
| **TRANSAMERICA** | 718,353 (7/11/1961) | Consultation and advice to others in respect to corporate management having to do with questions of policy and the coordination of corporate policies and activities, in Class 35 (first use 1/1929) |
| **TRANSAMERICA** | 718,358 (7/11/1961) | Consultation and advice in respect to investment of monies of others, in Class 35 (first use 1/1929) |
| **TRANSAMERICA** | 831,626 (7/4/1967) | Underwriting of insurance – namely, life, including accident and health; in Class 36 (first use 7/18/1959) |
| **TRANSAMERICA** | 978,808 (2/12/1974) | Financial services rendered to others – namely, insurance underwriting and investment services, in Class 35 (first use 1958) |
| **TRANSAMERICA** | 1,129,244 (1/15/1980) | Business forms, house organ, corporate reports and bulletins issued periodically, and employee and corporate directories, in Class 16 (first use 3/1978) |
| **TRANSAMERICA OCCIDENTAL LIFE** | 1,240,567 (5/31/1983) | Underwriting of life insurance, in Class 36 (first use 9/1/1981) |
| TRANSAMERICA | 1,635,681 (2/19/1991) | Financial consulting services; investment management and counseling services; mutual funds management sales and distribution services; insurance premium financing services; insurance underwriting services for life and disability insurance; life and property and casualty reinsurance services; insurance agency services; surety bonding services; underwriting services for variable life insurance and variable annuity products, in Class 36 (first use 9/30/1989) |

| Mark | Reg. No. | Services |
|---|---|---|
| TRANSAMERICA | 1,635,682 (2/19/1991) | Financial consulting services; investment management and counseling services; mutual funds management sales and distribution services; insurance premium financing services; insurance underwriting services for life and disability insurance; life and property and casualty reinsurance services; insurance agency services; surety bonding services; underwriting services for variable life insurance and variable annuity products, in Class 36 (first use 9/30/1989) |
| TRANSAMERICA REINSURANCE | 1,869,955 (12/27/1994) | Reinsurance underwriting services in the field of life insurance, in Class 36 (first use 5/1993) |
| TRANSAMERICA TRIBUTE | 2,224,207 (2/16/1999) | Life insurance underwriting services, in Class 36 (first use 1/8/1998) |
| TRANSAMERICA CLASSIC | 2,228,202 (3/2/1999) | Annuity underwriting services, in Class 36 (first use 1/8/1998) |
| TRANSAMERICA BOUNTY | 2,246,732 (5/18/1999) | Life insurance and annuity underwriting services, in Class 36 (first use 10/19/1998) |
| TRANSAMERICA PLAN MAXIMIZER | 2,284,121 (10/5/1999) | Life insurance and annuity underwriting services and retirement consulting services, in Class 36 (first use 5/26/1998) |
| TRANSAMERICA CATALYST | 2,288,612 (10/26/1999) | Life insurance and annuity underwriting services, in Class 36 (first use 3/1/1998) |
| TRANSAMERICA LINEAGE | 2,320,968 (2/22/2000) | Life insurance underwriting services, in Class 36 (first use 3/4/1999) |
| TRANSAMERICA ELITE | 2,458,663 (6/05/2001) | Life insurance underwriting and administration services, in Class 36 (first use 06/01/2000) |
| TRANSAMERICA SECURE REWARDS | 2,486,240 (9/4/2001) | Annuity underwriting services, in Class 36 (first use 2/1/2000) |
| TRANSAMERICA PLAN PLUS | 2,609,854 (8/20/2002) | Self-directed stock brokerage account services offered to owners of 401(k) pension accounts, in Class 36 (first use 9/30/2000) |
| TRANSAMERICA POLICY STARTER | 2,663,133 (12/17/2002) | Life insurance underwriting services, in Class 36 (first use 2/1/2002) |
| TRANSAMERICA LTC PLUS | 2,688,175 (2/18/2003) | Insurance underwriting and administration in the field of chronic health care, in Class 36 (first use 6/1/2001) |

| Mark | Reg. No. | Services |
|---|---|---|
| TRANSAMERICA CENTER FOR RETIREMENT STUDY | 3,058,524 (2/14/2006) | Public policy research and analysis of issues in the field of retirement and employee benefits, in Class 35 (first use 11/11/2002)<br><br>Educational services, namely conducting forums and seminars in the field of retirement and employee benefits, in Class 41 (first use 11/11/2002) |
| TRANSAMERICA FULCRUM | 3,062,005 (2/28/2006) | Investment management services, in Class 36 (first use 1/1/2005) |
| TRANSAMERICA BROKER DEALER DIRECT | 3,147,208 (9/26/2006) | Insurance underwriting in the in the field of life insurance offered on a wholesale basis; life, in class 36 (first use 11/1/2004) |
| TRANSAMERICA. MASTER RETIREMENT. | 3,238,735 (5/8/2007) | Administration of retirement plans and investment management services, in Class 36 (first use 8/1/2006) |
| TRANSAMERICA OCCIDENTAL LIFE 金美人壽保險公司 | 3,358,373 (12/25/2007) | Life insurance underwriting services, in Class 36 (first use 5/1/2006) |
| TRANSAMERICA SECURE | 3,430,218 (5/20/2008) | Long term care insurance underwriting services, in Class 36 (first use 6/6/2002) |
| TRANSITIONS BY TRANSAMERICA | 3,430,970 (5/20/2008) | Long term care insurance underwriting services, in Class 36 (first use 10/3/2007) |

38.     Of the registrations pleaded above, all more than six years old are "incontestable" under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thereby constitute conclusive evidence of (i) the registration of the marks; (ii) the validity of the marks; (iii) Plaintiff's ownership of the marks; and (iv) Plaintiff's exclusive right to use the marks in commerce in connection with the identified services, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

39.     The Transamerica Companies have advertised and promoted "Transamerica" as a name and service mark for many years in national consumer

publications such as *Barrons, Businessweek, Forbes, Investor's Business Daily, Kiplingers, Money, Newsweek*, *Sports Illustrated*, *Time*, *U.S. News & World Report,* and *The Wall Street Journal*.

40.     The "Transamerica" name has been advertised for many years on network television, appearing for example on CBS broadcasts of golf tournaments, as well as cable television networks, including A&E, CNBC, CNN and CNN/Headline News, ESPN, Fox News, and the History Channel.

41.     The Transamerica Companies have advertised and promoted "Transamerica" as a name and service mark through newspapers, distribution of direct mailing pieces such as pamphlets, brochures, subscription letters, and other descriptive literature, press releases, office and window signs, and point-of-sale pieces such as counter displays, posters, and the like.

42.     The Transamerica Companies spend millions of dollars every year to advertise and promote "Transamerica" as a name and service mark.

43.     Plaintiff's "Transamerica" name is advertised by the Transamerica Companies at multiple websites including but not limited to www.transamerica.com, www.timllc.com, www.transamericafunds.com, www.transamericaseriestrust.com, www.ta-retirement.com, and www.transamericaworksite.com.

12

44.  Use of the "Transamerica" name by the Transamerica Companies

currently appears as follows on the home page of the website at www.transamerica.com:



45.  After 80 years of substantial and uninterrupted use, combined with

extensive advertising, Plaintiff's "Transamerica" service mark is well known to the

public and is "famous" for all purposes relevant to this Complaint.

46.  Plaintiff actively enforces its rights in the "Transamerica" service mark

particularly where the name is used in connection with consumer fraud.  In the past

twenty years, Plaintiff has brought actions for infringement of the "Transamerica" service

mark in the following cases, each of which resulted in the enforcement of Plaintiff's

rights in the "Transamerica" name:

- *Transamerica Corp. v. Trans America Credit Systems, Inc., et al.,* No. 89-1316 (D.Ariz.)(temporary restraining order and preliminary injunction granted against use of Transamerica name for fraudulent credit marketing scheme)(1989)

- *Transamerica Corporation v. Trans America Financial Corporation et al.,* Civil Action No. 89-1170 (M.D.Fla.) (temporary restraining order and preliminary injunction granted against use of Transamerica name for fraudulent credit marketing scheme)(1989)

- *Transamerica Corp. v. Transamerican Marketing Corp. et al.*, Civil Action File No. 1:91-CV-3170 (N.D.Ga.)(temporary restraining order and preliminary injunction granted against use of Transamerica name for fraudulent telemarketing scheme)(1992)

- *Transamerica Corp. v. Transamerica Equities, Inc. et al.*, Civil Action No. SA CV-92-175 (C.D.Cal.)(temporary restraining order, preliminary and permanent injunction entered against use of Transamerica name for financial fraud, with asset freeze)(1992)

- *Transamerica Corp. v. Thomas W. Mobberley and Transamerica Ventures Corp.*, Civil Action No. 3-93CV-1548 (N.D.Tex.)(consent judgment against infringing use of Transamerica name in solicitation of venture capital) (1993)

- *Transamerica Corp. v. Rosemary Gustafson,* Civil Action No. 93-3095(E.D.La.) (temporary restraining order against service mark counterfeiting with asset seizure)(1993)

- *Transamerica Corp. v. Transamerica Hotel & Resort Services, Inc.*, Civil Action No. 94-0074 (S.D.Fla.)(defendant's use of Transamerica name discontinued by settlement)(1994)

- *Transamerica Corp. v. Transamerica Realty Corp. and Peter L Sibley*, Civil Action No. 95-1170 (S.D.Fla.)(defendant's use of Transamerica name terminated by settlement)(1995)

- *Transamerica Corp. v. Transamerica Securities, Ltd.,* Civil Action No. C2-95-671(S.D.Ohio)(defendant's use of Transamerica name terminated by settlement)(1996)

- *Transamerica Corp. v. Preferred Mortgages Ltd. and Network Technologies & Associates Ltd.,* Case No. CA 98-381 (E.D.Va.)(defendant's ownership of TRANSAMERICALENDING.COM domain name relinquished by settlement)(1998)

- *Transamerica Corp. v. Transamerican Investment Corp.,* Civil Action No. H-000-0891 (S.D.Tex)(defendant's use of Transamerica name terminated by settlement)(1999)

- *Transamerica Corp. v. Rainwater, d/b/a Term Quotes,* Case No. C-01-4664 (N.D.Cal.)(defendant's use of Transamerica name terminated by consent judgment)(2002)

- *Transamerica Corporation v. Cedillo,* Case No. 02-784 (W.D.Mo.)(service mark counterfeiting judgment and follow-up show-cause action resulting in bench warrant)(2002)

- *Transamerica  Corp. v. Michael Orsomarso d/b/a Transamerica Leasing Inc.,* Case No. 04-80134 (S.D.Fla.)(final judgment for service mark counterfeiting awarding statutory damages, costs and attorney fees of $1,079,150, entered December 14, 2004).

- *Transamerica Corp. v. Scott Allen McCuskey et al.,* Case No. 00-65 (W.D.Pa.)(use of Transamerica name terminated by consent judgment)(2004)

- *Transamerica Corp. v. Compana, LLC,* Case No. C-05-00549 (MJJ) (N.D.Calif.)(stipulated permanent injunction against domain name registrar)(2005)

- *Transamerica Corp. v. Transamerica Credit Inc.,* Case No. 6:07-cv-1475 (M.D.Fla.)(use of Transamerica name terminated pursuant to consent decree including payment of attorney fees)(2008)

### **Circumstances Leading to this Dispute**

47.     In 1998, Congress created the Internet Corporation for Assigned Names and Numbers ("ICANN") to administer the Internet Domain Name System (DNS).

48.     Pursuant to a contract with the U.S. Department of Commerce known as the Joint Project Agreement (JPA), ICANN is required to provide for the maintenance of a publicly accessible, searchable database of contact data for the owners of domain names in the generic Top Level Domains (gTLDs), *i.e.,* ".com," ".org," ".net," "info," ".edu,"

15

".biz," and the newer variants coming online. This repository of information is known as the "WhoIs" database.

49.    The WhoIs database is required by the JPA to identify the owners of domain name registrations and to provide accurate contact data for such persons in order to enable members of the public to contact such persons about technical and legal issues relating to those domain names.

50.    The WhoIs database has no single location but exists as a distributed compilation of electronic information collected and reported by registrars for the domain names they have registered.

51.    To engage in domain name registration services, registrars are required to enter into Registration Accreditation Agreements with ICANN that obligate them to ensure accurate and current contact data in the "WhoIs" database for Internet domain names registered by them. However, ICANN concedes that it is unable to enforce this requirement in light of the exponential growth of counterfeit domain names registered to fictitious individuals, non-existent entities, shell companies, and unidentified parties ostensibly located in offshore and far-flung foreign jurisdictions.

52.    Defendant Moniker Online Services, LLC, is accredited by ICANN to register Internet domain names on behalf of third parties and the public.

53.    On information and belief, Moniker has abused its ICANN accreditation and violated its registration accreditation agreement by surreptitiously owning and using, for its own benefit, massive numbers of Internet domain names incorporating and imitating the trademarks and service marks of others, and placing spurious depictions of

those marks on pay-per-click websites such as the one illustrated in Paragraph 1 of this Complaint.

54.     On information and belief, Defendants act in collusion to conceal Moniker's ownership interest in domain names by registering them to fictitious individuals and nonexistent entities, using false and contrived addresses, nonworking telephone numbers and other false data.

55.     In some cases Moniker registers domain names in the name of real individuals who are unaware that they are being used by Defendants as "dummies," and in other cases to real or imagined parties ostensibly located in jurisdictions including Australia, the Bahamas, Barbados, Belize, Belgium, China, Cook Islands, Dominica, Dominican Republic, Estonia, Germany, Gibraltar, Grand Cayman, Greece, India, Ireland, Latvia, Malaysia, the Netherlands, Panama, Russia, Singapore, Ukraine, United Arab Emirates, New Zealand, Peru, Samoa, Spain, Switzerland, Turkey, St. Kitts and Nevis, and the United Kingdom.

56.     For some domain names, Moniker conceals the identity of the ostensible registrant by means of a so-called "proxy" service a/k/a "Moniker Privacy Services, Inc." In respect to these names, the WhoIs database indicates only that they are registered to "Moniker Privacy Services, Inc."

57.     In 1999, ICANN established a quasi-arbitration procedure called the Uniform Dispute Resolution Policy (UDRP) to provide for the recovery of infringing Internet domain names by trademark and service mark owners.

58.     A UDRP complaint may be instituted only against the individual or entity that is identified as the "registrant" of the disputed domain name in the WhoIs database - even if the "registrant" is a fictitious individual or nonexistent entity.

59.     The UDRP, which does not provide for damages or injunctive relief, was instituted in 1999, at a time when there was a single accredited domain name registrar, before the proliferation of ICANN-accredited registrars to a population that now approaches 1,000, and before the advent of pay-per-click advertising and massive surreptitious registration of domain names by registrars such as Moniker.

60.     By using its "proxy service" a/k/a "Moniker Privacy Services, Inc.," Moniker is able to conceal all data about the ownership of a particular domain name until such disclosure is ordered by an arbitration forum in response to a UDRP complaint filed by a trademark or service mark owner involving that particular domain name.

61.     In the manner aforesaid, Moniker uses its "proxy service" to prevent public access to ownership data regarding domain names registered and used by Defendants on a large scale, where an examination of such data -- false though it may be, and indeed by very reason of its falsity – would enable the public to identify patterns that incriminated Moniker in the unlawful scheme described in this Complaint.

62.     Moniker's use of its so-called "proxy service" a/k/a "Moniker Privacy Services, Inc." enables Moniker to distribute the ostensible ownership of domain name registrations truly owned in whole or part by Moniker over a population of fictitious individuals and nonexistent entities without publicly disclosing which domain names are registered to which fictitious individual or nonexistent entity.

63. A cross section of Moniker's "clientele" is seen in a 33-pp. list of 380 UDRP cases appended to this Complaint as Exhibit B in which Moniker was the registrar of the disputed domain names..

64. The list of 380 UDRP cases appended to this Complaint as Exhibit B includes only those decided by the National Arbitration Forum in Minneapolis, MN, one of four principal UDRP arbitration service providers. The actual number of UDRP complaints provoked by Moniker's registration of counterfeit domain names to fictitious individuals, non-existent entities, shell companies and other anonymous parties is at least three times larger.

65. The following "customers" of Moniker ostensibly located in offshore Caribbean jurisdictions are identified in the list of UDRP cases appended to this Complaint as Exhibit C:

- **Domain Admin,** P.O. Box 2331, Roseau, 00152, **Dominica,** tel. +809.7674400530

- **Cinquemille Corp.,** P.O. Box N 7776-348, Templeton Building, Lyford Cay, Nassau, New Providence 9e56, **The Bahamas**, tel. 305-457-7477, m3054574744@hotmail.com

- **Express Corporation c/o  Domain,** Copthall, P.O. Box 2331, Roseau, **Dominica** 00152, tel. +6152169056, express@express.com

- **Forum LLC,** P.O. Box 2331, Roseau 00152, **Dominica,** tel. 809-767-440-0530, forum@connect.dm

- **International Domain Names Inc.,,** International Trading Center, 2nd Floor, Warrens, St. Michael, **Barbados**, tel. 809.2414219601, domains@geosigninternational.com

- **Mighty LLC,** P.O. Box 636, Charlestown, Nevis, **St. Kitts & Nevis,** tel. 484-321-9180, mightyllc@yahoo.com

- **Nevis Domains LLC.,** (variously) 222-3 Main Street, P.O. Box 626, Charlestown, Nevis, **St. Kitts & Nevis**, tel. (variously) +809.484-328-9118, 484-321-8563, e-mail (variously) nevisdomains@gmail.com, nevisdomains@yahoo.com

19

- **Payphone Search LLC,** P.O. Box 8188, Charlestown, Nevis, **St. Kitts & Nevis,** tel. +254.4843289118, payphone@adelphia.net

- **Petronila DeJesus,** Calle Frey Vincente Beltran, Residencial G-25 Apt. H-02, Santo Domingo, **Dominican Republic,** tel. 809-720-4782, udocia@hotmail.com

- **St. Kitts Registry of Olam,** 45-70 Meridian Parkway, **St. Kitts and Nevis, tel.** +809-459-0333, hknames@gmail.com

- **URLPro,** P.O. Box 30521 SMB, George Town, **Grand Cayman** 32084, tel. (variously) 345-673-4935, 345-683- 9853, email (variously) virtualsky@gmail.com, urlpro2000@yahoo.com

- **Virtual Sky,** P.O. Box 20543 SMB, George Town, **Grand Cayman** 32084, tel. 345-673-4835, virtualsky@gmail.com

66.     The following "customers" of Moniker ostensibly located in China are

identified in the list of UDRP cases appended to this Complaint as Exhibit D:

- **Chen Xianshang,** Nan MA Tou Lu 11-87, Rm. 601 Bldg 28, Shanghai 200126, China, tel. +1.8019386488, DomainNotForSale.Mon@startseek.com

- **Domain Administrator,**  P.O. Box 33422, Hong Kong, China, tel. +852.93433544, Domain Administrator domadm1@gmail.com

- **Domain Asia Ventures,** 255 Xiaoxue Road, Xiamen, Fujian 361001, China, tel. 252612, dnsasia2000@yahoo.com

- **Domains Ventures,** 136 Xiaoxue Road, Xiamen, Fujian 361001 China, tel. 86.252612, domainventures_online@yahoo.com

- **Hong Kong Names LLC.,** Room 2890, 14/G Shanghai Investment Building, Hong Kong,  II 0000, tel. +852.961452187, hknames@gmail.com

- **James Lee,** Shu Lin City, TAIWAN

- **Jan,  Pak Kin Wong ,** Flat H, 62/F, Tower 5, Bellagio, 33 Castle Peak Road, Sham Tseng, NT, 0000 Hong Kong,  tel. +852.36299548, jan@tee.com

- **Ling Shun Shing,** 138 Yi Xue Yuan Rd., Shanghai, China 200032, tel. 01146798987, regmagic@yahoo.com

- **MustNeed.com,** P.O. Box 3506, Taipei, Taiwan 100-00, tel. +886.917557860, domadm@mustneed.com

- **OwnDomain.com,** c/o Yanlin Hu,  1-2105, Bldg.2, No.27 Zeng Guang Road, Haidian Dist.,  Beijing,  100037, China,  tel. +86.13911627676, sales@owndomain.com

- **Registrant,** P.O. Box 71826,  KCPO, Hong Kong 852, tel. +852.25255525, info@fashionid.com

- **Role, Manage** c/o Administration Local, P.O. Box 33180, Hong Kong, tel. +1.5225434601, manage_tech@yahoo.com

- **Surio Mario Martinez Juarez Ferdinando,** Fudan University, 220 Handan Rd., Shanghai 200433, China, tel. +86.13671766804, 12SurioMarioMartinezHuarezFerdinandoJdeNesePytelSbrouky@startseek.com

- **Totto Cutugno,** Huai Hai Rd 12, Shanghai FM 20000 China, tel. +86.23564578, ubbish@startseek.com[

- **Web Domain Names,** 777 Mo Xue Fang Road, Shanghai, China 435002, tel. 0115883301, fax 0115883302, artaxxa@yahoo.com

- **Ultimate Search,** GPO Box 7862 Central, Hong Kong, HK 0000, c/o John B. Berryhill, PA

67.     On information and belief, the majority or substantial entirety of UDRP cases listed in Exhibit B involved counterfeit Internet domain names registered by Moniker to fictitious, anonymous and unaccountable individuals and entities.

68.     On information and belief, the majority or substantial entirety of Internet domain names registered by Moniker are owned in the name of fictitious, anonymous and unaccountable individuals and entities.

69.     On information and belief, the majority or substantial entirety of Moniker's income is derived from the registration of counterfeit domain names in the name of fictitious anonymous and unaccountable individuals and entities.

70.     On information and belief, Moniker is currently the registrar for approximately 2.5 million Internet domain names, the majority or substantial entirety of which are used by Moniker and owned in whole or part by Moniker in the unlawful manner alleged in this Complaint.

71.     On information and belief, Moniker has registered the majority or substantial entirety of its 2.5 million Internet domain names by means of false and

21

fraudulent ownership information communicated by Moniker in the form of wire

transmissions within the meaning of 18 U.S.C. § 1343.

## Defendants' Pay-Per-Click Advertising Websites

72.   Defendant's counterfeit domain names include the following names

incorporating Plaintiff's "Transamerica" service mark, all registered and used by

Moniker independently or in collaboration of one or more Doe defendant for fictitious

and anonymous websites featuring the advertising and sale of life insurance and financial

services:

| Domain Name | Date | Ostensible Registrant |
|---|---|---|
| **TRANSAMERICALIFEINS.COM** | 11/13/2007 | **Net41 Media,** 140 University Terr., Bldg. A, Reno, NV 89503, tel. 775-247-4329, net41@net41.com |
| | 5/10/2008 | **Net41 Media,** 483 E. 9th St., Apt. A, Reno, NV 89503, tel. 7752479899, net41@net41.com |
| | 9/8/2008 | **H.W. Barnes,** Van Hogendorpstraat 74, Oisterwijk, NB 5066, The Netherlands, Tel.  +31.36946676, hwb@zooreports.com |
| | 6/3/2009 - Present | **Moniker Privacy Services,** 20 SW 27th Ave., Suite 201, Pompano Beach, FL 33069, tel.  954-984-8445, Fax  954-969-9155, transamericalifeins.com@domainservice.com |
| **TRANSAMERICAANNUITY.COM** | 2/13/2006 - 6/2/2008 | **Moniker Privacy Services,** 20 SW 27th Ave., Suite 201, Pompano Beach, FL 33069, tel.  954-984-8445, Fax  954-969-9155, transamericaannuity.com@domainservice.com |
| **TRANSAMERICAOCCIDENTAL.COM** | 11/29/2007 - Present | **Moniker Privacy Services,** 20 SW 27th Ave., Suite 201, Pompano Beach, FL 33069, tel.  954-984-8445, Fax  954-969-9155, transamericaoccidental.com@domainservice.com |
| **TRANSAMERICASERVICES.COM** | 7/19/2007 | **Virtual Sky,** P.O. Box 20543 SMB, George Town, Grand Cayman 32084, Cayman Islands, tel. +1.3456734835, fax +1.3456734835, virtualsky@gmail.com |
| | 3/11/2008 2/20/2009 | **Domains Ventures,** 136 Xiaoxue Road, Xiamen, Fujian 361001, China, tel. +86.252612, fax: +86.252612, domainventures_online@yahoo.com |

| Domain Name | Date | Ostensible Registrant |
|---|---|---|
| TRANSAMERICANSERVICE.COM | 8/24/2007 | **Virtual Sky**, P.O. Box 20543 SMB, George Town, Grand Cayman 32084, Cayman Islands, tel. +1.3456734835, fax +1.3456734835, virtualsky@gmail.com |
| | 3/14/2008 - 5/17/2009 | **Domains Ventures**, 136 Xiaoxue Road, Xiamen, Fujian 361001, China, tel. +86.252612, fax: +86.252612, domainventures_online@yahoo.com |
| TRANSAMERICANSERVICES.COM | 12/28/2007 - 2/4/2009 | **Virtual Sky**, P.O. Box 20543 SMB, George Town, Grand Cayman 32084, Cayman Islands, tel. +1.3456734835, fax +1.3456734835, virtualsky@gmail.com |
| TRANSAMERICAHITS.NET | 1/11/2008 - Present | **Domain Park Limited**, Markgrafenstr. 56, Suite 131, Berlin 10117, Germany, tel. +1.2676535381, hostmaster@domainparkltd.com |
| TRANSAMERICACREDITREPORT.COM | 4/12/2008 | **Network Fourty-One**, 483 E. 9th St., Apt. A, Reno, NV 89503, tel. 775-247-4329net41@net41.com |
| | 9/5/2008 | **G.H. Wagenaars**, Van Hogendorpstraat 74, Oisterwijk, 5066 The Netherlands, tel. +31.36946676, net41@net41.com |
| | 4/20/2009 - Present | **H.W. Barnes**, Van Hogendorpstraat 74, Oisterwijk, NB 5066, The Netherlands, Tel. +31.36946676, hwb@zooreports.com |
| TRANSAMERICANIDEX.COM | 11/28/2007 - 1/20/2009 | **Moniker Privacy Services**, 20 SW 27th Ave., Suite 201, Pompano Beach, FL 33069, tel. 954-984-8445, Fax 954-969-9155, transamericaoccidental.com@domainservice.com |

73.    On information and belief, each of the ostensible registrants listed in the preceding paragraph is a fictitious individual, fictitious or shell entity, or has acted in collusion with Moniker as an agent, partner, joint venturer, collaborator and conspirator with Moniker, or all of the above, for the purpose of concealing Defendants' individual and collective ownership interests in such counterfeit domain names and enabling Defendants to evade responsibility for their unlawful conduct.

74.    The UDRP cases recounted in Exhibit B to this Complaint and the customer lists appended as Exhibits C and D, in the context of all the evidence, confirm that Moniker is engaged in a conspiracy with the Doe defendants to disguise the

ownership of counterfeit domain names, evade the jurisdiction of the United States courts, and control or contribute to service mark counterfeiting by the Doe defendants.

75.     The UDRP cases listed in Exhibit B to this Complaint, without more, show that Moniker has continued to register counterfeit domains to "Domains Ventures" of Fujian, China, ostensible owner of  TRANSAMERICASERVICE.COM and TRANSAMERICASERVICES.COM during the relevant period, long after it would have been apparent to any registrar in Moniker's position that its "customer" was using Moniker's services to engage in trademark and service mark counterfeiting.  As seen in Exhibit B, Moniker was ordered to transfer domain name registrations ostensibly owned by "Domains Ventures" in the following UDRP cases decided by one arbitration service provider alone:

| Case No. | Domain Name(s) | Appearance | Decision | Date |
|---|---|---|---|---|
| 497773 | techron.com | No | Transferred | 8/2/2005 |
| 514786 | aarppharmacyservices.com | No | Transferred | 8/25/2005 |
| 520513 | mortageit.com | No | Transferred | 9/6/2005 |
| 586868 | searschoiceawards.com, kenmoreparts.com | No | Transferred | 12/6/2005 |
| 593976 | harlandcheck.com | No | Transferred | 12/29/2005 |
| 602992 | greatalaskanholiday.com | No | Transferred | 1/12/2006 |
| 606444 | wwwdowneysavings.com | No | Transferred | 1/24/2006 |
| 637373 | wwwkohler.com | No | Transferred | 3/21/2006 |
| 649856 | homedepotgiftcard.com | No | Transferred | 4/6/2006 |
| 653329 | myjdaccount.com | No | Transferred | 4/19/2006 |
| 654538 | ticketwebb.com | No | Transferred | 4/20/2006 |
| 657202 | aigautoservices.com | No | Transferred | 4/25/2006 |
| 659767 | stienersports.com | No | Transferred | 5/1/2006 |

| Case No. | Domain Name(s) | Appearance | Decision | Date |
|---|---|---|---|---|
| 669924 | honeywellcsplans.com | No | Transferred | 5/9/2006 |
| 671035 | targetcreditcards.com | No | Transferred | 5/15/2006 |
| 712049 | allegiantairways.com | No | Transferred | 6/29/2006 |
| 714949 | privelege.com | No | Transferred | 7/13/2006 |
| 720783 | elanhomesystem.com | No | Transferred | 7/10/2006 |
| 741637 | prudental.com | No | Transferred | 8/18/2006 |
| 741765 | greatjobsmarriott.com | No | Transferred | 8/16/2006 |
| 758967 | wwwcitimortgage.com | No | Transferred | 9/20/2006 |
| 778967 | wwwlifescan.com | No | Transferred | 10/11/2006 |
| 781846 | tablethotel.com | No | Transferred | 10/10/2006 |
| 785534 | enterpriseautosales.com | No | Transferred | 10/11/2006 |
| 810215 | yourwellsmortgage.com | No | Transferred | 11/14/2006 |
| 874258 | citibusinesscreditcard.com | No | Transferred | 2/14/2007 |
| 1045211 | smallbusinessdnb.com | No | Transferred | 9/5/2007 |
| 1108672 | ctizensbank.com | No | Transferred | 12/27/2007 |
| 1120102 | applyonlineciticards.com, citibankna.com, citifinancialmorgage.com, citimortgate.com, cititcards.com | No | Transferred | 3/14/2008 |
| 1249532 | choiceprivilages.com | No | Transferred | 4/16/2009 |

76.    Defendants' use of counterfeit domain names and websites incorporating Plaintiff's "Transamerica" service mark is illustrated at www.transamericalifeins.com, which, during the period of time relevant to this Complaint, displayed the following two spurious depictions of Plaintiff's "Transamerica" service mark:



77.    Upon clicking the first "Transamerica Life Ins. Co." link illustrated above, the consumer is taken to another screen featuring the following spurious depiction of the

"Transamerica" name in the link to a website at <u>www.transamerica.my-life-insured.com</u>:



78.     Plaintiff's investigation reveals that the Internet domain name MY-LIFE-INSURED.COM is currently registered by a third party to a fictitious entity named "My Life Insured," ostensibly located at 655 4th St., San Francisco, California.

79.     On information and belief, the only business located at 655 4th St., San Francisco, California, is a legitimate automobile glass replacement business named "Safelite Autoglass"

80.     In the manner illustrated above, Defendants place advertisements on websites incorporating Plaintiff's "Transamerica" service mark for the purpose of

channeling Internet traffic to the websites of fictitious individuals and entities engaged in the advertising and sale of life insurance and financial services.

81.      Defendants' websites attract consumers who search for the Transamerica Companies or their products by typing the name "Transamerica" into their Internet address bars accompanied by search terms such as "life ins.," "annuity," "Occidental," "services," or "credit report."

82.      After drawing consumers to their websites with spurious depictions of the "Transamerica" name, Defendants send them to websites used for the advertising and sale of life insurance and financial services in competition with the Transamerica Companies.

83.      By its own admission at www.domainsponsor.com, Moniker shares in the receipt of pay-per-click payments from advertising search engines based on the number of "hits" that are sent by Defendants' counterfeit websites, such as www.transamericalifeins.com, to the websites of third-party advertisers whose links appear on Defendants' websites, such as www.transamerica.my-life-insured.com.

84.      The large-scale "bulk registration" of counterfeit domain names is widespread in the Internet domain name registration services industry and is the subject of intense concern among business and consumer groups along with the U.S. government, reflected in the comments submitted to the Department of Commerce by the Coalition for Online Accountability on June 8, 2009, reproduced as Exhibit E to this Complaint.

85.      As a result of fraud and deception by Moniker and other rogue domain name registrars, Plaintiff and other trademark and service mark owners have been

28

overwhelmed by the proliferation of counterfeit websites in recent years registered to fictitious and anonymous individuals, non-existent entities, shell companies and other undisclosed or unaccountable parties.

86.     By 2008, industry experts reported an average of 382,248 new cyber-squatting registrations every thirty days, substantially all registered to fictitious and anonymous individuals, non-existent entities, shell companies, and other undisclosed or unaccountable parties.

87.     The proliferation of counterfeit websites corresponds to the number of new ICANN-accredited registrars during the same period, beginning with one in 1999 (Network Solutions, Inc.), to around 60 in 2003, to almost 1,000 today.

88.     Plaintiff's investigations beginning in around 2004 revealed that the registrars of counterfeit domain name were typically the real parties in interest behind ownership of such names. Plaintiff described these investigations in comments submitted to ICANN on February 8, 2006, reproduced as Exhibit F to this Complaint. The section entitled "Real Life Example" describes the same ring of counterfeit domain name registrars who were subsequently enjoined in *Dell Inc. v. BelgiumDomains LLC et al.,* No. 07-22647 (S.D.Fla.), based in whole or part on the same conduct alleged in this Complaint.

89.     Defendants' conduct has deprived the Transamerica Companies of opportunities for the sale of life insurance and financial services and brought unjust enrichment to Defendants in the form of pay-per-click advertising revenues resulting from spurious depictions of Plaintiff's "Transamerica" service mark.

29

**Moniker's Website at www.ontransamericalifeinsurance.com**

90.      In addition to using spurious depictions of Plaintiff's "Transamerica"

service mark as part of a large-scale operation targeting well known trademarks and

service marks generally, Moniker has also profited from the website illustrated in

Paragraph 2 of this Complaint in what appears to be a separate attack targeted specifically

at well known life insurance underwriters.

91.      On or about January 5, 2007, Moniker registered the Internet domain

name ONTRANSAMERICALIFEINSURANCE.COM to a fictitious individual named

"Jan Stroh," ostensibly located at 847 Metrocentre Blvd., West Palm Beach, FL 33407,

with a telephone number of (407) 476-0715, and a fax number of (407) 476-0727.

Plaintiff's investigation revealed that these telephone and fax numbers were not in

service, that no individual named "Jan Stroh" appeared at or near that location in the

telephone directory or other commercially available databases, and that the ostensible

address in West Palm Beach was occupied by a reputable business with no knowledge

about this domain name.

92.      Defendants used their domain name to set up the website at

www.ontransamericalifeinsurance.com illustrated in Paragraph 2 above.  A 144-page

print-out of this website as of April 28, 2009, is appended to this Complaint as Exhibit G.

93.      As of April 28, 2009, Defendants' website at

www.ontransamericalifeinsurance.com contained 1,307 spurious depictions of Plaintiff's

"Transamerica" name and service mark, with the words "Contact Us" appearing in 49

places accompanied by the name "Transamerica." Those 49 appearances are

accompanied by links to Defendants' "Contact" page appearing as follows:



94.    On information and belief, messages typed by consumers into the

"Comments" boxes on Defendants' "Contact" page above are and were, without the

knowledge of such consumers, sent to Defendants or third parties in collaboration with

Defendants for use in connection with the advertising and sale of life insurance and

financial services in competition with the Transamerica Companies.

95. The false appearance of origin created by the website at www.ontransamericalifeinsurance.com is reinforced by a bogus "Copyright Notice" appearing as follows:

Transamerica Life Insurance

Start planning your life...

Now!

- Life Ins Information
- FAQ Life Insure
- Whole Life Insurance Payment
- Long Term Life Insurance Resource
- Best Term Insurance Policy
- Get A Term Life Insurance Quote

- Instant Life Insure Quote
- Single Premium Life Assurance
- Cheap Whole Life Insurance Brokers
- Company Term Life Insurance

**Copyright Notice**

The content and image files that our corporation has made public on this server are meant for enhance common access to material concerning our collections. The substance of this website is the property of www.ontransamericalifeinsurance.com. The information and all of the information here contained are guarded with the Dispositions of the Intellectual Property Code.

Unless a copyright is displayed, information at this website is within the public area and might be copied, published or in other way used without our permission. We request to be cited in the role of the source of the data and that all photo credits or bylines be similarly credited to the photographer or author as appropriate. The websites' administration gives you permission to use, duplicate and distribute documents and related graphics available at this the Internet web-site so long as: 1. You don't alter or change, in any way, any of the documents or related graphics available from this server. 2. You don't use, reproduce or disseminate, separately from its accompanying content, any graphics from this web-site.

Every company and goods names are trademarks or registered trademarks belonged to their personal holders, and are applied for identification purposes only. If you have any inquiries, please contact our publications department.

96. Although the print-out of www.ontransamericalifeinsurance.com appended as Exhibit G contains 144 pages and 1,307 spurious depictions of the "Transamerica" service mark, this is only the tip of the iceberg, because many of the links illustrated there lead to additional screens that cannot be reproduced to a PDF file but which display additional spurious depictions of the "Transamerica" service mark and lead ultimately to websites owned by fictitious entities engaged in the advertising and sale of life insurance and financial services.

97.    Among other links depicting the "Transamerica" name at

www.ontransamericalifeinsurance.com, a link entitled "Transamerica Life Insurance

Price" appears as follows:



Transamerica Life Insurance Settlement
Transamerica Life Insurance Comparisons
Benefits Life Insurance Policies
Cheap Life Assurance Rate
Quotes For Insurance Life

Transamerica Life Insurance Rating
Free Life Insurance
Life Assurance Research
Transamerica Life Insurance Price

Life Assurance Cover Quotes
A Transamerica Life Insurance Companies
Guarantee Trust Life Insurance
Transamerica Life Insurance Quote Policy
Universal Insurance Coverage Type

plan. Often, you are able to employ the dividends to either cover coverage premiums or acquire extra living insurance coverage.

Keep in mind that the dividends are not certain and, if they are lowered or no longer offered, you may have to cover the planned insurance premium prices to keep the policy plan working. Whole online life ins frequently appeals to people who are looking for a consistent premium, a established life-insurance payment plus a cash value. All promises are based on the claims-paying ability of the issuing insurance corporation.

Universal life (UL) is configured to present more adjustability than whole life. The policy owner has the option to change the timing and amount of the premium debts. You may make big payments (subject to some tariff limits) and, occasionally, you can avoid payments. Of course, insurance premiums paid must be adequate to cover the price of the policy plan, including the fee to extend the life-insurance payment.

Your installments are applied to the surrender value, which earns an interest rate declared by the insurance corporation. The cost of the death payment and administrative expenses corresponding to the policy are deducted, normally monthly, from this cash surrender value. The interest rate affixed to the surrender value might be modified but will not drop under the lowest number pledged in the deal.

Universal life policies typically allow you to adjust the death payoff; but, any increases may need proof of your physical condition. In the event the cash value raises and comes too close to the survivor payment, your death benefit will reflexively rise. This occurs because of specific provisions in the tax rule book. You may withdraw or borrow against the cash surrender value at any time. You might be able to remove part of the surrender value without having the withdrawal treated as a policy advance. It's significant to realize that loans can lessen the life-insurance payment and that loans and/or withdrawals might alter the performance of the life online insurance policy.

If at any time the cash value isn't adequate to pay for the expenses of the policy, the policy will terminate. A lot of universal-life plans, however, are able to be built so that the life-insurance payment can be guaranteed for a while or for the life span of the insured provided the essential premiums are taken care of. All guarantees" under a universal life policy plan are backed by the claims-paying power of the lifetime insure firm.

Variable Universal Life (VUL) is alike in procedure to universal life and often proffers similar adaptability. However, unlike universal lifetime insurance coverage policies, in which the surrender value yields an interest rate, variable universal lives ins allows you to invest the surrender value of the policy in a diversity of fiscal opportunities. Your installments are usually applied to the surrender value, which changes according to the performance of the asset alternatives you choose. The cost of the survivor payment and managerial costs are subtracted, generally each month, from this surrender value. Variable universal life policy plans generally enable you to adjust the survivor payment. But, any extensions might require documentation of your physical condition.

The details of the theme material at this transamerica life insurance article strive to grant you an improved insight on what it really is about.

98.    The link entitled "Transamerica Life Insurance Price" illustrated above

leads in turn to a the following screen containing a link under the caption "Affordable

Life Insurance":



99.    The "Affordable Life Insurance" link above leads in turn to a website at

www.finance-4u.com, as indicated by the following close-up of the previous illustration:



100.   The website at www.finance-4u.com, in turn, is used as follows for the advertising and sale of life insurance and financial services:



101.   Plaintiff's investigation reveals that the Internet domain name FINANCE-4U.COM is registered by Moniker to a fictitious individual named "Alexis Shepard," ostensibly located at 2312 Dedeaux Road, Gulfport, MS 39503, with a telephone number of (228) 872-2697 and a fax number of (228) 872-2673.  That telephone number belongs to an elderly woman with no knowledge about any domain name or other interest in this case; the listed fax number is not in service; and no individual named "Alexis Shepard" is

located in or near Gulfport, Mississippi, according to local telephone directories and

commercially available databases.

102.    Defendants also deceive consumers by counterfeiting the "Transamerica"

service mark in the following vertical column of icons at

www.ontransamericalifeinsurance.com entitled "SAVE HUNDREDS on your life

Insurance":



103. Upon clicking one of the icons entitled "SAVE HUNDREDS on your life

Insurance" at www.ontransamericalifeinsurance.com illustrated in the preceding

paragraph, the consumer is redirected to a website at www.1placeloan.com, which is used

as follows for the advertising and sale of life insurance and financial services:



104. Plaintiff's investigation reveals that the Internet domain name

1PLACELOAN.COM is registered by Moniker to a fictitious individual named

"Agripina Gamboa," ostensibly located at 1001 Stoneybrook, Searcy, AR 72143, with a

telephone number of (501) 523-7720 and a fax number of (501) 523-7737. This

telephone and fax number are not in service, and no individual named Agripina Gamboa

is located in or near Searcy, Arkansas, according to the local telephone directory and commercially available databases.

105.    In the manner illustrated above, Defendants have used their website at www.ontransamericalifeinsurance.com as a gateway to other websites featuring advertisements not only for life insurance in competition with the Transamerica Companies, but also consumer credit and debt reduction services in respect to which consumers are especially vulnerable to fraud.  The fact that these consumer finance websites are themselves registered to fictitious individuals makes them especially dangerous to the public even if, contrary to Plaintiff's findings, they are not surreptitiously owned in whole or part by Moniker and the Doe defendants.

### Other Life Insurance Companies Targeted by Defendants

106.    On information and belief, Moniker's registration of ONTRANSAMERICALIFEINSURANCE.COM was part of a clandestine scheme to target well known life insurance companies.  Between December 26, 2006 and January 5, 2007, Moniker registered the following Internet domain names, each to a separate fictitious individual with a separate false address and separate nonexistent telephone and fax number, each counterfeiting the name of the corresponding insurance company in a manner identical to that at www.ontransamericalifeinsurance.com:

| Domain Name | Fictitious Registrant |
| --- | --- |
| ontransamericalifeinsurance.com | Jan Stroh<br>847 Metrocentre Blvd.<br>West Palm Beach, FL 33407<br>tel. 407.476.0715, fax 407.476.0727 |
| onaiglifeinsurance.com | Judson Agnes<br>937 Westside Rd.<br>Healdsburg, CA 95448<br>tel. 707.433.8700, fax 707.433.8759 |

38

| Domain Name | Fictitious Registrant |
|---|---|
| onaetnalifeinsurance.com | Kane Burdick<br>8300 747th Place<br>Bothell, WA 98011<br>tel. 206.337.2607, fax 206.337.2660 |
| onallstatelifeinsurance.com | Candice Magee<br>8473 Arriba Del Mundo<br>Carmel, CA 93923<br>tel. 831.624.8641, fax 831.624.8611 |
| onguardianlifeinsurance.com | Tajuana Dill<br>4437 Grand Ave.<br>Los Olivos, CA 93441<br>tel. 530.756.6665, fax 530.756.6695 |
| onhartfordlifeinsurance.com | Monroe Cyrus<br>812 Campbell Creek<br>Richardson, TX 55082<br>tel. 792.889.9183, fax 972.889.9146 |
| onjohnhancocklifeinsurance.com | Rachael Marquez<br>9943 W. Dry Creek Rd.<br>Healdsburg, CA 95448<br>tel. 707.431.3161, fax 707.431.3150 |
| onmetropolitanlifeinsurance.com | Christin Bernard<br>4095 Guthridge Court<br>Norcross, GA 30092<br>tel. 770.840.5830, fax 770.840.5828 |
| onnewyorklifeinsurance.com | Channing Aguilar<br>7695 Henry Rd.<br>Napa, CA 94559<br>tel. 707.224.7453, fax 707.224.7416 |
| onpacificlifeinsurance.com | Leonie Isaacson<br>3568 N.E. 75th St.<br>Miami, FL 33132<br>tel. 305.373.3392, fax 305.373.3314 |
| onprudentiallifeinsuranrce.com | Brook Fallon<br>8465 U.S. Hwy. 74 N.<br>Clearwater, FL 34623<br>tel. 727.791.6216, Fax 727.791.6289 |
| onstandardlifeinsurance.com | Judith Blount<br>8456 Pruett Drive<br>Vista, CA 92084<br>tel. 760.940.6880, fax 760.940.6856 |

### Defendants' Other Counterfeit Websites

107.    In addition to websites incorporating Plaintiff's "Transamerica" service

mark in their Internet addresses, Moniker has also caused spurious depictions of

Plaintiff's "Transamerica" service mark to appear on other websites surreptitiously

owned by Defendants, including but not necessarily limited to www.lifeinsurancedd.com,

which appeared as follows during the period of time relevant to this Complaint:



108.   The Internet domain name LIFEINSURANCEDD.COM was, during the

relevant period, registered by Moniker to one "Jayme Young," ostensibly located at 344

West Railroad Street, Seneca, SC 29678, with a telephone number at (205) 217-4509 and

a fax number at (205) 217-4588.  Plaintiff's investigation revealed that this telephone and

fax number were not in service, and that no individual named Jayme Young was located

in or near Seneca, South Carolina according to local telephone directories and commercially available databases.

109. On information and belief, Moniker owned all or part of an interest in the website at www.lifeinsurancedd.com during the relevant period and used that website, independently or in collaboration with one or more Doe defendants, for unlawful purposes similar or identical to those underlying the website at www.ontransamericalifeinsurance.com.

110. On information and belief, Defendants' website at www.insurancedd.com, like their website at www.ontransamericalifeinsurance.com illustrated in Paragraph 2 of this Complaint, contained more than a thousand spurious depictions of Plaintiff's "Transamerica" service mark in links to websites surreptitiously owned by fictitious and anonymous persons – including Defendants themselves, and/or parties yet to be identified acting in collusion with Defendants – all engaged in the advertising and sale of life insurance and financial services in competition with the Transamerica Companies.

111. The second page alone of Defendants' website at www.lifeinsurancedd.com, appearing as follows, contained no less than fifteen spurious depictions of Plaintiff's "Transamerica" service mark during the relevant period, fourteen of which appeared in the caption of links leading to third-party websites used for the

advertising and sale of life insurance and financial services:

    i.    Directions for Transamerica Life Insurance Company - Transamerica Life Insurance Company
    ii.   Informative Benefit Transamerica Life Insurance details - Benefit Transamerica Life Insurance
    iii.  Transamerica Life Insurance Cover
    iv.  Long Term Life Insurance Brokers
    v.   Find Cheap Transamerica Life Insurance`s theory

After these final words, when you have the inside stuff about the transamerica life insurance subject and also its probable influence, you are able to share your thoughts concerning this subject in this service provider`s internet based discussion groups.

 



Purchase Transamerica Life Insurance   ;   Transamerica Life Insurance Information
Deceased Transamerica Life Insurance Policy   ;   Variable Transamerica Life Insurance   ;   Transamerica Life Insurance Coverage
Bargain Transamerica Life Insurance Rates   ;   Settlement Transamerica Life Insurance Policy
Cheap Transamerica Life Insurance   ;   Low Transamerica Life Insurance

## COUNT I

### Federal Service Mark Counterfeiting

      112.    Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

      113.    To conceal their ownership of domain names and websites incorporating and imitating trademarks and service marks owned by Plaintiff and others, Defendants register such domain names to fictitious individuals and nonexistent or shell entities which Defendants hold out to the public as "customers" of Moniker.

      114.    On information and belief, the so-called "customers" to whom these counterfeit domain names are ostensibly registered either do not exist or are acting in

collusion with Moniker to conceal their individual and collective ownership of their counterfeit domain names and associated websites.

115.   Defendants use their counterfeit domain names for Internet websites that collectively reap enormous profits from pay-per-click advertising based on the spurious display of trademarks and service marks owned by Plaintiff and others.

116.   On information and belief, Defendants' profits from the unlawful conduct alleged in this Complaint resulted in a sale of Moniker's business to Oversee.net in or around January 2008 for approximately $70 million.

117.   The $70 million price tag for the sale of Moniker's business to Oversee.net reflects an astounding volume of profits in comparison to the absence of capital investment or other apparent expenses in Moniker's business and the low overhead revealed by a small and unmarked office in Pompano Beach where Moniker is or was located with a total of around 18 employees.

118.   The ability of Defendants to distribute the ostensible ownership of counterfeit domain names over a population of fictitious individuals and nonexistent or shell companies and other entities of doubtful probity in far flung jurisdictions exceeds the capability of Plaintiff and other trademark owners to battle such conduct one domain name at a time, or in proceedings directed against the fictitious individuals and nonexistent entities to whom such names are ostensibly registered.

119.   As illustrated partially in Exhibit B to this Complaint, Moniker has been the Internet domain name registrar of record in over 1,000 UDRP complaints, the majority or substantial entirety of which have resulted in transfer of the disputed Internet domain after the fictitious registrant failed to enter an appearance.  The handful of UDRP

complaints that were unsuccessful failed not because the fictitious registrant entered an appearance or disclosed its identity but because UDRP arbitrators may find that a complainant lacks rights in a name even where the ostensible registrant is a fictitious individual or non-existent entity that fails to enter an appearance.

120.    On information and belief, Moniker monitors the UDRP complaints filed against its ostensible "customers" and engages as a matter of course in direct communications and negotiations with trademark and service mark owners on behalf of those "customers."

121.    While Moniker has been required to transfer counterfeit domain names as a result of more than 1,000 UDRP complaints filed against its "customers," Moniker owns and uses more than 2.5 million domain names in the manner alleged in this Complaint, and is therefore not deterred by the UDRP, or by court decisions granting permanent injunctive relief limited to particular domain names.  For every counterfeit domain name recovered in a UDRP case by a trademark or service mark owner, there are countless other "typosquatting" and "combosquatting" variations available for registration, as illustrated by the list appended as Exhibit H to Complaint which was produced by an program developed by Microsoft called the "Strider Typo-Patrol" which mimics tracking and registration software employed by registrars for the large-scale registration of counterfeit domain names.

122.    On information and belief, Moniker has been named as a defendant in the following civil actions alleging cybersquatting and trademark infringement, the majority or substantial entirety of which have involved domain names registered by Moniker to fictitious individuals and nonexistent entities, all of which have been resolved in favor of

44

the trademark or service mark owner, and none of which, individually or collectively,

have deterred Moniker from the unlawful conduct described in this Complaint:

- *Dell Inc. v. Terrashare LLC, et al.,* 1:05-cv-00658-SS (W.D.Tex., filed 8/18/2005, terminated 3/24/2006)

- *Bellagio, LLC. V. Moniker Online Services LLC et al.,* 2:06-cv-00823-KJD-GWF (D.Nev., filed 7/7/2006, terminated 2/1/2007)

- *The Men's Wearhouse, Inc. v. Moniker Privacy Services et al.,* 4:06-cv-02916 (S.D.Tex., filed 9/13/2006, terminated 12/20/2006)

- *Williams-Sonoma, Inc. v. Friendfinder, Inc., et al.*, 3:06-cv-06572-JSW (N.D.Cal., filed 10/20/2006, terminated 5/5/2008)

- *Guardian Pool Fence Systems, Inc. v. Moniker Online Services LLC,* 2:07-cv-01292-ODW-PLA (C.D.Cal., filed 2/26/2007, terminated 8/1/2007)

- *Best Western International, Inc. v. Moniker Online Services, LLC et al.,* 2:07-cv-00663-JAT (D.Ariz., filed 3/28/2007, terminated 5/15/2008)

- *California Car Cover Co. v. J.C. Whitney & Co, et al.,* 2:07-cv-02825-PA-MAN (C.D.Cal., filed 4/30/2007, terminated 8/8/2007)

- *Wynn Resorts Holdings, LLC v. Moniker Privacy Services,* 2:07-cv-00714-RLH-PAL (D.Nev., filed 6/1/2007, terminated 9/25/2007)

- *It's Easy, Inc. v. Moniker Privacy Services, Inc. et al*., 1:-07-cv-06212-GEL (S.D.N.Y., filed 7/3/2007, terminated 10/24/2007)

- *The Hartford Fire Insurance Co. v. Moniker Online Services, LLC, and John Does 1-10,* No. 1:07-cv-09729-HB (S.D.N.Y., filed 11/2/2007, terminated 3/18/2008)

- *Omega Eng, Inc. v. Moniker Online Services LLC et al.,* 3:08-cv-00051-AVC (D.Conn., filed 1/11/2008, terminated 8/4/2008)

- *The Mayfield Family Trust v. Moniker Online Services, LLC,* 1:08-cv-00578-RLV (N.D.Ga., filed 2/21/2008, terminated 6/3/2008)

- *The Robert Allen Group, Inc. v. Moniker Online Services, Inc., et al.,* 1:08-cv-05378-SHS (S.D.N.Y., filed 6/12/2008, terminated 9/24/2008)

- *McCarver v. Vivid Entertainment Group LLC et al.*, No. 2:08-cv-06739-DDP-FFM (C.D.Cal., filed 10/14/2008, terminated 2/27/2009).

123.    On information and belief, Moniker has succeeded in evading liability in the majority or substantial entirety of civil actions filed against its "customers" by falsely disavowing its ownership of the disputed domain names and relinquishing them, one at a time, in a never-ending game of "Whac-a-Mole."

124.    Defendants' clandestine ownership of Internet domain names and websites incorporating Plaintiff's "Transamerica" service mark not only causes irreparable harm to Plaintiff but also endangers the public by making it impossible for consumers to identify the source of life insurance and financial services advertised and sold on the Internet.

125.    Defendants' conduct violates the standards of business conduct reflected in the fictitious trade name statutes of the 50 States which require persons engaged in the advertising and sale of products and services to identify themselves so that they are amenable to service of process in actions arising from the advertising and sale of such goods and services, as well as the criminal fictitious name statute at 18 U.S.C. § 1342..

126.    As Defendants have reaped extraordinary profits from the unlawful conduct described in this Complaint and are undeterred by the multiple UDRP complaints and civil injunctive actions that such conduct has provoked, Defendants have no reason to terminate that conduct unless confronted with an award of statutory damages pursuant to the Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104-153, § 7, 110 Stat. 1386 (July 2, 1996), codified at Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

127.    Defendants' depiction of Plaintiff's "Transamerica" service mark in the websites identified in this Complaint are "spurious" within the meaning Section 45 of the

Lanham Act, 15 U.S.C. § 1127, and the criminal counterfeiting statute at 18 U.S.C. § 2320(e)(1)(A), because they are not "genuine or authentic."

128.    Defendants use their spurious depictions of Plaintiff's "Transamerica" service mark for "trafficking in services" within the meaning of the criminal counterfeiting statute at 18 U.S.C. § 2320(e)(1)(A).

129.    The spurious depictions of Plaintiff's "Transamerica" service mark in Defendants' websites are "identical with, or substantially indistinguishable from" the genuine service mark within the meaning of Section 45 of the Lanham Act, 15 U.S.C. § 1127, and the criminal counterfeiting statute at 18 U.S.C. § 2320 (e)(1)(a)(ii).

130.    The services advertised by Defendants with spurious depictions of Plaintiff's "Transamerica" service mark are identical to the services for which that mark is registered within the meaning of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and the criminal counterfeiting statute at 18 U.S.C. § 2320(e)(1)(A)(ii).

131.    Defendants are using spurious depictions of Plaintiff's "Transamerica" service mark "in connection with" the services covered by Plaintiff's federal service mark registrations within the meaning of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and the criminal counterfeiting statute at 18 U.S.C. § 2320(e)(1)(A)(iii).

132.    Defendants' spurious depictions of Plaintiff's "Transamerica" service mark are "likely to cause confusion, to cause mistake, or to deceive" within the meaning of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and the criminal counterfeiting statute at 18 U.S.C. § 2320(e)(1)(A)(iv).

133.    By their acts aforesaid, Defendants have engaged, and are engaged, in the counterfeiting of Plaintiff's "Transamerica" service mark within the meaning of Sections

32(1) and 45 of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1127, and the criminal counterfeiting statute at 18 U.S.C. § 2320.

134.    To carry out their counterfeiting enterprise, Defendants engage in the systematic transmission of false contact data by means of "wire communications" in furtherance of a "scheme" and "artifice to defraud" within the meaning of the federal wire fraud statute at 18 U.S.C. § 1343 and the federal fictitious name statute at 18 U.S.C. § 1342.

135.    As the systematic violation of the federal wire fraud and fictitious name statutes is a necessary practice without which Defendants would be unable to sustain their clandestine enterprise, Defendants are engaged in "pattern of racketeering activity" within the meaning of the Racketeer Influenced and Corrupt Organizations ("RICO") provisions of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961 and 1962(c). Plaintiff reserves the right to amend this Complaint by adding a RICO count pending an opportunity for discovery on that issue.

136.    The irreparable harm to Plaintiff and the public resulting from Defendants' conduct, combined with the willfulness of Defendants and the manifest need for deterrence, warrant broad injunctive relief and an assessment of maximum statutory damages pursuant to the Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104-153, § 7, 110 Stat. 1386 (July 2, 1996), codified at Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c), as well as costs and attorney fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT II

### Contributory Service Mark Counterfeiting

137.    Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

138.    On information and belief, Moniker and Oversee.net advertise their services in the Internet domain name registration industry as "domain profit maximization."

139.    On information and belief, Moniker and Oversee.net own and operate a website at www.domainsponsor.com, where they offer a service called "DomainSponsor."

140.    Moniker and Oversee.net unabashedly describe their "DomainSponsor" service as follows in a service mark application that they filed at the U.S. Patent and Trademark Office on June 14, 2007:

> Online marketing and advertising services; domain monetization services for monetizing web traffic visiting undeveloped domains;

> Parking domain names for others, namely, providing computer services for facilitation of the storage and monetization of domain name addresses; and

> Computer services, namely, analyzing internet traffic for the purpose of optimizing the content and advertisements on domain name pages; providing on-line non-downloadable software for customizing domain pages.

141.    Moniker and Oversee.net advertise their "DomainSponsor" service at

www.domainsponsor.com/product.php as follows:

### Three easy ways to earn with DomainSponsor

### Domain Parking

We create and optimize custom landing pages for each of your domains, and deliver relevant ads and content precisely targeted to your visitors' needs. Then, we pay out shared revenue based on the earnings we secured for your domain.

### Domain Sales

Interested in selling your domains? Our sales services are provided to all DomainSponsor publishers free of charge. Our Domain Sales Tool allows you to set a minimum threshold and then view, accept, and reject offers made for your domain names.

### Referral Program

In the industry's most generous Referral Program, DomainSponsor pays you a bonus of up to 10 percent of the net earnings of any publisher that you refer. There's no limit to how many publishers you can refer.

### A smart partnership

Experience the advanced technology and responsive support of a complete monetization program. DomainSponsor is the leader in domain monetization — we've been in this business from the beginning, and we've continued to innovate to keep our publisher partners performing at the top of the industry.

DomainSponsor provides the industry's only complete optimization package built on simultaneous execution of semantic, behavioral, language, and landing page optimization to earn you more revenue than any other service. And only DomainSponsor can provide the industry's fastest payout: Net 7.

142.    In the manner illustrated above, Moniker and Oversee.net, in addition to

registering counterfeit Internet domain names on their own behalf, use the Internet to

solicit a population of "domainers" who collude with Defendants in the surreptitious

registration of Internet domain names and clandestine ownership of websites incorporating and imitating trademarks and service marks owned by Plaintiff and others, and with whom they share the profits derived from such unlawful conduct.

143.    On information and belief, Moniker and Oversee.net train and instruct their so-called "customers" on the use of counterfeit domain names for pay-per-click websites, and willfully contribute, instigate, encourage, facilitate, enable and assist these "customers" in the surreptitious registration and clandestine ownership of counterfeit domain names and websites.

144.    Moniker has continued to surreptitiously register Internet domain names incorporating and imitating trademarks and service marks owned by Plaintiff and others, even after the "customers" to whom it supplies these services have been required to relinquish Internet domain names in response to repeated UDRP complaints filed by trademark and service mark owners.

145.    By way of example only, Moniker has continued to register domain names for  at least four years to "Domains Ventures," ostensibly located in Xiamen, China, despite the 30 adverse UDRP decisions by a single arbitration service provider listed in Paragraph 75 above in which Moniker was ordered to relinquish the disputed domain names.

146.    By way of additional example, Moniker has continued registering domain names for at least three years to "Virtual Sky," the ostensible owner of three "Transamerica" domain names pleaded in Paragraph 72 above, purportedly located in

Grand Cayman, despite the following UDRP decisions rendered against that entity by one of the arbitration services providers:

| Case No. | Domain Name(s) | Appearance | Decision | Date |
|---|---|---|---|---|
| 452231 | wherethediamondare.com | No | Transferred | 5/19/2005 |
| 535461 | retiredcollection.com | No | Transferred | 9/27/2005 |
| 537465 | rosedisplay.com | No | Transferred | 10/4/2005 |
| 610708 | sharedbooks.com | No | Transferred | 10/4/2005 |
| 611781 | adventurecrafts.com | No | Transferred | 2/1/2006 |
| 616661 | stylistyle.com | No | Transferred | 2/16/2006 |
| 651447 | companycasual.com | No | Transferred | 4/10/2006 |
| 724588 | herbsway.com, herbsaway.com | No | Transferred | 7/17/2006 |
| 931676 | attorneyforyou.com | No | Transferred | 4/20/2007 |
| 956484 | lableworks.com | No | Transferred | 5/23/2007 |
| 1125350 | tourvacations2go.com, resortvacation2go.com | No | Transferred | 2/28/2008 |
| | | | | |

147.    Moniker, by reason of its role as an ICANN-accredited registrar, has the ability and duty to require factually accurate information from its so-called "customers," but Moniker has no intention to exercise that ability or discharge that duty, because doing so would effectively prevent the registration of counterfeit domain names inasmuch as the disclosure of information revealing the true ownership of such names would enable trademark and service mark owners to pursue remedies against the real parties in interest.

148.    On information and belief, Moniker and Oversee.net enjoy a portion of the revenues earned by any "customers" on behalf of whom they may be acting in their surreptitious registration of Internet domain names incorporating and imitating the trademarks and service marks of Plaintiff and others.

149. By reason of their beneficial interest in the Internet domain names and websites incorporating and imitating the trademarks and service marks of Plaintiff and others, Moniker and Oveersee.net are the partners, alter egos, aliases, and joint venturers of the "customers" on behalf of whom they purport to be acting in the clandestine enterprise described in this Complaint. However, to the extent that such "customers" may be acting as well on their own behalf, Moniker and Oversee continue to provide registration services to such "customers," knowing that the counterfeit domain names so registered will be used for pay-per-click websites featuring spurious depictions of trademarks and service marks owned by others, as described in this Complaint.

150. By their acts aforesaid, Defendants are engaged in contributory service mark counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), causing irreparable injury to Plaintiff and the public, and warranting an assessment of statutory damages pursuant to the Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104-153, § 7, 110 Stat. 1386 (July 2, 1996), codified at Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

### COUNT III

### Federal Service Mark Infringement

151. Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

152. Defendants, with the intent to deceive the public, are using in commerce reproductions, counterfeits, copies and colorable imitations of Plaintiff's federally

registered "Transamerica" service mark in connection with the sale, offering for sale, distribution and/or advertising of life insurance and financial services a manner that is likely to cause confusion, mistake, and deception, leading the public falsely to believe that Defendants' services, and the services advertised at Defendants' websites, are the services of the Transamerica Companies, or are sponsored or approved by, or are in some way connected with the Transamerica Companies.

153.   By their acts aforesaid, Defendants are engaged in federal service mark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), causing irreparable harm to Plaintiff and the public and warranting an assessment of treble damages and attorney fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT IV

### Contributory Service Mark Infringement by Moniker and Oversee.net

154.   Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

155.   By their acts aforesaid, Defendants have engaged in contributory service mark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT V

### Cybersquatting

156.    Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

157.    Defendants have registered, and are trafficking in, using, and maintaining Internet domain names incorporating and imitating Plaintiff's federally registered "Transamerica" service mark, with the bad faith intent to profit from the goodwill associated with that mark.

158.    Plaintiff's "Transamerica" service mark was distinctive, and had acquired distinctiveness, long before Defendants registered the Internet domain names identified in this Complaint.

159.    The Internet domain names identified in this Complaint are identical and/or confusingly similar to Plaintiff's "Transamerica" service mark.

160.    Defendants do not have any intellectual property or other rights in the name "Transamerica."

161.    Defendants have never used the name "Transamerica" to identify themselves, and have never been commonly known by the name "Transamerica."

162.    On information and belief, Defendants have never made any use of the name "Transamerica" in connection with the offering or sale of any *bona fide* good or service.

163.    On information and belief, Defendants have never made any *bona fide* fair use of the name "Transamerica" on any website.

55

164.    Defendants registered and used the domain names identified in this Complaint to divert consumers from the Transamerica Companies' websites to websites accessible under those domain names for Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of those websites.

165.    By their acts aforesaid, Defendants have violated the Anticybersquatting Consumer Protection Act ("ACPA"), Pub. L. No. 106-113, 113 Stat. 1501 (1999), codified at Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d), causing irreparable injury to Plaintiff and the public.

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT VI

### Contributory Cybersquatting by Moniker and Oversee.net

166.    Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

167.    On information and belief, Moniker directly orchestrates the process of providing UDRP dispute resolution providers with false registrant information in response to UDRP complaints seeking the recovery of Internet domain names registered by Defendants.

168.    On information and belief, Moniker receives compensation from its customers and/or other third parties for providing this UDRP evasion service.

169.    By its acts aforesaid, Moniker intentionally induces its registrant customers to commence and continue registering, using and trafficking in Internet

domain names incorporating and imitating trademarks and service marks owned by Plaintiff and others.

170. On information and belief, Moniker has supplied and continues to supply domain name registration and renewal services to its registrant "customers" with actual and constructive knowledge that its services are being used to cybersquat on trademarks and service marks owned by Plaintiff and others.

171. On information and belief, Moniker has direct control over the provision of false and misleading information to the public on behalf of its registrant "customers" and monitors the same.

172. By its acts aforesaid, Moniker has engaged, and is engaged, in contributory cybersquatting in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), causing irreparable injury to Plaintiff and the public.

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT VII

### Federal Unfair Competition, False
### Representation and False Designation of Origin

173. Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

174. By their acts aforesaid, Defendants have engaged, and are engaged, in federal unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), causing irreparable injury to Plaintiff and the public.

57

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT VIII

### Federal Dilution

175.    Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

176.    Plaintiff's federally registered "Transamerica" service mark is famous, and was famous before Defendants' first commercial use of the Internet domains identified in this Complaint, within the meaning of the Federal Trademark Dilution Act, codified at Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), based on extensive sales and advertising under that mark.

177.    Defendants' use of Plaintiff's federally registered "Transamerica" service mark has diluted, and is likely to dilute, the distinctive quality of that mark, causing it to be blurred in the minds of consumers and to lose its commercial significance as a designation of source and origin.

178.    Defendants' use of the domain names identified in this Complaint has weakened, and is likely to weaken, the commercial magnetism of Plaintiff's "Transamerica" service mark and to diminish its ability to evoke its original associations.

179.    By their acts aforesaid, Defendants have diluted, and are diluting, the selling power of Plaintiff's "Transamerica" service mark by blurring its uniqueness and singularity, and by tarnishing it with negative associations, in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT IX

### Common Law Unfair Competition

180.    Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

181.    This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

182.    By their acts aforesaid, Defendants have engaged, and are engaged, in common law unfair competition under Florida law.

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT X

### Florida Dilution

183.    Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

184.    This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

185.    Because of its distinctive and fanciful character, its substantial, continuous and exclusive use by Plaintiff for many years, the large sums in advertising expended on it by Plaintiff over the years, including within the State of Florida, and its strong recognition among the purchasing public, Plaintiff's "Transamerica" service mark is famous within the State of Florida, and is entitled to broad protection, with or without a

showing of competition between the parties, and with or without an actual likelihood of confusion between the marks, pursuant to the Florida dilution statute, Fla.Stat.Ann. § 495.151.

186.    Defendants' use of Plaintiff's "Transamerica" service mark has diluted, and is likely to dilute, the distinctive quality of that mark, depriving it of commercial value and injuring the business reputation of Plaintiff, in violation of the Florida dilution statute, Fla.Stat.Ann. § 495.151.  By their actions as described in this Complaint, Defendants willfully intended to trade on Plaintiff's reputation and cause dilution of its famous mark.

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

<h2 style="text-align:center">COUNT XI</h2>

<h3 style="text-align:center">Violation of Florida<br>Deceptive and Unfair Trade Practices Act</h3>

187.    Plaintiff incorporates by reference all of its allegations in the preceding paragraph.

188.    This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

189.    Defendants, by their acts aforesaid, have engaged, and are engaging, in "[u]nfair methods of competition, ... and unfair [and] deceptive acts or practices in the conduct of ... trade or commerce" in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204(1).

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT XII

### Florida Statutory False Advertising

190.    Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

191.    This Court has original jurisdiction over this pendent claim pursuant to 28 .S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

192.    Defendants, by their acts aforesaid, have engaged, and are engaged, in false advertising in violation of Fla. Stat. §§. 817.06 and 817.40-817.47.

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

### PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants as follows:

1.    For an order permanently enjoining Defendants, collectively and individually, and their officers, shareholders, partners, principals, agents, assignees, beneficiaries, successors, licensees, distributors, attorneys, proxies, alter egos, aliases, and all other persons acting in concert with Defendants collectively or individually, from:

(a)    registering or using as a trade name, trademark, service mark, Internet domain name, or portion thereof, any name or term that incorporates, imitates, or is confusingly similar to Plaintiff's "Transamerica" service mark;

(b)    purchasing, selling, or using any form of advertising including keywords or "Adwords" in Internet advertising containing any mark that incorporates, initiates, or is confusingly similar to Plaintiff's "Transamerica" service mark, and requiring Defendants, when purchasing or selling Internet

advertising using keywords, Adwords or the like, to activate the name "Transamerica" as a negative keyword or negative Adword in any Internet advertising purchased, sold or used;

(c)     infringing Plaintiff's "Transamerica" service mark, including all written and spoken terms equivalent or confusingly similar thereto;

(d)     using Plaintiff's "Transamerica" service mark or any name or mark that incorporates, imitates, or is reminiscent of or confusingly similar thereto, for any product or service, or in any letterhead, sign, website, advertising or promotion, e-mail or other sales solicitation or business listing, either in print, broadcast, electronic or other form, either separately or compositely with other words;

(e)     using Plaintiff's "Transamerica" service mark, or any name or mark confusingly similar thereto, as a corporate and/or trade name and/or fictitious name or portion thereof;

(f)     making representations, directly or indirectly, to anyone, anywhere, by any means, including but not limited to unauthorized co-branding, that Defendants are related to, associated or affiliated with, or sponsored, endorsed or approved by Plaintiff;

(g)     in any manner depicting, uttering or imitating Plaintiff's "Transamerica" service mark for the purpose of misappropriating the trade and goodwill of Plaintiff by association, imitation, fraud, mistake or deception; and

(h)     unfairly competing with Plaintiff in any manner.

2.      For an order holding that Defendants' acts described in this Complaint constitute direct and contributory federal service mark counterfeiting under Section 32(1) of the Federal Trademark Act of 1946, as amended (the "Lanham Act", 15 U.S.C. § 1114(1), direct and contributory federal service mark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); direct and contributory violation of the Anticybersquatting Consumer Protection Act ("ACPA"), Pub. L. No. 106-113, 113 Stat. 1501 (1999), codified at Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); violation of the Federal Trademark Dilution Act, codified at Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); violation of the Florida dilution statute, Fla.Stat.Ann. § 495.151 (2008); violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* (2008); and common law unfair competition under Florida law.

3.      For an order directing Defendants to file with this Court and serve upon Plaintiff within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with, and will continue to comply with, the injunction and further orders of this Court.

4.      For an accounting of profits pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

5.      For lost profits and damages in such amount as may appear appropriate following a trial on the merits, pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

6.      For statutory damages in the amount of $100,000 per domain name, pursuant to 15 U.S.C. § 1125(d)(1)(c).

7.      For treble damages pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

8.      For statutory damages pursuant to the Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104-153, § 7, 110 Stat. 1386 (July 2, 1996), codified at Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

9.      For costs and attorney fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a), and Fla.Stat. §501.2105.

10.     For such other and further relief as the Court may deem just and proper

Respectfully submitted this 1st day of July 2009.

s/Ava K. Doppelt
Ava K. Doppelt, Florida Counsel
Florida Bar No. 393738
adoppelt@addmg.com
ALLEN, DYER, DOPPELT,
MILBRATH & GILCHRIST, P.A.
255 South Orange Avenue, Suite 1401
Post Office Box 3791
Orlando, FL 32802-3791
Telephone: (407) 841-2330
Facsimile: (407) 841-2343

Robert H. Thornburg
Florida Bar No. 630829
rthornburg@addmg.com
777 Brickell Avenue, Suite 1114
Miami, FL 33131
Telephone: (305)374-8303
Facsimile: (305)374-8306

**Attorneys for Transamerica Corporation**
**Of Counsel:**
Bruce A. McDonald
bmcdonald@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
750 9th St., N.W., Suite 550
Washington, D.C. 20001
Telephone: (202) 419-4235
Facsimile: (202) 419-3454

## Exhibits

| | |
|---|---|
| **A** | Transamerica U.S. Service Mark Registrations |
| **B** | 380 UDRP Cases w/ Names Registered by Moniker |
| **C** | Ostensible Moniker Customers in Offshore Caribbean Countries |
| **D** | Ostensible Moniker Customers in China |
| **E** | Comments submitted to Department of Commerce by the Coalition for Online Accountability, June 8, 2009 |
| **F** | Transamerica's Comments to ICANN, Feb. 8, 2006 |
| **G** | Print-out, www.ontransamericalifeinsurance.com |
| **H** | Typo-squatting and Combo-squatting Variations of "Transamerica" |