**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:09-cv-60973-CMA

| | |
|---|---|
| TRANSAMERICA CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| MONIKER ONLINE SERVICES, LLC; | ) |
| OVERSEE.NET; MONIKER PRIVACY | ) |
| SERVICES, LLC.; and JOHN DOES 1-15 a/k/a | ) |
| "Domain Park Limited," "Domains Ventures," | ) |
| "G.H. Wagenaars," "H.W. Barnes," "Jan | ) |
| Stroh," "Jayme Young," "Net41 Media" a/k/a | ) |
| Network Fourty-One," "Omgi Media," "Ron | ) |
| Oron," "Swallowlane Holdings Ltd.," and | ) |
| "Virtual Sky," | ) |
| | ) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT – JURY TRIAL DEMANDED**

Plaintiff Transamerica Corporation demands judgment against Defendants, and

for its cause of action states as follows.

**Introduction**

1.      This is an action against Moniker Online Services, LLC ("Moniker

Online"), an Internet domain name registrar, and others, arising from the registrar's

collaboration with a group of fictitious entities and anonymous individuals in the

registration and use of Internet domain names incorporating and imitating registered

trademarks and service marks, including "Transamerica" (hereinafter "counterfeit domain

names").  Plaintiff alleges that Moniker Online knowingly registers counterfeit domain

names to fictitious entities and anonymous individuals for Internet websites that display

unauthorized depictions of trademarks and service marks, including "Transamerica"

(hereinafter "counterfeit websites"), and acts as their authorized licensee and/or otherwise in concert with them in connection with the "monetization" of those domain names, i.e., the receipt of payments from online search engines arising from deceptive advertising that appears on those websites.

2.      Plaintiff alleges that Moniker online collaborates with its customers to shield their identity, thereby concealing the origin and source of goods and services advertised and sold on the Internet, in violation of the Federal Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. §§ 1051 *et seq.*  An example of such a counterfeit website appeared as follows at www.transamericaannuity.com during the period of time relevant to this complaint:



3.      Plaintiff also alleges that Moniker Online knows or is willfully blind to the fact that its customers are fictitious entities and anonymous individuals engaged in trademark and service mark counterfeiting but, in reckless disregard of that fact, continues to provide registration services to them, to conceal their identities, and to act as their authorized licensee, and/or otherwise in concert with them, in a scheme to

"monetize" their counterfeit domain names and profit jointly from the deceptive

advertising that appears at these counterfeit websites.  The result is a business model that

facilitates massive trademark counterfeiting, endangers consumers by concealing the

origin and source of financial services advertised and sold on the Internet, and produces a

plethora of counterfeit websites such as the following one that appeared at

www.ontransamericalifeinsurance.com as of August 2009:



      4.     In addition to service mark counterfeiting under Sections 32(1) and 45 of

the Lanham Act, U.S.C. §§ 1114(1) and 1127, arising from Defendants' unlawful

conduct and collaboration over the last four years (hereinafter the "relevant period"), this

Complaint alleges service mark infringement and unfair competition under Lanham Act

§§ 32(1) and 43(a), 15 U.S.C. § 1114(1) and 1125(a); violation of the Anticybersquatting

Consumer Protection Act ("ACPA"), codified at Section 43(d) of the Lanham Act, 15

U.S.C. § 1125(d); service mark dilution under the Federal Trademark Dilution Act,

codified at Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); violation of the Florida

anti-dilution statute, Fla.Stat. § 495.151; violation of the Florida Deceptive and Unfair

Trade Practices Act, Fla. Stat. § 501.201 *et seq.*; and common law unfair competition.

<u>**Jurisdiction and Venue**</u>

5.      This Court has subject matter jurisdiction over Plaintiff's federal claims

pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and

1338.

6.      This Court has supplemental jurisdiction over Plaintiff's state and

common law claims pursuant to 28 U.S.C. § 1367(a), because they form part of the same

case and controversy and derive from a common nucleus of operative facts.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)

because a substantial part of the events and omissions giving rise to Plaintiff's claims

occurred in this District.

8.      This Court has personal jurisdiction over Moniker Online Services, LLC,

and Moniker Privacy Services, LLC (hereinafter collectively "Moniker"), as they are

located, domiciled, doing business and otherwise found in Florida.

9.      This Court has personal jurisdiction over the remaining Defendants as they

are doing business in Florida, engaged in business activities directed to Florida,

committing a pattern of tortious conduct in Florida, using personal property in Florida as

a means of perpetrating that conduct, and purposefully availing themselves of the

opportunity to conduct commercial activities in Florida.

## **Parties**

10.     Transamerica Corporation is a Delaware corporation with headquarters in Cedar Rapids, Iowa.

11.     On information and belief, Moniker Online Services, LLC is a Florida limited liability company located at 20 S.W. 27th Ave., Suite 201, Pompano Beach, Fl 33069.

12.     On information and belief, "Moniker Privacy Services, LLC." is a Delaware limited liability company formed in June 2008.

13.     On information and belief, Oversee.net is a California corporation located at 515 South Flower Street, 44th Floor, Los Angeles, CA 90071.

14.     On information and belief, Oversee.net owns and controls Moniker, acts in concert with Moniker for all purposes relevant to this Complaint, shares in the profits earned from "monetization" of domain names by Moniker, and has been unjustly enriched by the unlawful conduct of Moniker and the John Doe Defendants.

15.     On information and belief, "Net41 Media" a/k/a "Network Fourty-One," is a defunct Nevada corporation, and was reported as the registered owner of the domain name TRANSAMERICALIFEINS.COM during the relevant period, ostensibly located at 140 University Terrace, Bldg. A, Reno, NV 89503, and later at 483 E. 9th St., Apt. A, Reno, NV 89503.  On information and belief there is not, and during the relevant period was not, any such entity at either of these addresses, although the Sheriff of Washoe County Sheriff was searching for a "Net41" in July 2009 according to the individual who actually lives at the 483 E. 9th Street address.

16.     On information and belief, "H.W. Barnes" is a fictitious entity or anonymous individual, and was reported as the registered owner of the domain names TRANSAMERICALIFEINS.COM and TRANSAMERICACREDITREPORT.COM during the relevant period, ostensibly located at Van Hogendorpstraat 74, Oisterwijk 89503, The Netherlands, tel. +31.36946676, e-mail hwb@zooreports.com, and later at P.O. Box 1462, Rapid City, SD 57709.  On information and belief, there is not, and during the relevant period was not, any such address, telephone number, or individual in the town of Oisterwijk, according to Dutch authorities.  The South Dakota address was reported subsequent to the filing of Plaintiff's original Complaint on July 1, 2009, and is under investigation.

17.     On information and belief, "G.H. Wagenaars" is a fictitious entity or anonymous individual, and was reported as the registered owner of the domain name TRANSAMERICACREDITREPORT.COM during the relevant period, ostensibly located at the same address reported for "H.W. Barnes, namely, Van Hogendorpstraat 74, Oisterwijk 89503, The Netherlands, and later at P.O. Box 1462, Rapid City, SD 57709, same telephone number, +31.36946676, but with the same e-mail address reported for "Net41 Media," namely, net41@net41.com.  On information and belief, there is not, and during the relevant period was not, any such individual in the town of Oisterwijk, according to Dutch authorities.  The South Dakota address, as stated above, was reported subsequent to the filing of Plaintiff's original Complaint on July 1, 2009, and is under investigation.

18.     On information and belief, "Ron Oron" is an individual or entity of unknown origin, and was reported as the registered owner of

ONTRANSAMERICALIFEINSURANCE.COM during the relevant period, ostensibly located at Kerkebosiaan 1, Wassenaar 2243 CM, The Netherlands 2243.  This name and address were reported subsequent to the filing of Plaintiff's original Complaint on July 1, 2009, and are under investigation.

19.     On information and belief, "Omgi Media" is an entity of unknown origin, and was reported as the registered owner of the domain name TRANSAMERICALIFEINS.COM during the relevant period, ostensibly located at P.O. Box 1462, Rapid City, SD 57709.  This name and address were reported subsequent to the filing of Plaintiff's original Complaint on July 1, 2009, and are under investigation.

20.     On information and belief, "Jan Stroh" is a fictitious entity or anonymous individual, and was reported as the registered owner of the domain name ONTRANSAMERICALIFEINSURANCE.COM during the relevant period, ostensibly located at 847 Metrocentre Blvd., West Palm Beach, FL 33407.  On information, there is not, and never was, any such individual at that address.

21.     On information and belief, "Virtual Sky" is a fictitious entity, and was reported as the registered owner of the domain names TRANSAMERICASERVICES.COM, TRANSAMERICANSERVICE.COM, and TRANSAMERICANSERVICES.COM, during the relevant period, ostensibly located at P.O. Box 20543 SMB, George Town, Grand Cayman 32084.  On information and believe, there is no such entity in the Cayman Islands, according to authorities in that jurisdiction.

22.     On information and belief, "Swallowlane Holdings Ltd." is an entity of unknown origin, and was reported as the registered owner of the domain name

TRANSAMERICAHITS.NET during the relevant period, ostensibly located at Hill Mall, Suite 6, Wickams Cay 1, Road Town, Tortola, Virgin Islands VH1120.  This name and address were reported subsequent to the filing of Plaintiff's original Complaint on July 1, 2009, and are under investigation.

23.     On information and belief, "Domains Ventures" is a fictitious entity, and was reported as the registered owner of the domain names TRANSAMERICASERVICES.COM and TRANSAMERICANSERVICE.COM, during the relevant period, ostensibly located at 136 Xiaoxue Road, Xiamen, Fujian 361001 China.  On information and belief, there is not, and during the relevant was not, any such entity at that address, or elsewhere in Xiamen, according to Chinese authorities.

24.     On information and belief, "Domain Park Limited" is a fictitious entity, reported the registered owner of TRANSAMERICAHITS.NET during the relevant period, ostensibly located at Markgrafenstr., 56, Suite 131, Berlin 10117, Germany.  On information and belief, the reported address is a mailbox operated by a service that is contractually prohibited from disclosing the identity of the owner, or from accepting service of process, even service of process by the Berlin Ministry of Justice, which serves as the local organ of the German Central Authority pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (the "Hague Convention").

25.     On information and belief, "Jayme Young" is a fictitious entity or anonymous individual, and was reported as the registered owner of LIFEINSURANCEDD.COM during the relevant period, ostensibly located at 344 West Railroad Street, Seneca, SC 29678.  On information and belief, there is not, and during

the relevant period was not, any such individual located at that address or elsewhere in Seneca, North Carolina.

26.     On information and belief, John Does 1-15 a/k/a "Domain Park Limited," "Domains Ventures," "G.W. Wagenaars," "H.W. Barnes," "Jan Stroh," "Net41 Media" a/k/a "Network Fourty-One," "Omgi Media," "Ron Oron," "Swallowlane Holdings Ltd.," "Virtual Sky," and "Jayme Young" are among a class of customers who act in concert with Moniker to conceal their identities by registering domain names in the guise of fictitious entities and anonymous individuals ostensibly located at false and contrived addresses in jurisdictions ranging from Australia, the Bahamas, Barbados, Belize, Belgium, China, Cook Islands, Dominica, Dominican Republic, Estonia, Germany, Gibraltar, Grand Cayman, Greece, India, Ireland, Latvia, Malaysia, the Netherlands, Panama, Russia, Singapore, Ukraine, United Arab Emirates, New Zealand, Peru, Samoa, Spain, Switzerland, Turkey, St. Kitts and Nevis, to the United Kingdom.

27.     Plaintiff is not aware of the true names and capacities of the parties in interest behind the fictitious entities named in this First Amended Complaint and will amend the same to allege the names and capacities of the John Doe Defendants when discovered.

28.     On information and belief, each John Doe Defendant has acted in concert with Moniker in respect to some or all of the unlawful conduct alleged in this Complaint.

## **Background**

29.     Plaintiff is a holding company for a group of subsidiaries (hereinafter the Transamerica Companies") engaged in the sale of life insurance, investment planning and retirement services.

30.     Plaintiff's largest subsidiary, Transamerica Life Insurance Company, has been underwriting insurance through its predecessors since 1906, and had more than $1.1 trillion of insurance in force as of December 31, 2008.

31.     The Transamerica Companies include Transamerica Capital, Inc., a wholesale marketing and sales group that assists financial professionals in providing products to help investors accumulate assets, draw income during retirement, and meet other financial needs; Transamerica Financial Advisors, Inc., a full service broker/dealer; and Transamerica Investment Management, LLC., a provider of investment management services.

32.     The Transamerica Companies operate through marketing divisions and operating units, including Transamerica Reinsurance, engaged in the supply of reinsurance and structured solutions, product development and consulting services to financial service companies in the life and annuity markets; Transamerica Retirement Services, assisting businesses in the structuring of retirement plans for their employees; and Transamerica Worksite Marketing, providing voluntary supplemental products including term life, universal life, cancer, accident, and vision insurance.

33.     The Transamerica Companies and their predecessors have used the name "Transamerica" since 1929 as a trade name and service mark.

34.     Plaintiff owns the following United States service mark registrations,

copies of which are appended to this Complaint as Exhibit A:

| Mark | Reg. No. | Services |
|------|----------|----------|
| **TRANSAMERICA** | 718,353 (7/11/1961) | Consultation and advice to others in respect to corporate management having to do with questions of policy and the coordination of corporate policies and activities, in Class 35 (first use 1/1929) |
| **TRANSAMERICA** | 718,358 (7/11/1961) | Consultation and advice in respect to investment of monies of others, in Class 35 (first use 1/1929) |
| **TRANSAMERICA** | 831,626 (7/4/1967) | Underwriting of insurance – namely, life, including accident and health; in Class 36 (first use 7/18/1959) |
| **TRANSAMERICA** | 978,808 (2/12/1974) | Financial services rendered to others – namely, insurance underwriting and investment services, in Class 35 (first use 1958) |
| **TRANSAMERICA** | 1,129,244 (1/15/1980) | Business forms, house organ, corporate reports and bulletins issued periodically, and employee and corporate directories, in Class 16 (first use 3/1978) |
| **TRANSAMERICA OCCIDENTAL LIFE** | 1,240,567 (5/31/1983) | Underwriting of life insurance, in Class 36 (first use 9/1/1981) |
| TRANSAMERICA | 1,635,681 (2/19/1991) | Financial consulting services; investment management and counseling services; mutual funds management sales and distribution services; insurance premium financing services; insurance underwriting services for life and disability insurance; life and property and casualty reinsurance services; insurance agency services; surety bonding services; underwriting services for variable life insurance and variable annuity products, in Class 36 (first use 9/30/1989) |
| TRANSAMERICA | 1,635,682 (2/19/1991) | Financial consulting services; investment management and counseling services; mutual funds management sales and distribution services; insurance premium financing services; insurance underwriting services for life and disability insurance; life and property and casualty reinsurance services; insurance agency services; surety bonding services; underwriting services for variable life insurance and variable annuity products, in Class 36 (first use 9/30/1989) |

| Mark | Reg. No. | Services |
|------|----------|----------|
| **TRANSAMERICA REINSURANCE** | 1,869,955 (12/27/1994) | Reinsurance underwriting services in the field of life insurance, in Class 36 (first use 5/1993) |
| **TRANSAMERICA TRIBUTE** | 2,224,207 (2/16/1999) | Life insurance underwriting services, in Class 36 (first use 1/8/1998) |
| **TRANSAMERICA CLASSIC** | 2,228,202 (3/2/1999) | Annuity underwriting services, in Class 36 (first use 1/8/1998) |
| **TRANSAMERICA BOUNTY** | 2,246,732 (5/18/1999) | Life insurance and annuity underwriting services, in Class 36 (first use 10/19/1998) |
| **TRANSAMERICA PLAN MAXIMIZER** | 2,284,121 (10/5/1999) | Life insurance and annuity underwriting services and retirement consulting services, in Class 36 (first use 5/26/1998) |
| **TRANSAMERICA CATALYST** | 2,288,612 (10/26/1999) | Life insurance and annuity underwriting services, in Class 36 (first use 3/1/1998) |
| **TRANSAMERICA LINEAGE** | 2,320,968 (2/22/2000) | Life insurance underwriting services, in Class 36 (first use 3/4/1999) |
| **TRANSAMERICA ELITE** | 2,458,663 (6/05/2001) | Life insurance underwriting and administration services, in Class 36 (first use 06/01/2000) |
| **TRANSAMERICA SECURE REWARDS** | 2,486,240 (9/4/2001) | Annuity underwriting services, in Class 36 (first use 2/1/2000) |
| **TRANSAMERICA PLAN PLUS** | 2,609,854 (8/20/2002) | Self-directed stock brokerage account services offered to owners of 401(k) pension accounts, in Class 36 (first use 9/30/2000) |
| **TRANSAMERICA POLICY STARTER** | 2,663,133 (12/17/2002) | Life insurance underwriting services, in Class 36 (first use 2/1/2002) |
| **TRANSAMERICA LTC PLUS** | 2,688,175 (2/18/2003) | Insurance underwriting and administration in the field of chronic health care, in Class 36 (first use 6/1/2001) |
| **TRANSAMERICA CENTER FOR RETIREMENT STUDY** | 3,058,524 (2/14/2006) | Public policy research and analysis of issues in the field of retirement and employee benefits, in Class 35 (first use 11/11/2002)<br><br>Educational services, namely conducting forums and seminars in the field of retirement and employee benefits, in Class 41 (first use 11/11/2002) |
| **TRANSAMERICA FULCRUM** | 3,062,005 (2/28/2006) | Investment management services, in Class 36 (first use 1/1/2005) |

| Mark | Reg. No. | Services |
|---|---|---|
| **TRANSAMERICA BROKER DEALER DIRECT** | 3,147,208 (9/26/2006) | Insurance underwriting in the in the field of life insurance offered on a wholesale basis; life, in class 36 (first use 11/1/2004) |
| **TRANSAMERICA. MASTER RETIREMENT.** | 3,238,735 (5/8/2007) | Administration of retirement plans and investment management services, in Class 36 (first use 8/1/2006) |
| **TRANSAMERICA** OCCIDENTAL LIFE 全美人壽保險公司 | 3,358,373 (12/25/2007) | Life insurance underwriting services, in Class 36 (first use 5/1/2006) |
| **TRANSAMERICA SECURE** | 3,430,218 (5/20/2008) | Long term care insurance underwriting services, in Class 36 (first use 6/6/2002) |
| **TRANSITIONS BY TRANSAMERICA** | 3,430,970 (5/20/2008) | Long term care insurance underwriting services, in Class 36 (first use 10/3/2007) |

35.     Of the registrations pleaded above, all more than six years old are "incontestable" under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thereby constitute conclusive evidence of (i) the registration of the marks; (ii) the validity of the marks; (iii) Plaintiff's ownership of the marks; and (iv) Plaintiff's exclusive right to use the marks in commerce in connection with the identified services, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

36.     The Transamerica Companies have advertised and promoted "Transamerica" as a name and service mark for many years in national consumer publications such as *Barrons, Businessweek, Forbes, Investor's Business Daily, Kiplingers, Money, Newsweek*, *Sports Illustrated*, *Time*, *U.S. News & World Report,* and *The Wall Street Journal*.

37.     The "Transamerica" name has been advertised for many years on network television, appearing for example on CBS broadcasts of golf tournaments, as well as

cable television networks, including A&E, CNBC, CNN and CNN/Headline News, ESPN, Fox News, and the History Channel.

38.     The Transamerica Companies have advertised and promoted "Transamerica" as a name and service mark through newspapers, distribution of direct mailing pieces such as pamphlets, brochures, subscription letters, and other descriptive literature, press releases, office and window signs, and point-of-sale pieces such as counter displays, posters, and the like.

39.     The Transamerica Companies spend millions of dollars every year to advertise and promote "Transamerica" as a name and service mark.

40.     Plaintiff's "Transamerica" name is advertised by the Transamerica Companies at multiple websites, including but not limited to www.transamerica.com, www.timllc.com, www.transamericafunds.com, www.transamericaseriestrust.com, www.ta-retirement.com, and www.transamericaworksite.com.

41.    Use of the "Transamerica" name by the Transamerica Companies

currently appears as follows on the home page of the website at www.transamerica.com:



42.    After 80 years of substantial and uninterrupted use, combined with

extensive advertising, Plaintiff's "Transamerica" service mark is well known to the

public and is "famous" for all purposes relevant to this Complaint.

43.    Plaintiff actively enforces its rights in the "Transamerica" service mark,

particularly where the name is used in connection with consumer fraud

## **Circumstances Leading to this Dispute**

44.     In 1998, Congress created the Internet Corporation for Assigned Names and Numbers ("ICANN") to administer the Internet Domain Name System (DNS).

45.      Pursuant to a contract with the U.S. Department of Commerce known as the Joint Project Agreement (JPA), ICANN is required to provide for the maintenance of a publicly accessible, searchable database of contact data for the owners of domain names in the generic Top Level Domains (gTLDs), *i.e.,* ".com," ".org," ".net," "info," ".edu," ".biz," and the newer variants coming online.  This repository of information is known as the "Whois" database.

46.     The Whois database is required by the JPA to identify the owners of domain name registrations and to provide accurate contact data for such persons in order to enable members of the public to contact such persons about technical and legal issues relating to those domain names.

47.     The Whois database has no single location but exists as a distributed compilation of electronic information collected and reported by registrars for the domain names they have registered.

48.     To engage in domain name registration services, registrars are required to enter into Registration Accreditation Agreements with ICANN that obligate them to ensure accurate and current contact data in the "Whois" database for Internet domain names registered by them.  However, ICANN concedes that it is unable to enforce this requirement in light of the exponential growth of counterfeit domain names registered to fictitious individuals, non-existent entities, shell companies, and unidentified parties ostensibly located in offshore and far-flung foreign jurisdictions.

16

49.     Moniker is accredited by ICANN to register Internet domain names on behalf of third parties and the public.

50.     It is Plaintiff's position that Moniker has violated its accreditation agreement with ICANN by enabling a class of customers comprised of fictitious entities and anonymous individuals to "monetize" counterfeit domain names, acting as their authorized licensee and/or otherwise in concert with them, profiting with them jointly in the process, concealing their identity when challenged, and intentionally or recklessly continuing to supply registration services to them with knowledge that they are fictitious entities engaged in trademark and service mark counterfeiting, or with willful blindness to that fact.

51.     For some domain names, Moniker enables its customers to conceal their identity by means of its proxy service.  In respect to these domain names, the Whois database indicates only that they are registered to "Moniker Privacy Services."

52.     In 1999, ICANN established a quasi-arbitration procedure called the Uniform Dispute Resolution Policy (UDRP) to provide for the recovery of infringing Internet domain names by trademark and service mark owners.

53.     A UDRP complaint may be instituted only against the individual or entity that is identified as the "registrant" of the disputed domain name in the Whois database - even if the "registrant" is a fictitious individual or nonexistent entity.

54.     The UDRP, which does not provide for damages or injunctive relief, was instituted in 1999, at a time when there was a single accredited domain name registrar, before the proliferation of ICANN-accredited registrars to a population that now

approaches 1,000, and before the advent of massive counterfeit domain names registered to fictitious entities and anonymous individuals as seen in this Complaint.

55.     Moniker's "proxy service" enables Moniker's customers to conceal all data about the ownership of a particular domain name until such disclosure is ordered by an arbitration forum in response to a UDRP complaint filed by a trademark or service mark owner involving that particular domain name.  The effect of this service in the present case has been to prevent public access to information about the origin and source of goods and services advertised and sold on the Internet, including life insurance and financial services advertised under counterfeit depictions of the "Transamerica" name.

56.     Moniker's "proxy service" also enables the John Doe Defendants to distribute the ostensible ownership of counterfeit domain name registrations over a group of fictitious entities without publicly disclosing which domain names are registered to which fictitious entity.

57.     A cross section of Moniker's clientele appears in the 33-pp. list of 380 UDRP cases appended to this Complaint as Exhibit B in which Moniker was the registrar of the disputed domain names.  This list includes only those cases decided by the National Arbitration Forum in Minneapolis, MN, one of four principal UDRP arbitration service providers.

58.     The following customers of Moniker ostensibly located in offshore

Caribbean jurisdictions are identified in the list of UDRP cases appended to this

Complaint as Exhibit C:

- **Domain Admin,** P.O. Box 2331, Roseau, 00152, **Dominica,** tel. +809.7674400530

- **Cinquemille Corp.,** P.O. Box N 7776-348, Templeton Building, Lyford Cay, Nassau, New Providence 9e56**, The Bahamas**, tel. 305-457-7477, m3054574744@hotmail.com

- **Express Corporation c/o  Domain,** Copthall, P.O. Box 2331, Roseau, **Dominica** 00152, tel. +6152169056, express@express.com

- **Forum LLC,** P.O. Box 2331, Roseau 00152, **Dominica,** tel. 809-767-440-0530, forum@connect.dm

- **International Domain Names Inc.,**, International Trading Center, 2nd Floor, Warrens, St. Michael, **Barbados**, tel. 809.2414219601, domains@geosigninternational.com

- **Mighty LLC,** P.O. Box 636, Charlestown, Nevis, **St. Kitts & Nevis,** tel. 484-321-9180, mightyllc@yahoo.com

- **Nevis Domains LLC.,** (variously) 222-3 Main Street, P.O. Box 626, Charlestown, Nevis**, St. Kitts & Nevis**, tel. (variously) +809.484-328-9118, 484-321-8563, e-mail (variously) nevisdomains@gmail.com, nevisdomains@yahoo.com

- **Payphone Search LLC,** P.O. Box 8188, Charlestown, Nevis, **St. Kitts & Nevis**, tel. +254.4843289118, payphone@adelphia.net

- **Petronila DeJesus,** Calle Frey Vincente Beltran, Residencial G-25 Apt. H-02, Santo Domingo, **Dominican Republic,** tel. 809-720-4782, udocia@hotmail.com

- **St. Kitts Registry of Olam,** 45-70 Meridian Parkway, **St. Kitts and Nevis, tel**. +809-459-0333, hknames@gmail.com

- **URLPro,** P.O. Box 30521 SMB, George Town, **Grand Cayman** 32084, tel. (variously) 345-673-4935, 345-683- 9853, email (variously) virtualsky@gmail.com, urlpro2000@yahoo.com

- **Virtual Sky,** P.O. Box 20543 SMB, George Town, **Grand Cayman** 32084, tel. 345-673-4835, virtualsky@gmail.com

59.   The following customers of Moniker ostensibly located in China are

identified in the list of UDRP cases appended to this Complaint as Exhibit D:

- **Chen Xianshang,** Nan MA Tou Lu 11-87, Rm. 601 Bldg 28, Shanghai 200126, China, tel. +1.8019386488, DomainNotForSale.Mon@startseek.com

- **Domain Administrator,** P.O. Box 33422, Hong Kong, China, tel. +852.93433544, Domain Administrator domadm1@gmail.com

- **Domain Asia Ventures,** 255 Xiaoxue Road, Xiamen, Fujian 361001, China, tel. 252612, dnsasia2000@yahoo.com

- **Domains Ventures,** 136 Xiaoxue Road, Xiamen, Fujian 361001 China, tel. 86.252612, domainventures_online@yahoo.com

- **Hong Kong Names LLC.,** Room 2890, 14/G Shanghai Investment Building, Hong Kong, II 0000, tel. +852.961452187, hknames@gmail.com

- **James Lee,** Shu Lin City, TAIWAN

- **Jan, Pak Kin Wong ,** Flat H, 62/F, Tower 5, Bellagio, 33 Castle Peak Road, Sham Tseng, NT, 0000 Hong Kong, tel. +852.36299548, jan@tee.com

- **Ling Shun Shing,** 138 Yi Xue Yuan Rd., Shanghai, China 200032, tel. 01146798987, regmagic@yahoo.com

- **MustNeed.com,** P.O. Box 3506, Taipei, Taiwan 100-00, tel. +886.917557860, domadm@mustneed.com

- **OwnDomain.com,** c/o Yanlin Hu, 1-2105, Bldg.2, No.27 Zeng Guang Road, Haidian Dist., Beijing, 100037, China, tel. +86.13911627676, sales@owndomain.com

- **Registrant,** P.O. Box 71826, KCPO, Hong Kong 852, tel. +852.25255525, info@fashionid.com

- **Role, Manage** c/o Administration Local, P.O. Box 33180, Hong Kong, tel. +1.5225434601, manage_tech@yahoo.com

- **Surio Mario Martinez Juarez Ferdinando,** Fudan University, 220 Handan Rd., Shanghai 200433, China, tel. +86.13671766804, 12SurioMarioMartinezHuarezFerdinandoJdeNesePytelSbrouky@startseek.com

- **Totto Cutugno,** Huai Hai Rd 12, Shanghai FM 20000 China, tel. +86.23564578, ubbish@startseek.com

- **Web Domain Names,** 777 Mo Xue Fang Road, Shanghai, China 435002, tel. 0115883301, fax 0115883302, artaxxa@yahoo.com

- **Ultimate Search,** GPO Box 7862 Central, Hong Kong, HK 0000, c/o John B. Berryhill, PA

60.     Moniker advertises the fact that it is the registrar for approximately 2.5 million Internet domain names.  It is Plaintiff's position that the particulars of Moniker's clientele as illustrated in Exhibits B, C and D support an inference that a substantial majority of domain names registered by Moniker are owned by fictitious entities and anonymous entities in the manner illustrated in this Complaint.

**Pay-Per-Click Advertising Websites With**
**Counterfeit Depictions of "Transamerica" Service Mark**

61.     Counterfeit domain names incorporating or imitating Plaintiff's "Transamerica" service mark, registered by Moniker to fictitious and anonymous websites and used for the advertising of life insurance and financial services, all or some of which have been "monetized" by Moniker in its role as the authorized licensee of the John Doe Defendants and/or otherwise acting in concert with them, include but are not necessarily limited to the following:

| Domain Name | Date | Ostensible Registrant |
|---|---|---|
| **TRANSAMERICALIFEINS.COM** | 11/13/2007 | **Net41 Media,** 140 University Terr., Bldg. A, Reno, NV 89503, tel. 775-247-4329, net41@net41.com |
| | 5/10/2008 | **Net41 Media,** 483 E. 9th St., Apt. A, Reno, NV 89503, tel. (775) 247-9899, net41@net41.com |
| | 9/8/2008 | **H.W. Barnes,** Van Hogendorpstraat 74, Oisterwijk, NB 5066, The Netherlands, Tel.  +31.36946676, hwb@zooreports.com |
| | 6/3/2009 | **Moniker Privacy Services,** 20 SW 27th Ave., Suite 201, Pompano Beach, FL 33069, tel.  (954) 984-8445, fax  (954) 969-9155, transamericalifeins.com@domainservice.com |
| | 8/8/2009 - Present | **Omgi Media,** P.O. Box 1462, Rapid City, SD 57709, tel. (605) 343-1774, zomwang@gmail.com |
| **ONTRANSAMERICALIFEINSURANCE.COM** | 1/5/2007 - 7/23/2009 | **Jan Stroh,** 847 Metrocentre Blvd., West Palm Beach, FL 33407, tel. (407) 476-0715, fax (407) 476-0727, webmaster@ontransamericalifeinsurance.com |

| Domain Name | Date | Ostensible Registrant |
|---|---|---|
|  | 7-23-2009 | **Ron Oron,** Kerkeboslaan 1, Wassenaar 2243 CM, Netherlands 2243, tel. +31.8000234045, fax +31.847119160, terry.stern1@gmail.com |
| TRANSAMERICAANNUITY.COM | 2/13/2006 - 6/2/2008 | **Moniker Privacy Services,** 20 SW 27th Ave., Suite 201, Pompano Beach, FL 33069, tel.  (954) 984-8445, fax  (954) 969-9155, transamericaannuity.com@domainservice.com |
| TRANSAMERICAOCCIDENTAL.COM | 11/29/2007 - 11/17/2009 | **Moniker Privacy Services,** 20 SW 27th Ave., Suite 201, Pompano Beach, FL 33069, tel.  (954) 984-8445, fax  (954) 969-9155, transamericaoccidental.com@domainservice.com |
| TRANSAMERICASERVICES.COM | 7/19/2007 | **Virtual Sky,** P.O. Box 20543 SMB, George Town, Grand Cayman 32084, Cayman Islands, tel. +1.3456734835, fax +1.3456734835, virtualsky@gmail.com |
|  | 3/11/2008 - 2/20/2009 | **Domains Ventures,** 136 Xiaoxue Road, Xiamen, Fujian 361001, China, tel. +86.252612, fax: +86.252612, domainventures_online@yahoo.com |
| TRANSAMERICANSERVICE.COM | 8/24/2007 | **Virtual Sky,** P.O. Box 20543 SMB, George Town, Grand Cayman 32084, Cayman Islands, tel. +1.3456734835, fax +1.3456734835, virtualsky@gmail.com |
|  | 3/14/2008 - 5/17/2009 | **Domains Ventures,** 136 Xiaoxue Road, Xiamen, Fujian 361001, China, tel. +86.252612, fax: +86.252612, domainventures_online@yahoo.com |
| TRANSAMERICANSERVICES.COM | 12/28/2007 - 2/4/2009 | **Virtual Sky,** P.O. Box 20543 SMB, George Town, Grand Cayman 32084, Cayman Islands, tel. +1.3456734835, fax +1.3456734835, virtualsky@gmail.com |
| TRANSAMERICAHITS.NET | 1/11/2008 - 8/18/2009 | **Domain Park Limited,** Markgrafenstr. 56, Suite 131, Berlin 10117, Germany, tel. +1.2676535381, hostmaster@domainparkltd.com |
|  | 8/18/2009 - Present | **Swallowlane Holdings Ltd.,** Hill Mall, Suite 6, Wickhams Cay 1, Road Town, Tortola, Virgin Islands VG1120, tel. +1.3152925859, slhdns@gmail.com |
| TRANSAMERICACREDITREPORT.COM | 4/12/2008 | **Network Fourty-One,** 483 E. 9th St., Apt. A, Reno, NV 89503, tel. (775) 247-4329net41@net41.com |
|  | 9/5/2008 | **G.H. Wagenaars,** Van Hogendorpstraat 74, Oisterwijk, 5066 The Netherlands, tel. +31.36946676, net41@net41.com |
|  | 4/20/2009 | **H.W. Barnes**, Van Hogendorpstraat 74, Oisterwijk, NB 5066, The Netherlands, Tel.  +31.36946676, hwb@zooreports.com |

| Domain Name | Date | Ostensible Registrant |
|---|---|---|
| | | |
| | 8/7/2009<br>-<br>Present | **Omgi Media,** P.O. Box 1462, Rapid City, SD 57709, tel. (605) 343-1774, zomwang@gmail.com |
| | | |
| TRANSAMERICANIDEX.COM | 11/28/2007<br>-<br>1/20/2009 | **Moniker Privacy Services,** 20 SW 27th Ave., Suite 201, Pompano Beach, FL 33069, tel. (954) 984-8445, fax (954) 969-9155, transamericaoccidental.com@domainservice.com |
| | | |
| TRNSAMERICA.COM | 5/20/2009<br>-<br>7/1/2009 | **H.W. Barnes**, Van Hogendorpstraat 74, Oisterwijk, NB 5066, The Netherlands, Tel. +31.36946676, hwb@zooreports.com |
| | Present | **H.W. Barnes,** P.O. Box 1462, Rapid City, SD 57709, tel. 605-343-1774, zomwang@gmail.com |

62.    The UDRP cases listed in Exhibit B to this Complaint, without more,
show that Moniker has continued to register counterfeit domains to "Domains Ventures"
of Xiamen, China, ostensible owner of TRANSAMERICASERVICE.COM and
TRANSAMERICASERVICES.COM during the relevant period, long after it would have
been apparent to any registrar in Moniker's position that its customer was using
Moniker's services to engage in trademark and service mark counterfeiting, and long
after Moniker knew or should have known that its customer was a fictitious entity and/or
anonymous individual.  As seen in Exhibit B, Moniker was ordered to transfer domain
name registrations ostensibly owned by "Domains Ventures" (and/or its apparent alias,
"Domain Asia Ventures" ostensibly located at an adjacent address in Xiamen, China), in
the following UDRP cases decided by one arbitration service provider:

| Case No. | Domain Name(s) | Appearance | Decision | Date |
|---|---|---|---|---|
| | | | | |
| 245922 | wwwisoldmyhouse.com | No | Transferred | 5/4/2004 |
| 263171 | wwwcanadadrugs.com | No | Transferred | 6/14/2004 |

| Case No. | Domain Name(s) | Appearance | Decision | Date |
|---|---|---|---|---|
| 273436 | investwellsfargo.com, onlinewellsfargo.com, retirementplanwellsfargo.com, wellsfargohomemorgage.com, wellsfargohomeloan.com, wellsfargocardservices.com, wellsfergo.com, wwwyourwellsfargomortgage.com, wwwwellsfargomortgage.com, yourwellsfargomortagage.com, yourwellsfargohomemortage.com | No | Transferred | 7/5/2004 |
| 296359 | fisherpricetoys.com | No | Transferred | 8/30/2004 |
| 497773 | techron.com | No | Transferred | 8/2/2005 |
| 514786 | aarppharmacyservices.com | No | Transferred | 8/25/2005 |
| 520513 | mortageit.com | No | Transferred | 9/6/2005 |
| 586868 | searschoiceawards.com, kenmoreparts.com | No | Transferred | 12/6/2005 |
| 593976 | harlandcheck.com | No | Transferred | 12/29/2005 |
| 602992 | greatalaskanholiday.com | No | Transferred | 1/12/2006 |
| 606444 | wwwdowneysavings.com | No | Transferred | 1/24/2006 |
| 637373 | wwwkohler.com | No | Transferred | 3/21/2006 |
| 649856 | homedepotgiftcard.com | No | Transferred | 4/6/2006 |
| 653329 | myjdaccount.com | No | Transferred | 4/19/2006 |
| 654538 | ticketwebb.com | No | Transferred | 4/20/2006 |
| 657202 | aigautoservices.com | No | Transferred | 4/25/2006 |
| 659767 | stienersports.com | No | Transferred | 5/1/2006 |
| 669924 | honeywellcsplans.com | No | Transferred | 5/9/2006 |
| 671035 | targetcreditcards.com | No | Transferred | 5/15/2006 |
| 712049 | allegiantairways.com | No | Transferred | 6/29/2006 |
| 714949 | privelege.com | No | Transferred | 7/13/2006 |
| 720783 | elanhomesystem.com | No | Transferred | 7/10/2006 |
| 741637 | prudental.com | No | Transferred | 8/18/2006 |
| 741765 | greatjobsmarriott.com | No | Transferred | 8/16/2006 |

| Case No. | Domain Name(s) | Appearance | Decision | Date |
|---|---|---|---|---|
| 758967 | wwwcitimortgage.com | No | Transferred | 9/20/2006 |
| 778967 | wwwlifescan.com | No | Transferred | 10/11/2006 |
| 781846 | tablethotel.com | No | Transferred | 10/10/2006 |
| 785534 | enterpriseautosales.com | No | Transferred | 10/11/2006 |
| 810215 | yourwellsmortgage.com | No | Transferred | 11/14/2006 |
| 874258 | citibusinesscreditcard.com | No | Transferred | 2/14/2007 |
| 1045211 | smallbusinessdnb.com | No | Transferred | 9/5/2007 |
| 1108672 | ctizensbank.com | No | Transferred | 12/27/2007 |
| 1120102 | applyonlineciticards.com, citibankna.com, citifinancialmorgage.com, citimortgate.com, cititcards.com | No | Transferred | 3/14/2008 |
| 1249532 | choiceprivilages.com | No | Transferred | 4/16/2009 |

63.    Defendants' scheme to "monetize" counterfeit domain names is illustrated

at www.transamericalifeins.com, which, during the period of time relevant to this

Complaint, displayed the following two spurious depictions of Plaintiff's "Transamerica"

service mark:



64.     Upon clicking the first "Transamerica Life Ins. Co." link illustrated above, the consumer is taken to another screen featuring the following spurious depiction of the "Transamerica" name in the link to a website at www.transamerica.my-life-insured.com:



65.     On information and belief, the Internet domain name MY-LIFE-INSURED.COM was registered as of June 2009 to an entity named "My Life Insured," ostensibly located at 655 4th St., San Francisco, California.  However, on information and belief, the only business located at 655 4th St., San Francisco, California, is a legitimate automobile glass replacement business named "Safelite Autoglass."  In other words, Moniker not only acts as the authorized licensee of the John Doe Defendants and/or otherwise in concert with them, in using Plaintiff's "Transamerica" service mark to channel Internet traffic drawn by public familiarity with the "Transamerica" name and

diverting it to the websites of third parties, but channels that traffic to websites of parties who are *also fictitious entities and anonymous individuals engaged in the advertising and sale of life insurance and financial services.*

66.     By its own admission at www.domainsponsor.com, Moniker shares in the receipt of pay-per-click payments from advertising search engines based on the number of "hits" that are sent by the John Doe Defendants' counterfeit websites, such as www.transamericalifeins.com, to the websites of third-party advertisers whose links appear on the counterfeit websites, such as www.transamerica.my-life-insured.com.

67.     The large-scale "bulk registration" of counterfeit domain names is widespread in the Internet domain name registration services industry and the subject of intense concern among business and consumer groups along with the U.S. government.

68.     As a result of the business model illustrated in this Complaint and employed by Moniker, Plaintiff and other trademark and service mark owners have been overwhelmed by the proliferation of counterfeit websites in recent years registered to fictitious and anonymous individuals, non-existent entities, shell companies and other undisclosed or unaccountable parties.

69.     By 2008, industry experts reported an average of 382,248 new cyber-squatting registrations every thirty days, substantially all registered to fictitious and anonymous individuals, non-existent entities, shell companies, and other undisclosed or unaccountable parties.

70.     The proliferation of counterfeit websites corresponds to the number of new ICANN-accredited registrars during the same period, beginning with one in 1999 (Network Solutions, Inc.), to around 60 in 2003, to almost 1,000 today.

**www.ontransamericalifeinsurance.com**

71.     In addition to using spurious depictions of Plaintiff's "Transamerica" service mark as part of a large-scale operation targeting well known trademarks and service marks generally, the John Doe Defendants, in collaboration with Moniker, have also profited from the website illustrated in Paragraph 3 of this Complaint in what appears to be a separate attack targeted specifically at Transamerica and other well known life insurance underwriters.

72.     On or about January 5, 2007, Moniker registered the Internet domain name ONTRANSAMERICALIFEINSURANCE.COM to a fictitious individual named "Jan Stroh," ostensibly located at 847 Metrocentre Blvd., West Palm Beach, FL 33407, with a telephone number of (407) 476-0715, and a fax number of (407) 476-0727.  In reality, these telephone and fax numbers were not in service, no individual named "Jan Stroh" appeared at or near that location in the telephone directory or other commercially available databases, and the ostensible address in West Palm Beach was occupied by a reputable business with no knowledge about this domain name.

73.     The domain name ONTRANSAMERICALIFEINSURANCE.COM was (and, as of August 28, 2009, is) used as the Internet address for the website at www.ontransamericalifeinsurance.com illustrated in Paragraph 3 above.

74.     As of April 28, 2009, the website at www.ontransamericalifeinsurance.com contained over a thousand spurious depictions of Plaintiff's "Transamerica" name and service mark, with the words "Contact Us"

appearing in dozens of places accompanied by the name "Transamerica."  The words

"Contact Us" were accompanied by links to a "Contact" page appearing as follows:



75.     On information and belief, messages typed by consumers into the

"Comments" boxes on the "Contact" page above were, without the knowledge of such

consumers, sent to the John Doe Defendants or third parties in collaboration with the

John Doe Defendants, for use in connection with the advertising and sale of life insurance

and financial services in competition with the Transamerica Companies.

76.     The false appearance of origin created by the website at

www.ontransamericalifeinsurance.com is reinforced by a bogus "Copyright Notice"

appearing as follows:



77.     Among other links depicting the "Transamerica" name at

www.ontransamericalifeinsurance.com, a link entitled "Transamerica Life Insurance

Price" appears as follows:



78.     The link entitled "Transamerica Life Insurance Price" illustrated above leads in turn to the following screen containing a link under the caption "Affordable Life Insurance":



79.     The "Affordable Life Insurance" link above leads in turn to a website at www.finance-4u.com, as indicated by the following close-up of the previous illustration:



80.     The website at www.finance-4u.com, in turn, was used as follows for the

advertising and sale of life insurance and financial services:



81.     On information and belief, the Internet domain name FINANCE-4U.COM

was registered by Moniker to a fictitious individual named "Alexis Shepard," ostensibly

located at 2312 Dedeaux Road, Gulfport, MS 39503, with a telephone number of (228)

872-2697 and a fax number of (228) 872-2673.  As of June 2008, however, that telephone

number belonged to an elderly woman with no knowledge about any domain name or

other interest in this case; the listed fax number is not in service; and no individual named

"Alexis Shepard" is located in or near Gulfport, Mississippi, according to local telephone directories and commercially available databases.

    82.    The website at www.ontransamericalifeinsurance.com also deceives consumers with spurious depictions of the "Transamerica" service mark in the following vertical column of icons entitled "SAVE HUNDREDS on your life Insurance":



83.    Upon clicking one of the icons entitled "SAVE HUNDREDS on your life

Insurance" at www.ontransamericalifeinsurance.com illustrated in the preceding

paragraph, the consumer is redirected to a website at www.1placeloan.com, which is used

as follows for the advertising and sale of life insurance and financial services:



84.    On information and belief, the Internet domain name

1PLACELOAN.COM was registered by Moniker to a fictitious individual named

"Agripina Gamboa," ostensibly located at 1001 Stoneybrook, Searcy, AR 72143, with a

telephone number of (501) 523-7720 and a fax number of (501) 523-7737.  This

telephone and fax number are not in service, and no individual named Agripina Gamboa

is located in or near Searcy, Arkansas, according to the local telephone directory and commercially available databases.

85.     In the manner illustrated above, the website at www.ontransamericalifeinsurance.com has been used as a gateway to other websites featuring advertisements not only for life insurance in competition with the Transamerica Companies, but also consumer credit and debt reduction services in respect to which consumers are especially vulnerable to fraud.  The fact that these consumer finance websites are themselves registered to fictitious individuals makes them especially dangerous to the public.

**Other Life Insurance Companies Targeted by John Doe Defendant "Jan Stroh"**

86.     On information and belief, Moniker's registration of ONTRANSAMERICALIFEINSURANCE.COM was part of a scheme by one or more of the John Doe Defendants to target well known life insurance companies.  Between December 26, 2006 and January 5, 2007, Moniker registered the following Internet domain names, each to a separate fictitious or anonymous individual with a separate false address and separate nonexistent telephone and fax number, each counterfeiting the name of the corresponding insurance company in a manner substantially identical to that at www.ontransamericalifeinsurance.com:

| Domain Name | Fictitious Registrant |
|---|---|
| ontransamericalifeinsurance.com | Jan Stroh<br>847 Metrocentre Blvd.<br>West Palm Beach, FL 33407<br>tel. 407.476.0715, fax 407.476.0727 |
| onaiglifeinsurance.com | Judson Agnes<br>937 Westside Rd.<br>Healdsburg, CA 95448<br>tel. 707.433.8700, fax 707.433.8759 |

| Domain Name | Fictitious Registrant |
|---|---|
| onaetnalifeinsurance.com | Kane Burdick<br>8300 747th Place<br>Bothell, WA 98011<br>tel. 206.337.2607, fax 206.337.2660 |
| onallstatelifeinsurance.com | Candice Magee<br>8473 Arriba Del Mundo<br>Carmel, CA 93923<br>tel. 831.624.8641, fax 831.624.8611 |
| onguardianlifeinsurance.com | Tajuana Dill<br>4437 Grand Ave.<br>Los Olivos, CA 93441<br>tel. 530.756.6665, fax 530.756.6695 |
| onhartfordlifeinsurance.com | Monroe Cyrus<br>812 Campbell Creek<br>Richardson, TX 55082<br>tel. 792.889.9183, fax 972.889.9146 |
| onjohnhancocklifeinsurance.com | Rachael Marquez<br>9943 W. Dry Creek Rd.<br>Healdsburg, CA 95448<br>tel. 707.431.3161, fax 707.431.3150 |
| onmetropolitanlifeinsurance.com | Christin Bernard<br>4095 Guthridge Court<br>Norcross, GA 30092<br>tel. 770.840.5830, fax 770.840.5828 |
| onnewyorklifeinsurance.com | Channing Aguilar<br>7695 Henry Rd.<br>Napa, CA 94559<br>tel. 707.224.7453, fax 707.224.7416 |
| onpacificlifeinsurance.com | Leonie Isaacson<br>3568 N.E. 75th St.<br>Miami, FL 33132<br>tel. 305.373.3392, fax 305.373.3314 |
| onprudentiallifeinsuranrce.com | Brook Fallon<br>8465 U.S. Hwy. 74 N.<br>Clearwater, FL 34623<br>tel. 727.791.6216, fax 727.791.6289 |
| onstandardlifeinsurance.com | Judith Blount<br>8456 Pruett Drive<br>Vista, CA 92084<br>tel. 760.940.6880, fax 760.940.6856 |

## **Other Counterfeit Websites**

87.     In addition to websites incorporating Plaintiff's "Transamerica" service

mark in their website addresses, one or more of the John Doe Defendant has also caused

spurious depictions of Plaintiff's "Transamerica" service mark to appear on other

fictitious and anonymous websites, including but not necessarily limited to

www.lifeinsurancedd.com, which appeared as follows during the period of time relevant

to this Complaint:



88.     The Internet domain name LIFEINSURANCEDD.COM was, during the

relevant period, registered by Moniker to one "Jayme Young," ostensibly located at 344

West Railroad Street, Seneca, SC 29678, with a telephone number at (205) 217-4509 and

a fax number at (205) 217-4588.  On information and belief, this telephone and fax

number were not in service during the relevant period, and that no individual named

Jayme Young was located in or near Seneca, South Carolina according to local telephone directories and commercially available databases.

89.     On information and belief, the website at www.insurancedd.com, like the website at www.ontransamericalifeinsurance.com illustrated in Paragraph 3 of this Complaint, contained more than a thousand spurious depictions of Plaintiff's "Transamerica" service mark.

90.     The second page alone of the website at www.lifeinsurancedd.com, appearing as follows, contained no less than fifteen spurious depictions of Plaintiff's "Transamerica" service mark during the relevant period, fourteen of which appeared in the caption of links leading to third-party websites used for the advertising and sale of life insurance and financial services:

    i.   Directions for Transamerica Life Insurance Company - Transamerica Life Insurance Company
    ii.  Informative Benefit Transamerica Life Insurance details - Benefit Transamerica Life Insurance
    iii. Transamerica Life Insurance Cover
    iv. Long Term Life Insurance Brokers
    v.  Find Cheap Transamerica Life Insurance`s theory

After these final words, when you have the inside stuff about the transamerica life insurance subject and also its probable influence, you are able to share your thoughts concerning this subject in this service provider`s internet based discussion groups.

 

Purchase Transamerica Life Insurance  ;  Transamerica Life Insurance Information
Deceased Transamerica Life Insurance Policy  ;  Variable Transamerica Life Insurance  ;  Transamerica Life Insurance Coverage
Bargain Transamerica Life Insurance Rates  ;  Settlement Transamerica Life Insurance Policy
Cheap Transamerica Life Insurance  ;  Low Transamerica Life Insurance

## COUNT I

### Federal Service Mark Counterfeiting By All Defendants

91.     Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

92.     To conceal the ownership of counterfeit domain names and websites incorporating and imitating trademarks and service marks owned by Plaintiff and others, Moniker registers these domain names to a class of customers comprised of fictitious entities and anonymous individuals who take title to the registrations in return for a share of the revenues earned by Moniker from "monetization" of the domain names, and acts as the authorized licensee for such customers and/or in concert with them for all material purposes.

93.     Moniker's willful collaboration with the John Doe Defendants and its other fictitious customers, by concealing information from the public about the identity of its customers, results in a lack of transparency and accountability in the advertising and sale of goods and services on the Internet, including but not limited to life insurance and financial services advertised under counterfeit depictions of the "Transamerica" service mark.

94.     On information and belief, the counterfeit domain names "monetized" by Moniker, acting as the authorized licensee of the John Doe Defendants and/or otherwise acting in concert with them, produce substantial profits from pay-per-click advertising based on the spurious display of trademarks and service marks owned by Plaintiff and others.

95.     The ability of the John Doe Defendants to distribute the ostensible ownership of counterfeit domain names over a group of fictitious individuals and nonexistent or shell companies and other entities of doubtful probity in far flung jurisdictions exceeds the capability of Plaintiff and other trademark owners to battle such conduct one domain name at a time, or in proceedings directed against the fictitious individuals and nonexistent entities to whom such names are ostensibly registered.

96.     As illustrated in Exhibit B to this Complaint, Moniker has been the Internet domain name registrar of record in hundreds of UDRP complaints, the substantial majority of which have resulted in transfer of the disputed Internet domain after the fictitious registrant failed to enter an appearance.  The UDRP complaints that were unsuccessful failed not because the fictitious registrant entered an appearance or disclosed its identity but because the UDRP arbitrators found that a complainant lacked rights in a name even where the ostensible registrant was fictitious entity or anonymous individual that failed to enter an appearance.

97.     On information and belief, Moniker actively collaborates with its customers and engages as a matter of course in direct communications and negotiations with trademark and service mark owners on behalf of those customers.

98.     The clandestine ownership of counterfeit Internet domain names and websites incorporating Plaintiff's "Transamerica" service mark causes irreparable harm to Plaintiff and endangers the public by making it impossible for consumers to identify the source of life insurance and financial services advertised on the Internet under the "Transamerica" name.

99.     The concealment of the origin and source of goods and services advertised and sold on the Internet resulting from Defendants' scheme violates the standards of business conduct reflected in the fictitious trade name statutes of the 50 States which require persons engaged in the advertising and sale of products and services to identify themselves so that they are amenable to service of process in actions arising from the advertising and sale of such goods and services.

100.    On information and belief, the "monetization" of counterfeit domain is so profitable that multiple UDRP complaints and civil injunctive actions have failed to deter Moniker from pursuing the business model described in this Complaint, and Moniker has no intention to alter this practice unless and until it is confronted by a substantial damage award.

101.    The depictions of Plaintiff's "Transamerica" service mark in the websites identified in this Complaint are "spurious" within the meaning Section 45 of the Lanham Act, 15 U.S.C. § 1127, and 18 U.S.C. § 2320(e)(1)(A), because they are not "genuine or authentic."

102.    The spurious depictions of Plaintiff's "Transamerica" service mark illustrated in this Complaint are used for "trafficking in services" within the meaning of Section 43(d)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(d)(1)(A), and 18 U.S.C. § 2320(e)(1)(A).

103.    The spurious depictions of Plaintiff's "Transamerica" service mark in the websites identified in this Complaint are "identical with, or substantially indistinguishable from" the genuine service mark within the meaning of Section 45 of the Lanham Act, 15 U.S.C. § 1127, and 18 U.S.C. § 2320 (e)(1)(a)(ii).

43

104.    The services advertised with spurious depictions of Plaintiff's "Transamerica" service mark at the websites illustrated in this Complaint are identical to the services for which that mark is registered within the meaning of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and 18 U.S.C. § 2320(e)(1)(A)(ii).

105.    The spurious depictions of Plaintiff's "Transamerica" service mark illustrated in this Complaint are used "in connection with" the services covered by Plaintiff's federal service mark registrations within the meaning of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and 18 U.S.C. § 2320(e)(1)(A)(iii).

106.    The spurious depictions of Plaintiff's "Transamerica" service mark illustrated in this case are "likely to cause confusion, to cause mistake, or to deceive" within the meaning of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and 18 U.S.C. § 2320(e)(1)(A)(iv).

107.    By their acts aforesaid, Defendants have engaged, and are engaged, in the counterfeiting of Plaintiff's "Transamerica" service mark within the meaning of Sections 32(1) and 45 of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1127

108.    The irreparable harm to Plaintiff and the public resulting from Defendants' conduct, combined with the willfulness of Defendants' conduct and the manifest need for deterrence, warrant not only injunctive relief but also statutory damages pursuant to the Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104-153, § 7, 110 Stat. 1386 (July 2, 1996), codified at Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c), as well as costs and attorney fees pursuant to Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT II

### Contributory Service Mark
### Counterfeiting By Moniker Defendants

109.     Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

110.     On information and belief, the Moniker Defendants advertise their services as "domain profit maximization."

111.     On information and belief, the Moniker Defendants own or operate a website at www.domainsponsor.com, where they offer a service called "DomainSponsor."

112.     The Moniker Defendants describe their services as follows in a service mark application that they filed at the U.S. Patent and Trademark Office, which matured into U.S. Registration No. 3,618,068, registered May 12, 2009:

> Online marketing and advertising services; domain monetization services for monetizing web traffic visiting undeveloped domains;

> Parking domain names for others, namely, providing computer services for facilitation of the storage and monetization of domain name addresses; and

> Computer services, namely, analyzing internet traffic for the purpose of optimizing the content and advertisements on domain name pages; providing on-line non-downloadable software for customizing domain pages.

113.    The Moniker Defendants advertise their services as follows at

www.domainsponsor.com/product.php:

### Three easy ways to earn with DomainSponsor

### Domain Parking

We create and optimize custom landing pages for each of your domains, and deliver relevant ads and content precisely targeted to your visitors' needs. Then, we pay out shared revenue based on the earnings we secured for your domain.

### Domain Sales

Interested in selling your domains? Our sales services are provided to all DomainSponsor publishers free of charge. Our Domain Sales Tool allows you to set a minimum threshold and then view, accept, and reject offers made for your domain names.

### Referral Program

In the industry's most generous Referral Program, DomainSponsor pays you a bonus of up to 10 percent of the net earnings of any publisher that you refer. There's no limit to how many publishers you can refer.

### A smart partnership

Experience the advanced technology and responsive support of a complete monetization program. DomainSponsor is the leader in domain monetization — we've been in this business from the beginning, and we've continued to innovate to keep our publisher partners performing at the top of the industry.

DomainSponsor provides the industry's only complete optimization package built on simultaneous execution of semantic, behavioral, language, and landing page optimization to earn you more revenue than any other service. And only DomainSponsor can provide the industry's fastest payout: Net 7.

114.    By their acts aforesaid, the Moniker Defendants use the Internet to solicit

and enable their customers to register counterfeit domain names in the guise of fictitious

entities and anonymous individuals and to share the profits from "monetization" of those names in an environment completely devoid of transparence and accountability.

115.    Moniker has continued to register counterfeit domain names to its fictitious and anonymous customers although it has been required to relinquish counterfeit domain names so registered in response to repeated UDRP complaints.

116.    By way of example only, Moniker has continued to register domain names for at least four years to "Domains Ventures," ostensibly located in Xiamen, China, despite the multiple adverse UDRP decisions by a single arbitration service provider identified in Paragraph 62 above.

117.    By way of additional example, Moniker has continued registering domain names for at least three years to "Virtual Sky" despite the following UDRP decisions rendered against that entity by one of the arbitration services providers:

| Case No. | Domain Name(s) | Appearance | Decision | Date |
|---|---|---|---|---|
| 452231 | wherethediamondare.com | No | Transferred | 5/19/2005 |
| 535461 | retiredcollection.com | No | Transferred | 9/27/2005 |
| 537465 | rosedisplay.com | No | Transferred | 10/4/2005 |
| 610708 | sharedbooks.com | No | Transferred | 10/4/2005 |
| 611781 | adventurecrafts.com | No | Transferred | 2/1/2006 |
| 616661 | stylistyle.com | No | Transferred | 2/16/2006 |
| 724588 | herbsway.com, herbsaway.com | No | Transferred | 7/17/2006 |
| 931676 | attorneyforyou.com | No | Transferred | 4/20/2007 |
| 956484 | lableworks.com | No | Transferred | 5/23/2007 |
| 1125350 | tourvacations2go.com, resortvacation2go.com | No | Transferred | 2/28/2008 |

118.    Moniker, by reason of its role as an ICANN-accredited registrar, has the ability and duty to require factually accurate information from its customers, but Moniker has no intention to exercise that ability or discharge that duty, because doing so would effectively prevent the registration of counterfeit domain names by disclosing the true ownership of such names and enabling trademark and service mark owners to pursue remedies against the real parties in interest.

119.    By their acts aforesaid, Defendants are engaged in contributory service mark counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), causing irreparable injury to Plaintiff and the public, and warranting permanent injunctive relief and an assessment of statutory damages pursuant to the Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104-153, § 7, 110 Stat. 1386 (July 2, 1996), codified at Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT III

### Federal Service Mark Infringement By All Defendants

120.    Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

121.    Moniker, acting as the authorized licensee of the John Doe Defendants and/or otherwise in concert with them, with the intent to deceive the public, is using in commerce reproductions, counterfeits, copies and colorable imitations of Plaintiff's federally registered "Transamerica" service mark in connection with the sale, offering for sale, distribution and/or advertising of life insurance and financial services a manner that

is likely to cause confusion, mistake, and deception, leading the public falsely to believe

that the John Doe Defendants' websites, and the services advertised at those websites, are

the services of the Transamerica Companies, or are sponsored or approved by, or are in

some way connected with the Transamerica Companies.

122.    By their acts aforesaid, Defendants are engaged in federal service mark

infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1),

causing irreparable harm to Plaintiff and the public and warranting an assessment of

treble damages and attorney fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C.

§ 1117(c).

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the

Prayer for Relief.

## COUNT IV

### Contributory Service Mark Infringement by Moniker Defendants

123.    Plaintiff incorporates by reference all of its allegations in the preceding

paragraphs.

124.    By their acts aforesaid, Defendants have engaged in contributory service

mark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the

Prayer for Relief.

## COUNT V

### Cybersquatting by All Defendants

125.    Plaintiff incorporates by reference all of its allegations in the preceding

paragraphs.

126.     The Moniker Defendants, acting as the authorized licensee of the John

Doe Defendants and/or otherwise in concert with them, have registered, and are

trafficking in, using, and maintaining Internet domain names incorporating and imitating

Plaintiff's federally registered "Transamerica" service mark, with the bad faith intent to

profit from the goodwill associated with that mark.

127.     Plaintiff's "Transamerica" service mark was distinctive, and had acquired

distinctiveness, long before Moniker registered the Internet domain names identified in

this Complaint to the John Doe Defendants.

128.     The Internet domain names identified in this Complaint are identical

and/or confusingly similar to Plaintiff's "Transamerica" service mark.

129.     Defendants do not have any intellectual property or other rights in the

name "Transamerica."

130.     Defendants have never used the name "Transamerica" to identify

themselves, and have never been commonly known by the name "Transamerica."

131.     On information and belief, Defendants have never made any use of the

name "Transamerica" in connection with the offering or sale of any *bona fide* good or

service.

132.     On information and belief, Defendants have never made any *bona fide* fair

use of the name "Transamerica" on any website.

133.     Moniker has registered the domain names identified in this Complaint and

has used those domain names, or enabled them to be used, acting as the authorized

licensee of the John Doe Defendants and/or otherwise in concert with them, in a scheme

to divert consumers from the Transamerica Companies' websites to websites accessible

under those domain names for Defendants' mutual commercial gain, resulting in a likelihood of confusion as to the source, sponsorship, affiliation or endorsement.

134.    By their acts aforesaid, Defendants have violated the Anticybersquatting Consumer Protection Act ("ACPA"), Pub. L. No. 106-113, 113 Stat. 1501 (1999), codified at Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d), causing irreparable injury to Plaintiff and the public.

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT VI

### Contributory Cybersquatting by the Moniker Defendants

135.    Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

136.    On information and belief, Moniker, in its role as the authorized licensee of its fictitious customers, and/or otherwise in concert with them, orchestrates, participates, and/or collaborates in the process of providing UDRP dispute resolution providers with false registrant information in response to UDRP complaints seeking the recovery of Internet domain names registered by Moniker to its fictitious and anonymous customers.

137.    By its acts aforesaid, Moniker intentionally induces and/or enables its registrant customers to commence and continue registering, using and trafficking in Internet domain names incorporating and imitating trademarks and service marks owned by Plaintiff and others.

138.    On information and belief, Moniker has supplied and continues to supply domain name registration and renewal services to its registrant customers with actual and constructive knowledge that its services are being used to cybersquat on trademarks and service marks owned by Plaintiff and others.

139.    On information and belief, Moniker has the ability to control and correct the false information provided to the public by Moniker's customers.

140.    By its acts aforesaid, Moniker has engaged, and is engaged, in contributory cybersquatting in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), causing irreparable injury to Plaintiff and the public.

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT VII

### Federal Unfair Competition, False
### Representation and False Designation of Origin By All Defendants

141.    Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

142.    By their acts aforesaid, Defendants have engaged, and are engaged, in federal unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), causing irreparable injury to Plaintiff and the public.

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT VIII

### Federal Dilution by All Defendants

143.     Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

144.     Plaintiff's federally registered "Transamerica" service mark is famous, and was famous before the Defendants' first commercial use of the Internet domains identified in this Complaint, within the meaning of the Federal Trademark Dilution Act, codified at Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), based on extensive sales and advertising under that mark.

145.     Defendants' use of Plaintiff's federally registered "Transamerica" service mark has diluted, and is likely to dilute, the distinctive quality of that mark, causing it to be blurred in the minds of consumers and to lose its commercial significance as a designation of source and origin.

146.     Defendants use of the domain names identified in this Complaint has weakened, and is likely to weaken, the commercial magnetism of Plaintiff's "Transamerica" service mark and to diminish its ability to evoke its original associations.

147.     By their acts aforesaid, Defendants have diluted, and are diluting, the selling power of Plaintiff's "Transamerica" service mark by blurring its uniqueness and singularity, and by tarnishing it with negative associations, in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT IX

### Common Law Unfair Competition By All Defendants

148.    Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

149.    This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

150.    By their acts aforesaid, Defendants have engaged, and are engaged, in common law unfair competition under Florida law.

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT X

### Florida Dilution By All Defendants

151.    Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

152.    This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

153.    Because of its substantial, continuous and exclusive use by Plaintiff for many years, the large sums in advertising expended on it by Plaintiff over the years, including within the State of Florida, and its strong recognition among the purchasing public, Plaintiff's "Transamerica" service mark is famous within the State of Florida, and is entitled to broad protection, with or without a showing of competition between the parties, and with or without an actual likelihood of confusion between the marks, pursuant to the Florida dilution statute, Fla.Stat. § 495.151.

154.    Defendants' use of Plaintiff's "Transamerica" service mark has diluted, and is likely to dilute, the distinctive quality of that mark, depriving it of commercial value and injuring the business reputation of Plaintiff, in violation of the Florida dilution statute, Fla.Stat. § 495.151.  By their actions as described in this Complaint, Defendants willfully intended to trade on Plaintiff's reputation and cause dilution of its famous mark.

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT XI

### Violation of Florida
### Deceptive and Unfair Trade Practices Act By All Defendants

155.    Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

156.    This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

157.    Defendants, by their acts aforesaid, have engaged, and are engaging, in "[u]nfair methods of competition, ... and unfair [and] deceptive acts or practices in the conduct of ... trade or commerce" in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204(1).

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

## COUNT XII

### Florida Statutory False Advertising By All Defendants

158.    Plaintiff incorporates by reference all of its allegations in the preceding paragraphs.

159.    This Court has original jurisdiction over this pendent claim pursuant to 28 .S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

160.    Defendants, by their acts aforesaid, have engaged, and are engaged, in false advertising in violation of Fla. Stat. §§. 817.06 and 817.40-817.47.

WHEREFORE, Plaintiff demands judgment against Defendants as set forth in the Prayer for Relief.

### PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants as follows:

1.    For an order permanently enjoining Defendants, collectively and individually, and their officers, shareholders, partners, principals, agents, assignees, beneficiaries, successors, licensees, distributors, attorneys, proxies, alter egos, aliases, and all other persons acting in concert with Defendants collectively or individually, from:

(a)    registering or using as a trade name, trademark, service mark, Internet domain name, or portion thereof, any name or term that incorporates, imitates, or is confusingly similar to Plaintiff's "Transamerica" service mark;

(b)    purchasing, selling, or using any form of advertising including keywords or "Adwords" in Internet advertising containing any mark that incorporates, initiates, or is confusingly similar to Plaintiff's "Transamerica" service mark, and requiring Defendants, when purchasing or selling Internet

advertising using keywords, Adwords or the like, to activate the name "Transamerica" as a negative keyword or negative Adword in any Internet advertising purchased, sold or used;

(c)      infringing Plaintiff's "Transamerica" service mark, including all written and spoken terms equivalent or confusingly similar thereto;

(d)      using Plaintiff's "Transamerica" service mark or any name or mark that incorporates, imitates, or is reminiscent of or confusingly similar thereto, for any product or service, or in any letterhead, sign, website, advertising or promotion, e-mail or other sales solicitation or business listing, either in print, broadcast, electronic or other form, either separately or compositely with other words;

(e)      using Plaintiff's "Transamerica" service mark, or any name or mark confusingly similar thereto, as a corporate and/or trade name and/or fictitious name or portion thereof;

(f)      making representations, directly or indirectly, to anyone, anywhere, by any means, including but not limited to unauthorized co-branding, that Defendants are related to, associated or affiliated with, or sponsored, endorsed or approved by Plaintiff;

(g)      in any manner depicting, uttering or imitating Plaintiff's "Transamerica" service mark for the purpose of misappropriating the trade and goodwill of Plaintiff by association, imitation, fraud, mistake or deception; and

(h)      unfairly competing with Plaintiff in any manner.

2.　　For an order holding that Defendants' acts described in this Complaint constitute direct and contributory federal service mark counterfeiting under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), direct and contributory federal service mark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); direct and contributory violation of the Anticybersquatting Consumer Protection Act ("ACPA"), Pub. L. No. 106-113, 113 Stat. 1501 (1999), codified at Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); violation of the Federal Trademark Dilution Act, codified at Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); violation of the Florida dilution statute, Fla.Stat. § 495.151 (2008); violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* (2008); and common law unfair competition under Florida law.

3.　　For an order directing Defendants to file with this Court and serve upon Plaintiff within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with, and will continue to comply with, the injunction and further orders of this Court.

4.　　For an accounting of profits pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

5.　　For lost profits and damages in such amount as may appear appropriate following a trial on the merits, pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

6.　　For statutory damages in the amount of $100,000 per counterfeit domain name, pursuant to 15 U.S.C. § 1125(d)(1)(c).

7.      For treble damages pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

8.      For statutory damages pursuant to the Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104-153, § 7, 110 Stat. 1386 (July 2, 1996), codified at Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

9.      For costs and attorney fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a), and Fla.Stat. §501.2105.

10.    For such other and further relief as the Court may deem just and proper

Respectfully submitted this 28th day of August 2009.

<div style="margin-left:40%">

s/Ava K. Doppelt_____
Ava K. Doppelt, Florida Counsel
Florida Bar No. 393738
adoppelt@addmg.com
ALLEN, DYER, DOPPELT,
MILBRATH & GILCHRIST, P.A.
255 South Orange Avenue, Suite 1401
Post Office Box 3791
Orlando, FL  32802-3791
Telephone:  (407) 841-2330
Facsimile:  (407) 841-2343

Robert H. Thornburg
Florida Bar No. 630829
rthornburg@addmg.com
777 Brickell Avenue, Suite 1114
Miami, FL 33131
Telephone:  (305)374-8303
Facsimile:  (305)374-8306

**Attorneys for Transamerica Corporation**
**Of Counsel:**
Bruce A. McDonald
bmcdonald@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
750 9th St., N.W., Suite 550
Washington, D.C. 20001
Telephone:  (202) 419-4235
Facsimile:  (202) 419-3454

</div>

### Exhibits

| | |
|---|---|
| **A** | Transamerica U.S. Service Mark Registrations |
| **B** | 380 UDRP Cases Involving Domain Names Registered by Moniker |
| **C** | Moniker Customers Ostensibly Located in Offshore Caribbean Countries |
| **D** | Moniker Customers Ostensibly Located in China |