

**NATIONAL ARBITRATION FORUM**

**DECISION**

Transamerica Corporation v. E-Trans, LLC
Claim Number: FA0902001248692

**PARTIES**

Complainant is **Transamerica Corporation** ("Complainant"), represented by **Bruce A. McDonald**, of **Schnader Harrison Segal & Lewis LLP**, Washington, D.C., USA.

Respondent is **E-Trans, LLC** ("Respondent"), represented by **Andrew Breines**, of **The Law Offices of Andrew S. Breines**, Massachusetts, USA.

**REGISTRAR AND DISPUTED DOMAIN NAME**

The domain name at issue is **<etransamerica.com> ("Domain Name")**, registered with **Tucows Inc**.

**PANEL**

The undersigned certifies that he has acted independently and impartially and to the best of his knowledge has no known conflict in serving as Panelist in this proceeding.

**CLIVE LINCOLN ELLIOTT** as Panelist.

**PROCEDURAL HISTORY**

Complainant submitted a Complaint to the National Arbitration Forum electronically on February 20, 2009; the National Arbitration Forum received a hard copy of the Complaint on February 20, 2009.

On February 20, 2009, Tucows Inc. confirmed by e-mail to the National Arbitration Forum that the **<etransamerica.com>** domain name is registered with Tucows Inc. and that Respondent is the current registrant of the name. Tucows Inc. has verified that Respondent is bound by the Tucows Inc. registration agreement and has thereby agreed to resolve domain-name disputes brought by third parties in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy").

On February 27, 2009, a Notification of Complaint and Commencement of Administrative Proceeding (the "Commencement Notification"), setting a deadline of March 19, 2009 by which Respondent could file a Response to the Complaint, was transmitted to Respondent via e-mail, post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts, and to postmaster@etransamerica.com by e-mail.

A timely Response was received and determined to be complete on March 18, 2009.

Complainant submitted an Additional Submission to the National Arbitration Forum on March 23, 2009, which was deemed timely in accordance with the National Arbitration Forum's Supplemental Rule 7.

Respondent submitted an Additional Submission to the National Arbitration Forum on March 25, 2009, which was deemed timely in accordance with the National Arbitration Forum's Supplemental Rule 7.

On March 27, 2009, pursuant to Complainant's request to have the dispute decided by a single-member Panel, the National Arbitration Forum appointed Clive Elliott as Panelist.

**RELIEF SOUGHT**

Complainant requests that the Domain Name be transferred from Respondent to Complainant.

**PARTIES' CONTENTIONS**

**A. Complainant**

Complainant states that it is a Delaware financial services organisation with its headquarters in Cedar Rapids, Iowa. It also states that it is a provider of life insurance, investment and retirement services, operating through a network of wholly owned subsidiaries and marketing divisions that have used the name "Transamerica" as their principal trade name and service mark since 1929. Complainant asserts that its annual revenues from financial and investment services offered under the name "Transamerica" currently exceed $8 billion, and that it has expended hundreds of millions of dollars over many years in advertising and promotion of the name "Transamerica" in connection with such services. Complainant also asserts that the name "Transamerica" appears on its website at <transamerica.com.

Complainant believes that after 79 years of substantial and uninterrupted use, combined with extensive advertising, the "Transamerica" name is well known to the public as a service mark that identifies Complainant and its subsidiaries as the source and origin of financial services.

Complainant contends that Respondent is a medical transcription services company with offices in Lakeville, Massachusetts and Clive, Iowa. Complainant also contends that Respondent uses the Domain Name for a website at **<etransamerica.com>**. Complainant asserts that Respondent has never used "Transamerica" as a trademark, service mark or trade name, and also contends that Respondent has never been known by any name containing the term "Transamerica". Complainant contends that Respondent has no apparent purpose or need for registration of **<etransamerica.com>** as an Internet domain name other than to trade off the goodwill of Complainant.

EXHIBIT
C

trade on the goodwill of Complainant.

Complainant asserts that through its counsel it sent a letter to Respondent on June 24, 2009 and, after receiving no response, sent a further letter on July 23, 2008. Complainant says that its Counsel received a response from Respondent by letter dated July 25, 2008 rejecting Complainant's demand on the ground that the Domain Name is not identical to Complainant's federally registered service marks and that the parties provide different services. Complainant says that through its counsel they addressed those points in a letter to Respondent's counsel dated December 9, 2008, to which they have received no response.

Complainant submits that "TRANSAMERICA" is registered as a service mark with the United States Patent and Trademark Office and such registration establishes Complainant's rights in the mark.

Complainant contends that Respondent's Domain Name contains Complainant's mark in its entirety, preceded by only the generic prefix "e." Complainant asserts that the addition of a generic prefix to its registered service mark does not distinguish the Domain Name from Complainant's mark for purposes of confusing similarity and therefore Complainant asserts that the Domain Name is legally identical and confusingly similar to its own mark.

Complainant accepts that the parties are not in competition and that Complainant issues health insurance whilst Respondent is a medical transcription services company.

Nevertheless, Complainant believes that there is strong support for a determination of bad faith and registration and use due to the fact that Respondent ignored the initial letter of Complainant's counsel dated June 24, 2008, as well as also failing to respond to its letter dated December 9, 2008.

## B. Respondent

Respondent states that it is a limited liability company, with its principal place of business in Lakeville, Massachusetts, and is engaged solely in the provision of transcription services via digital dictation transmitted electronically from customers to it's servers and then the transcripts are transmitted electronically back to the customers via the Internet utilizing the Domain Name. Respondent states that its customers use proprietary hardware and software specifically developed for Respondent that have embedded within the Domain Name as the means and method of electronic delivery.

Respondent says that its principal, Eileen Peal, is a dual citizen of the United States and Ireland and has been physically present in the United States for approximately seven years. Respondent submits that due to Ms. Peal's unfamiliarity with the United States, and with limited knowledge of American businesses, she was not aware of Complainant's company, its services or its registered trademarks until after she was first contacted by Complainant's counsel in June 2008, two years after the original registration of the Domain Name.

Respondent submits that it does not dispute the timeline alleged by Complainant and asserts that it did not ignore Complainant's communications. Respondent asserts that it did respond to the December 8, 2008 letter and, because Complainant's counsel had not notified Respondent of the relocation of its offices in that communication, Respondent's response was sent to the incorrect address at first. Respondent asserts the parties provide different services to clients and customers who would not confuse the origin of either party's goods and services and disputes the allegations that the Domain Name is confusingly similar or identical to Complainant's registered trademark.

Respondent states that it has and continues to have a legitimate interest in the Domain Name and suggests this is demonstrated by Respondent's continuous use of the Domain Name since its initial registration in November 2006 for the purpose of operating the E-Trans, LLC transcription business via its website located at **<etransamerica.com>**. Respondent states that it chose the Domain Name due to the manner in which it describes Respondent's business, i.e. "electronic,","transcription," and throughout "America" and not for the purpose of trading off of Complainant's goodwill. Respondent submits that the Domain Name speaks to the electronic nature of the business, the truncated form of transcript and the fact that Respondent has customers throughout America. Respondent asserts that its use of the Domain Name as a conduit through which its customers can communicate with Respondent, order transcriptions and through which prospective customers can find Respondent, all of which were continuous uses from the date of registration of the Domain Name through the present time, shows the Respondent has a legitimate interest in the Domain Name and has rights in the field of transcription services.

Respondent does not dispute that Complainant has rights to the term "Transamerica" in the insurance and financial services industry, but denies the assumption that such use makes "Transamerica" a famous mark. Respondent says that it denies the allegations of the Complaint related to bad faith use or registration of the Domain Name stating that Respondent is in a different business than Complainant, provides specific services in a narrow field, and does not compete with Complainant.

Respondent states that it has not registered or acquired the Domain Name primarily for the purpose of selling renting or otherwise transferring the Domain Name to Complainant for an amount in excess of any documented out of pocket costs directly related to the Domain Name. Respondent states that it indicated to Complainant that there were costs associated with any such transfer due to the technology used by Respondent in the provision of its services that would require a third party technician to physically reprogram each of Respondent's customers' hardware and software should a new or different domain name be used by Respondent. Respondent states that while such costs would not be exorbitant, they would also not be insignificant.

## C. Complainant's Additional Submissions

Complainant responded to Respondent's submissions arguing that Respondent in its submissions raised no genuine issue regarding the confusing similarity between Complainant's mark and the Domain Name or in regard to the asserted legitimacy of Respondent's rights and interests in that name. Complainant asserts that confusing similarity is established because Respondent's Domain Name is identical to Complainant's mark but for the prefix "e". The prefix "e" is a generic reference to "electronic" that is incapable of distinguishing Respondent's Domain Name from Complainant's mark. Complainant also asserts that as the Domain Name is identical to Complainant's mark and Respondent has no trademark interest in the name, confusing similarity would be established even if the name "Transamerica" were not a famous mark and Complainant believes that as its mark is extremely well known there is no genuine dispute on the issue of confusing similarity.

Complainant submits that Respondent has no reason for wanting the name "Transamerica" other than to appropriate the goodwill of Complainant's mark and believes that Respondent's position that the Domain Name was chosen for its descriptive properties is insufficient to overcome a finding of bad faith.

## D. Respondent's Additional Submissions

Respondent asserts that Complainant has raised no new issues of fact in its additional submissions and reiterates its original submissions that the Domain Name

was always intended to be a marketing tool to attract potential customers to a transcription services website that provided services throughout America.

**FINDINGS**

Having established the first but having failed to establish the second and third elements required under the ICANN Policy, relief is denied.

**DISCUSSION**

Paragraph 15(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules") instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

Paragraph 4(a) of the Policy requires that the Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(1)  the domain name registered by the Respondent is identical or confusingly similar to a trademark or service mark in which the Complainant has rights;
(2)  the Respondent has no rights or legitimate interests in respect of the domain name; and
(3)  the domain name has been registered and is being used in bad faith.

**Identical or Confusingly Similar:** *Policy ¶ 4(a)(i).*

Complainant asserts its rights in the TRANSAMERICA mark through its registrations of the mark with the United States Patent and Trademark Office ("USPTO") (i.e. Reg. No. 1,635,681 issued February 19, 1991).  The Panel finds that Complainant has sufficient rights in the mark under Policy ¶ 4(a)(i).  *See Reebok Int'l Ltd. v. Santos*, FA 565685 (Nat. Arb. Forum Dec. 21, 2005) (finding trademark registration with the USPTO was adequate to establish rights pursuant to Policy ¶ 4(a)(i)).

Complainant asserts that the Domain Name is confusingly similar to Complainant's TRANSAMERICA mark despite the addition of the letter "e" and the generic top-level domain ".com."  The Panel sees merit in the argument that neither addition creates a meaningful distinction under the Policy, and accordingly that the Domain Name is confusingly similar to Complainant's mark under Policy ¶ 4(a)(i).  Respondent in turn contends that the Domain Name is not confusingly similar to Complainant's mark due to the parties' distinct industries. However, the Panel is entitled to approach the matter on the basis that such a determination is not necessary under the Policy ¶ 4(a)(i) as this portion of the Policy considers only whether Complainant has rights in the mark and whether the Domain Name is identical or confusingly similar to Complainant    's mark.  However, because this argument is inapplicable under Policy ¶ 4(a)(i), it will be addressed in Policy ¶¶ 4(a)(ii) and (iii).

Accordingly, given that each part of the three stage test set out in the Policy ¶ 4(a)(i), (ii) and (iii) needs to be addressed the Panelist finds that the Domain Name is identical or confusingly similar to Complainant's mark.

**Rights and Legitimate Interests:** *Policy ¶ 4(a)(ii).*

Notwithstanding the above findings the Panel is entitled, under the appropriate circumstances, to conclude that Complainant has not established a *prima facie* case in support of its arguments that Respondent lacks rights and legitimate interests under Policy ¶ 4(a)(ii).  *See Terminal Supply, Inc. v. HI-LINE ELECTRIC,* FA 746752 (Nat. Arb. Forum Aug. 24, 2006) (holding that the complainant did not satisfactorily meet its burden and as a result found that the respondent had rights and legitimate interests in the domain name under UDRP ¶ 4(a)(ii)); *see also Workshop Way, Inc. v. Harnage,* FA 739879 (Nat. Arb. Forum Aug. 9, 2006) (finding that the respondent overcame the complainant's burden by showing it was making a *bona fide* offering of goods or services at the disputed domain name).

Respondent asserts that it has operated a medical transcription service since registering the Domain Name over the Internet, and that the resolving website is critical to its business.  Respondent stresses that it never had notice of Complainant, and chose the Domain Name to reflect its electronic transcription services, which are provided throughout America.  That explanation appears to be plausible given that the Respondent provides an "electronic transcription service" throughout America, thereby making the Domain Name an entirely appropriate one for a business of this sort.

Respondent also asserts that there is no overlap between the parties, and that Complainant does not operate in this niche.  The Panel finds that Respondent has made use of the Domain Name in connection with what appears to be a *bona fide* offering of goods or services pursuant to Policy ¶ 4(c)(i).  *See Workshop Way, Inc. v. Harnage*, FA 739879 (Nat. Arb. Forum Aug. 9, 2006) (finding that the respondent overcame the complainant's burden by showing it was making a *bona fide* offering of goods or services at the disputed domain name).

On that basis Complainant has failed to establish this ground.

**Registration and Use in Bad Faith:** *Policy ¶ 4(a)(iii).*

The Panel finds that Complainant has failed to meet the burden of proof of bad faith registration and use under Policy ¶ 4(a)(iii).  *See Starwood Hotels & Resorts Worldwide, Inc. v. Samjo CellTech.Ltd*, FA 406512 (Nat. Arb. Forum Mar. 9, 2005) (finding that the complainant failed to establish that the respondent registered and used the disputed domain name in bad faith because mere assertions of bad faith are insufficient for a complainant to establish Policy ¶ 4(a)(iii)).

Having concluded that Respondent has rights or legitimate interests in the Domain Name pursuant to Policy ¶ 4(a)(ii), the Panel may also find that Respondent did not register or use the disputed domain name in bad faith pursuant to Policy ¶ 4(a)(iii).  *See Lockheed Martin Corp. v. Skunkworx Custom Cycle*, D2004-0824 (WIPO Jan. 18, 2005) (finding that the issue of bad faith registration and use was moot once the panel found the respondent had rights or legitimate interests in the disputed domain name).

Respondent asserts that it has not violated any of the Policy 4(b) factors, and that it never intended to target Complainant because: (1) the two parties operate in distinct fields; and (2) Respondent had never heard of Complainant as the principal officer of Respondent resided in Europe for much of her life.  Once again, this explanation is not entirely implausible and it needs to be considered in the context that the Domain Name has obvious descriptive relevance in relation to the services provided by Respondent.

**DECISION**

Having established the first but having failed to establish the second and third elements required under the ICANN Policy, the Panel concludes that relief shall be **DENIED**.

Clive Elliott, Panelist
Dated: April 20, 2009

Click Here to return to the main Domain Decisions Page.

Click Here to return to our Home Page

**NATIONAL ARBITRATION FORUM**



**NATIONAL ARBITRATION FORUM**

**DECISION**

Transamerica Corporation v. One Trans-America Corporation
Claim Number: FA0903001250996

**PARTIES**

Complainant is **Transamerica Corporation** ("Complainant"), represented by **Bruce A. McDonald**, of **Schnader Harrison Segal & Lewis LLP**, Washington, DC, USA.  Respondent is **One Trans-America Corporation** ("Respondent"), Michigan, USA.

**REGISTRAR AND DISPUTED DOMAIN NAME**

The domain name at issue is **<onetransamerica.com>**, registered with **Godaddy.com, Inc**.

**PANEL**

The undersigned certifies that he has acted independently and impartially and to the best of his knowledge has no known conflict in serving as Panelist in this proceeding.

David E. Sorkin as Panelist.

**PROCEDURAL HISTORY**

Complainant submitted a Complaint to the National Arbitration Forum electronically on March 6, 2009; the National Arbitration Forum received a hard copy of the Complaint on March 6, 2009.

On March 6, 2009, Godaddy.com, Inc. confirmed by e-mail to the National Arbitration Forum that the **<onetransamerica.com>** domain name is registered with Godaddy.com, Inc. and that the Respondent is the current registrant of the name.  Godaddy.com, Inc. has verified that Respondent is bound by the Godaddy.com, Inc. registration agreement and has thereby agreed to resolve domain-name disputes brought by third parties in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy").

On March 17, 2009, a Notification of Complaint and Commencement of Administrative Proceeding (the "Commencement Notification"), setting a deadline of April 6, 2009 by which Respondent could file a Response to the Complaint, was transmitted to Respondent via e-mail, post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts, and to postmaster@onetransamerica.com by e-mail.

A timely Response was received and determined to be complete on April 6, 2009.

On April 15, 2009, pursuant to Complainant's request to have the dispute decided by a single-member Panel, the National Arbitration Forum appointed David E. Sorkin as Panelist.

**RELIEF SOUGHT**

Complainant requests that the domain name be transferred from Respondent to Complainant.

**PARTIES' CONTENTIONS**

A. Complainant

Complainant is a well-known provider of life insurance, investment, and retirement services, and holds United States service mark registrations for the mark TRANSAMERICA.  In addition, Complainant formerly was engaged in transportation-related services and used the mark for these services as well.  Complainant contends that the domain name registered by Respondent, **<onetransamerica.com>**, is confusingly similar to its TRANSAMERICA mark.

Complainant further alleges that Respondent lacks rights or legitimate interests in the domain name, on the grounds that Respondent is not known by the name, has used the domain name solely for pay-per-click advertising, and cannot legitimately use the name for transportation services.

Finally, Complainant contends that Respondent registered and used the domain name in bad faith.  In support thereof, Complainant claims that Respondent selected the domain name with the intention to trade on Complainant's goodwill, and that Respondent has attempted to sell the domain name to Complainant.

B. Respondent

Respondent apparently is in the process of establishing a transportation-related business involving freight brokerage.  Respondent was incorporated in the State of Michigan under the name One Trans-America Corporation on August 31, 2007, and registered the disputed domain name **<onetransamerica.com>** two months thereafter.  Respondent states that it also ordered business cards and related materials and incurred other setup-related costs, but after being contacted by Complainant it suspended its efforts to establish a corporate identity.  In January 2009 Complainant changed its corporate name to One Transit-America Corporation.

Respondent denies that the disputed domain name is confusingly similar to Complainant's mark.  Respondent claims that it does have rights or legitimate interests in the domain name on the grounds that it reflects Respondent's former business name, which was recognized by the State of Michigan.  Finally, Respondent denies having registered or used the domain name in bad faith, asserting that Respondent's sole purpose was to create an Internet presence for its business.

**FINDINGS**

The Panel finds that the disputed domain name **<onetransamerica.com>** is confusingly similar to a mark in which Complainant has rights, and that Respondent lacks rights or legitimate interests in respect of the disputed domain name.  The Panel further finds that Complainant has failed to prove that the disputed domain

lacks rights or legitimate interests in respect of the disputed domain name." The Panel further finds that Complainant has failed to prove that the disputed domain name was registered and is being used in bad faith.

**DISCUSSION**

Paragraph 15(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules") instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

Paragraph 4(a) of the Policy requires that the Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(1)  the domain name registered by the Respondent is identical or confusingly similar to a trademark or service mark in which the Complainant has rights;
(2)  the Respondent has no rights or legitimate interests in respect of the domain name; and
(3)  the domain name has been registered and is being used in bad faith.

**Identical and/or Confusingly Similar**

The disputed domain name differs from Complainant's mark only in that it prefaces the mark with the word "one" and appends the generic top-level domain suffix ".com". Neither of these additions substantially distinguishes the domain name from the mark. Confusing similarity for purposes of Paragraph 4(a)(i) is determined solely by a textual comparison of the domain name and the mark, without regard to the use to which either may be put. *See e.g. GoDaddy.com, Inc. v. Swsnet,* D2007-1352 (WIPO Nov. 7, 2007); *WIPO Overview of WIPO Panel Views on Selected UDRP Questions* ¶ 1.2 (essentially describing this as the "consensus view" among panelists). The Panel therefore finds that the disputed domain name is confusingly similar to Complainant's registered mark.

**Rights or Legitimate Interests**

Complainant having made a prima facie case that Respondent lacks rights and legitimate interests in the disputed domain name, the burden shifts to Respondent to come forward with concrete evidence of such rights or interests. *See e.g. Microsoft Corp. v. John S. Dalton,* FA 747780 (Nat. Arb. Forum Aug. 23, 2006). Respondent has discontinued the use of the name One Trans-America for its business, and apparently never undertook any actual business under that name, aside from early efforts to develop a corporate identity. Absent any other indications that Respondent has a present right or interest in the name, the Panel finds that Complainant has met its burden of proof on this issue.

**Registration and Use in Bad Faith**

Paragraph 4(a)(iii) requires Complainant to prove that Respondent registered the disputed domain name in bad faith, and that Respondent is using it in bad faith. Complainant's bad faith claims rest primarily upon two assertions: that Respondent selected the domain name with the intention to trade on Complainant's goodwill, and that Respondent has attempted to sell the domain name to Complainant. Respondent denies that it acted in bad faith, asserting that its sole purpose was to create an Internet presence for its business, which had already been incorporated under a corresponding name.

Under the circumstances presented here, the Panel considers Respondent's explanation to be credible. It seems rather unlikely to this Panel that Respondent would have formed a corporation and undertaken other preparatory activities solely to justify its registration and use of a domain name incorporating Complainant's mark prefaced by the word "one." Furthermore, the pay-per-click advertisements appearing on the website to which the domain name resolves appear to have been placed there automatically by the registrar. (The page states that it "is parked free, courtesy of GoDaddy.com."). Although such use may be imputed to a respondent in appropriate circumstances, in this case the Panel does not view it as indicative of bad faith relating back to the initial registration of the domain name.

Nor is Respondent's alleged attempt to sell the domain name particularly probative of Respondent's intent. Respondent expressed a willingness to consider a purchase offer, but only after having been approached by Complainant, and it is not clear that Respondent was seeking to recover more than its costs actually incurred.

The Panel finds that Complainant has failed to meet its burden of proving bad faith registration and use.

**DECISION**

Having considered all three elements required under the ICANN Policy, the Panel concludes that relief shall be **DENIED**.

David E. Sorkin, Panelist
Dated:  April 29, 2009

Click Here to return to the main Domain Decisions Page.

Click Here to return to our Home Page

**NATIONAL ARBITRATION FORUM**
