1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                          MIAMI DIVISION

3                    Case 09-60973-CIV-Altonaga

4

TRANSAMERICA CORPORATION,
5
                 Plaintiff,
6
                                            MIAMI, FLORIDA
7      vs.
                                            NOVEMBER 6, 2009
8   MONIKER ONLINE SERVICES, LLC.,
    et al.,
9
                 Defendants.
10  _____

11                   TRANSCRIPT OF ORAL ARGUMENT
                  MOTION TO DISMISS and RULE 11 SANCTIONS
12              BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                    UNITED STATES DISTRICT JUDGE
13
    APPEARANCES:
14
    FOR THE PLAINTIFF:
15
                              AVA K. DOPPELT, ESQ.
16                            Allen, Dyer, Doppelt,
                              Milbrath & Gilchrist, P.A.
17                            255 South Orange Avenue, Ste. 1401
                              Orlando, FL 32801 - 407.841.2330.
18                            Email:  adoppelt@addmg.com

19                            ROBERT H. THORNBURG, ESQ.
                              Allen, Dyer, Doppelt,
20                            Milbrath & Gilchrist, P.A.
                              777 Brickell Avenue, Ste. 1114
21                            Miami, FL 33131 - 305.374.8303
                              Email:  rthornburg@addmg.com
22
                              BRUCE A. McDONALD, ESQ.
23                            Schnader, Harrison,
                              Segal & Lewis, LLC
24                            750 9th Street N.W., Ste. 550
                              Washington, D.C. 20001 - 202.419.4235
25                            Email:  bmcdonald@schnader.com

```
 1

 2                              DAVID SMITH, ESQ.
                                Schnader, Harrison,
 3                              Segal & Lewis, LLC
                                1600 Market Street, Ste. 3600.
 4                              Philadelphia, PA 19103 - 215.751.2249
                                Email:  dsmith@schnader.com
 5

 6   FOR THE DEFENDANT:

 7                              MIGUEL M. de la O, ESQ.
                                JOEL S. MAGOLNICK, ESQ.
 8                              de la O, Marko, Magolnick
                                & Leyton, P.A.
 9                              3001 S.W. 3rd Avenue
                                Miami, FL 33139 - 305.285.2000
10                              Email:  delao@dmmllaw.com
                                        magolnick@dmmllaw.com
11
                                WILLIAM A. DELGADO, ESQ.
12                              Willenken, Wilson, Loh & Lieb, LLP
                                707 Wilshire Boulevard, Ste. 3850
13                              Los Angeles, CA 90017 - 213.955.8032
                                Email:  wdelgado@willenken.com
14
     REPORTED BY:
15
                                BARBARA MEDINA,
16                              Official United States Court Reporter
                                Wilkie D. Ferguson, Jr.
17                              United States Courthouse
                                400 North Miami Avenue, Ste. 12-2
18                              Miami, FL   3128 -   305.523.5518
                                               (Fax) 305.523.5519
19                              Email:  barbmedina@aol.com

20

21

22

23

24

25
```

TABLE OF CONTENTS

Page

Reporter's Certificate .................................... 69

INDEX TO EXHIBITS

| Exhibits | Marked for Identification | | Received in Evidence | |
| --- | --- | --- | --- | --- |
| Description | Page | Line | Page | Line |

CITATION INDEX

Page

Bird versus Parsons ....................................... 15

Cannova ................................................... 23

Compana versus Aetna ...................................... 35

Dell versus Belgium Domains ............................... 26

Flentye versus Kathrein ................................... 25

Ford versus Greatdomain ................................... 19

Gaylord Entertainment Company versus Nevis Domains ........ 30

Hamptons Locations versus Rubens .......................... 31

Iqbal ..................................................... 19

Kertesz ................................................... 23

Lockheed I ................................................ 14

Perfect 10 ................................................ 43

Solid Host ................................................ 28

Sony Corporation versus Universal City .................... 13

Tiffany versus eBay ....................................... 42

1  Twombly ................................................. 19
2  Verizon ................................................. 27
3  Vulcan Golf ............................................. 20

4

5

6                    SIDEBAR CONFERENCE INDEX

7  Descriptions                                          Page

8                 ADMINISTRATIVE CONVENTIONS:

9       When counsel does not identify themselves each time they

10  address the Court during a telephone conference, the

11  industry-standard speaker identification is indicated by

12  chevrons, i.e., >>>:

13

14

15

16

17

18

19

20

21

22

23

24

25

 1          THE COURT:  Please be seated.  Good morning.

 2          Transamerica versus Moniker Online Services.  Could I

 3  have counsel state your names for the record, please.

 4          MS. DOPPELT:  Good morning, Your Honor.  My name is

 5  Ava Doppelt of Allen, Dyer, Doppelt, Milbrath & Gilchrist in

 6  Orlando.

 7          Do you want me to introduce everybody else?

 8          THE COURT:  Certainly.

 9          MS. DOPPELT:  To my right is Bruce McDonald of the law

10  firm of Schnader, Harrison, Segal & Lewis in Philadelphia.

11  Next to him is David Smith, also of Schnader, Harrison, and --

12  I'm sorry --  from Washington.  Mr. Smith is from Philadelphia.

13  On the other side is Robert Thornburg from our firm's Miami

14  office.  Behind me -- I don't know if you can see - is Jill

15  Handley, who is the vice-president and associate general

16  counsel of Transamerica Corporation.  She's here from Cedar

17  Rapids, Iowa.

18          THE COURT:  Oh, my goodness.  You've all come from --

19  except for Mr. Thornburg -- from far.  Glad you could make it.

20          For the defendants?

21          MR. de la O:  Good morning, Your Honor.  Miguel de la

22  O, from de la O, Marko, Magolnick & Leyton.  To my left is Joel

23  Magolnick, from my firm also here in Miami.  To my right is Wil

24  Delgado.  He's from with, Wilson, Loh & Lieb in Los Angeles.

25          THE COURT:  Well, actually we have two motions, rule

1  11 and a motion to dismiss.  I think the two motions are

2  intertwined.  Rule 11 relies on the arguments presented in the

3  motion to dismiss.

4          So, I'll hear from defendants first.

5          MR. de la O:  Yes, Your Honor.  Mr. Delgado and I will

6  be splitting the duties.  He'll be addressing the legal

7  arguments on the motion to dismiss and I'll address the motion

8  for sanctions.

9          THE COURT:  All right.

10          MR. de la O:  Thank you, Your Honor.

11          MR. DELGADO:  Good morning, Your Honor.

12          THE COURT:  Good morning.

13          MR. DELGADO:  Good morning, Your Honor.  William

14  Delgado, for the Moniker defendants.

15          Your Honor, I don't want to take up a lot of time

16  reiterating the same arguments that appear in our papers, so

17  I'm going to try to distill this down to the three major points

18  that I think cover all the arguments that we have  made.

19          The first is with respect to defendant, Moniker

20  Privacy Services, which is the entity that is being alleged to

21  be providing privacy services for the John Doe registrants.  I

22  am not aware of any statute or case law which says that the

23  provision of privacy services is an infringement of the Lanham

24  Act or any provision thereunder, whether it's dilution, false

25  designation of origin, ACPA, or straight trademark

     1    infringement, and, so, I think that pretty much takes care of

     2    that particular defendant.

     3         THE COURT:  Why?  Just because there's no case law on

     4    point, that means that the plaintiff didn't state a claim

     5    against that entity?

     6         MR. DELGADO:  I don't think they can.  Privacy Service

     7    merely acts as a proxy for the registrant.  There is no use of

     8    any kind of mark or trademark which is absolutely essential to

     9    state a claim under the Lanham Act.  There has to be some kind

    10    of use of a mark in connection with goods and services.

    11         When you are providing services that are privacy

    12    services, all you are doing is you are saying to a third party

    13    registrant, "I will stand in your stead and put my information

    14    in the WHOIS Database."

    15         THE COURT:  The what?

    16         MR. DELGADO:  The WHOIS Database.

    17         THE COURT:  Let me let you all know at the outset that

    18    part of the reason I set these motions down for hearing is this

    19    is like Greek to me.  If you think I know what these things

    20    are, don't assume that.  Let's go back to a very basic level.

    21         The plaintiff has filed a fairly comprehensive Amended

    22    Complaint and is citing very recent case law to support many of

    23    its claims.  So, the burden is on you to tell me why you're

    24    right and in trying to meet that burden, explain to me this

    25    world.

1          MR. DELGADO:  Okay.  So, let me take a step back.

2          In this world, where we have our registrants, which

3    are people that want to own a domain name -- so, for example,

4    if I wanted to own wildelgado.net, I would go to a company

5    called a registrar and, basically, fill out their form to try

6    to register wildelgado.net.  The registrar here, Moniker, is a

7    company that takes that information from the registrant and

8    presents it to another company called the registry, and says

9    "Okay. Is wildelgado.net available so that this individual can

10   have it?"

11         Then as part of that process, I have to provide

12   contact information that goes into this database called the

13   WHOIS -- W-h-o-i-s -- so that if there's ever a question as to

14   who is the person that owns wildelgado.net, somebody can look

15   it up in this database and say "Oh, wildelgado.net is owned by

16   William Delgado and his address is such-and-such, Los Angeles,

17   California.  This is his email address.  These are his

18   telephone numbers."

19         What has happened in the industry is there are

20   companies, either separate and apart from the registrar, as we

21   have in this case -- Moniker Privacy Services is a different

22   company from the registrar -- or the registrars themselves have

23   commenced offering these services called privacy services, and

24   what they do is they tell the registrant when they're trying to

25   sign up, "Look, you have to provide us with your contact

1    information, but we, instead of publishing your contact

2    information to the world, will put in our contact information,

3    the contact information for the privacy service, so that people

4    who are looking for you out in the world will actually see our

5    information and not yours," and the reason for that is once

6    you're information is out in the world, people can just pick it

7    up.  Spammers can pick it up and start spamming you with, you k

8    now, all kinds of email traffic.  I believe in one case that we

9    cited, the Courts noted, "Well, this is actually not a bad

10   thing" because, for example, just taking a recent example, the

11   elections in Iran.  If you wanted to have a website and

12   criticize what was going on there, well, you wouldn't

13   necessarily want everybody knowing who you were, especially if

14   you were in Iran.

15         So, these privacy services let's you, basically,

16   submit the information as part of the process, but they will

17   publish their information to the world.

18         So, in this case, the John Doe defendants have,

19   basically, used the privacy services, and when people are

20   looking for who owns the domains that are in question, what

21   they are seeing when they go to WHOIS Database is information

22   from Moniker Privacy Services.

23         THE COURT:  And so you're saying Moniker Privacy

24   Services cannot be sued under any theory.  Is that what you're

25   saying?

1          MR. DELGADO:  I'm saying that that particular service

2     does not meet the requisite prima facie elements for a

3     trademark infringement claim.

4          Every element, every type of theory that the Lanham

5     Act gives, whether it's trademark infringement, false

6     designation of origin, ACPA, dilution, they all kind of require

7     one type of common thing, which is the use of a trademark in

8     connection with the sale or the offering of sales of goods or

9     services.

10          Moniker Privacy Services isn't doing that.  They're

11    not using Transamerica.  They're not using a mark similar to

12    Transamerica.  They are not offering goods or confesses.  All

13    they are doing is saying to the registrant "We will put our

14    name in the WHOIS Database on your behalf so that if somebody

15    comes looking for you, they will come to us first."

16          It's no different -- I think what we say in the Rule

17    11 motion is it's no different than a registered agent for

18    service of process in the physical world.

19          So, because there is no ability to allege the use of a

20    trademark in connection with goods and services, there can

21    never be a trademark infringement claim of any sort or variety

22    against Moniker Privacy Services.

23          THE COURT:  All right.

24          MR. DELGADO:  So, that would be the first point.

25          The second point is -- and I don't think that there's

1    a lot of dispute on this -- that a registrar, the company that
2    is taking the registration from the registrant and presenting
3    it to the registry, cannot be liable for what, for that
4    particular task, for what the case law says, acting as a
5    registrar, and, like I said, I don't think there's a whole lot
6    of dispute on that particular issue, nor can there be.  Cases
7    that have looked at that particular question --
8          THE COURT:  But the allegations here aren't simply
9    that they acted as a registrar.  It's more than that.
10          MR. DELGADO:  And I'm going to get to the third one.
11    I just want to make it clear that I don't think there's a
12    dispute that that is the case.
13          THE COURT:  But this is not that case.  According to
14    the plaintiff, this is not that case.
15          MR. DELGADO:  Again, I just want to make clear, if we
16    get to that -- once we resolve that other issue, then they
17    can't come back and rely on what Moniker is doing as a
18    registrar.  I think that avenue is foreclosed to them.
19          Then we have to come to the third point.  What else
20    are they alleging beyond acting in a registrar capacity and
21    whether the allegations of what they are alleging meet the
22    prima facie elements of a trademark claim.
23          What the other thing they're alleging is is what has
24    come to be known in the industry as monetization.  Monetization
25    is, basically, you're taking a domain name, again owned by the

1   registrant, and populating it with hyperlinks and these

2   hyperlinks go to third party advertisements.

3          So, the question is, okay, now that we are --

4          THE COURT:  That very annoying thing, the pop-ups that

5   come up constantly.  Very annoying.  I end up pressing the X

6   button all the time and end up call my Computer Services people

7   to say "Please get rid of all this garbage."  That's,

8   essentially, what you are talking about?

9          MR. DELGADO:  Pop-ups can be part of monetization, but

10  are not necessarily monetization.  Monetization is actually

11  within the screen itself.  So, for example, if you were to go

12  to -- I don't know -- some fairly generic name like

13  beachsiderentals.com because you didn't want to type that into

14  Google to see what would come up, you just wanted to see "Hey,

15  what's on beachsiderentals.com?  Maybe I'll find a link to some

16  beachside rentals that I might want to rent for a week," what

17  would happen is -- and I don't know this has actually happened.

18  I'm just using it as an example.

19          If that domain name was being monetized, what you

20  would see would be hyperlinks to people who are advertising,

21  who are purchasing keywords like "beachside rentals."  So it's

22  not necessarily the pop-ups.  It, basically, can be the page

23  itself has those hyperlinks.

24          THE COURT:  All right.

25          MR. DELGADO:  So, that is the something else that's

 1  being alleged, and the question is "Well, does that something

 2  else meet one of the elements that they have, one of the claims

 3  they have set forth?"  We don't think it does, and here's why:

 4  The -- and there's, basically, three types of claims.  I'm

 5  going to have to address all three of them.

 6        One is the direct infringement claims.  We don't think

 7  that meets the test for direct infringement because when

 8  somebody has been monetizing a domain name, the person who is

 9  responsible for the direct infringement, for alleged direct

10  infringement is the registrant who owns the domain name.  It's

11  the person who has transamerica.com, or one of those, and is

12  using the service in a way that they shouldn't be.

13        So, that case is -- there's not the right element of

14  use there for the Moniker defendants to be liable for direct

15  infringement.

16        At best, what we have to look at is whether or not in

17  providing these services to a registrant who is using them

18  improperly, the Moniker defendants are liable for contributory

19  infringement, and here I believe that they still wouldn't be

20  able to meet the test for liability for two reasons.  Number

21  one, they have not alleged sufficient knowledge that these

22  registrants were using these particular domain names to

23  infringe a Transamerica mark.

24        Ever since Sony Corporation versus Universal City, the

25  Supreme Court has stated that "Secondary liability in the

1    trademark area is very narrow," and when we look at the cases

2    that have explored the requisite amount of knowledge needed by

3    someone who is contributing to an infringement, there's a very

4    specific level of knowledge that is needed.

5         So, things like -- the arguments like "Well, Moniker

6    as a registrar should be policing the registrations that they

7    give out" have been rejected.  That was rejected, I think, in

8    Lockheed I out of Central District of California, which was

9    affirmed by the 9th Circuit.  Let me just take a step and say I

10   realize a lot of the citations we're going to be talking about

11   today are not from the 11th Circuit.  That's just there aren't

12   a whole lot of those.

13        THE COURT:  Doesn't the first paragraph of the

14   pleading allege that knowledge?

15        MR. DELGADO:  Well, I think --

16        THE COURT:  It alleges that Moniker knowingly

17   registers counterfeit domain names to fictitious entities.

18        MR. DELGADO:  That's the allegation, that they knowing

19   register counterfeit domain names.  That's not sufficient.

20   There's no such thing as a counterfeit domain name.

21        What the case law makes clear is that presenting a

22   name for registration, first of all, isn't sufficient in itself

23   to be an infringement.

24        So, for example, I could go -- and here's the reason

25   why -- I could go and try to register -- let's assume it's

 1    available -- disney.com.  Let's assume it's available and I get

 2    it, that's not trademark infringe.  It doesn't become trademark

 3    infringe until I take disney.com and I populate it with a

 4    website in which I try to pass off goods and services as though

 5    I am the Walt Disney Company.

 6         If I take disney.com and I launch a website for the

 7    genealogy of the Disney surname or I take it and put in tips

 8    about Walt Disney World and how to avoid the lines or I use it

 9    to complain -- what's called a gripe site -- to complain about

10    Disney and how I think they're a terrible empire and kids

11    shouldn't watch Disney, all of that is fine and protectable by

12    the 1st Amendment as free speech.

13         So, the allegation that Moniker knew that they were

14    registering counterfeit domain names is not sufficient.  What

15    they have to allege is that Moniker knew that the counterfeit

16    domain names were being used with web pages that utilized a

17    mark by Transamerica, or similar to it, and that the John Doe

18    defendants were passing themselves off as Transamerica.  Merely

19    the registration of the domain name, like Time and Again, has

20    been recognized as not sufficient for purposes of trademark

21    infringement.

22         We see that in the Lockheed case, which went up to the

23    9th Circuit.  We see that in the Bird versus Parsons case out

24    of the 6th Circuit.  Courts are uniformly holding just the

25    registration is not sufficient.

1           So, knowing the names that they're trying to register

2  is not sufficient.  What they need to know or they need to

3  allege that Moniker knew is that the domains were being used in

4  an improper way.

5           Here we don't have that kind of allegation.  All we

6  have are these allegations that we knew what the domain names

7  were, we knew that these companies that were acting as the

8  registrants were fictitious entities or shell corporations, we

9  knew that these people were, you know, basically, no-gooders.

10 None of those are sufficient to establish knowledge for

11 contributory infringement.  The requisite level of knowledge

12 has to be specific knowledge of the infringement and the

13 infringement, again, is the use of the domain name in

14 connection with goods and services, which in that allegation is

15 the one that's missing, and that's why that particular claim is

16 deficient.

17          The second aspect of contributory infringement, it's

18 not just knowledge, but it's control.  It has to be both,

19 knowledge and control, and I don't think that allegation is

20 adequately pleaded either.  There's no allegation that we

21 controlled these domain names and the websites that appear on

22 them.

23          Now, here the opposition to the motion to dismiss

24 wavers a bit because in the original Complaint, which was

25 subsequently pulled and amended, the allegation was that

1   Moniker and these John Doe registrants were one and the same,

2   and if you keep that allegation, then I suppose you've met the

3   control test because as the registrant, you control the domain

4   name.  But that allegation went away in the First Amended

5   Complaint.  There was no allegation that Moniker is, in fact,

6   the John Doe registrant, and if Moniker, as the registrar or

7   the monetizing company -- basically, any role other than the

8   owner of the domain name -- then they don't have control over

9   the domain name.  They can't, they can't decide what appears at

10  that domain name because only the registrant can do that.  Only

11  the registrant can say "I'm going to monetize it" or "I'm not

12  going to monetize it.  If I decide to monetize it, I'm going to

13  monetize it in a certain way."

14          I mean, you can imagine -- again, let's go back to the

15  hypothetical I gave about disney.com.  The same set of doing

16  any of those things that I talked about earlier.  What I do is

17  I decide to monetize it and i put up hyperlinks on my website.

18  I can do that in a good way in that I can just put up

19  hyperlinks that are related to something, you know, like camp

20  size or automobiles, whatever, and I'm just hoping that

21  somebody who comes to disney.com will click on one of these

22  links, or maybe I do it in a little bit more nefarious way and

23  I try to, again, use hyperlinks to Walt Disney World in some

24  other way.

25          Again, that decision is on me as the registrant.

1   That's what the John Does -- it's the John Does that make that

2   decision.  The monetizing company has no control over how that

3   person uses that domain name or whether it even monetizes it at

4   all.  Those people can pull it off the system at any time.

5           So, without knowledge -- again, they have to be both

6   knowledge of the infringement and control.  If they don't meet

7   knowledge or control, they certainly can't maintain a

8   contributory infringement claim.

9           Let me take a step back.  They could meet it in

10  another way.  Basically they can meet it by showing inducement,

11  basically, affirmatively telling the John Doe defendants "Go

12  out and infringe Transamerica," but that's not an allegation in

13  the Complaint and it wasn't seriously argued in the opposition.

14  There really is no inducement prong to worry about here.  What

15  we're focusing on is whether or not they have alleged a

16  specific knowledge of the infringement and control over the

17  infringing instrumentality.

18          So, that's the contributory infringement cause of

19  action, and the last one is the ACPA, the Anti-Cybersquatting

20  Protection Act, and this has two prongs as well.  They have to

21  allege either registration, use or trafficking in a domain

22  name --  that's the first prong --  and then they have to

23  allege bad faith intent to profit from one of those activities.

24          I don't think that the Complaint alleges either one

25  for the following reasons:  Let's go back to the first prong.

1   They've got to allege registration, use or trafficking in the

2   domain name.  So registration in this context means acting as

3   the registrant.  I think that's important.  That's a very

4   important distinction because sometimes in this field, it's

5   very easy to use register in multiple ways and it gets very

6   dicey.

7          Again, when the ACPA talks about registering and being

8   liable for a registration, it's talking about the registrant,

9   not the registrar presenting the domain name for registration

10  to the registry, which also, unfortunately, is referred to as

11  registering a domain name sometimes.  That's a very important

12  distinction.

13         Then there's use, but use, although it's a very broad

14  word, is limited specifically by statute to either the

15  registrant or the licensee.  Here, the only allegation about

16  being a licensee is just a formulaic recitation of they are the

17  licensee.  Certainly not enough to meet the types of things

18  that the Supreme Court is looking for post-Twombly and Iqbal.

19         So then that brings us into the trafficking prong and

20  what does it mean to traffic in a domain name.  Have they

21  alleged trafficking in a domain name?  Unfortunately, there's

22  no cases from the 11th Circuit to guide your analysis, but I'll

23  actually point you to the Ford versus Greatdomains case from

24  the Eastern District of Michigan where Judge Cleland performs

25  fairly good statutory echo thesis of what that phrase means and

1  looks at "traffics in" and looks at the examples Congress gives

2  as to what it means to traffic in a domain name and concludes

3  correctly, I think, that traffic in a domain names means there

4  has to be some kind of transfer of a property interest in that

5  domain name.  There has to be a sale, a purchase, something

6  about the bundle of sticks that we all learned about in our

7  first year of law school, the bundle of sticks that that domain

8  name has gets moved from one person to the other.  That is not

9  alleged here.  Monetization does not transfer property

10 interests.  It doesn't take the ownership from one person to

11 the other.  It's a service that's provided to the same owner.

12 Now, as long as I'm on this, I know what my opposing counsel is

13 going to say so I'm going to address it now which is "What

14 about the Vulcan Golf case where Vulcan Golf talks about

15 trafficking in?"

16      It's a very different case because in Vulcan Golf, the

17 allegations in paragraph 209 of the First Amended Complaint

18 says that Oversee monetized, licensed and/or optioned and/or

19 sold the domain name that they were complaining about in that

20 case.

21      Well, now that allegation is very different because

22 now there's an allegation of a sale, and a sale is specifically

23 covered under the definition of what it means to traffic in a

24 domain name.  Here there's no allegation of selling the domain

25 name.  It's just a pure, you know, they monetized these

1  websites.  They're doing this service.  There's no allegation

2  that we're selling these domain names to somebody else.  That

3  takes it from a Vulcan Golf situation where there's a specific

4  allegation of sale to a Ford situation where there's not, and I

5  think that Ford is a better case to rely on s to what it means

6  to traffic in a domain name.  Those two now become reconcilable

7  in how the Court handles that particular definition.

8       So, just to kind of recap, there's no registration

9  because we're not the registrant.  There's no use because

10 there's no actual specific allegation of how we became this

11 licensee, and there's no trafficking because there is no

12 transfer of a property interest.  So, this prong can't be met.

13      The bad faith prong also cannot be met, and here it's

14 important to realize the ACPA's scope, as indicated by its

15 legislative history, is narrow.  It's not intended to go out

16 and capture traditional trademark infringements in some new

17 way.  It's meant to fill a gap specifically for cybersquatters.

18      In analyzing it in that context, in analyzing what

19 type of bad faith is required, the Courts have basically looked

20 at it and said "Well, it's a very specific type of bad faith.

21 It's bad faith with respect to the mark that is at issue in the

22 case."

23      So, for example, they may point to the fact that we

24 provide services to these John Doe defendants and these John

25 Doe defendants are evil no-gooders who do these other things.

1    That's not sufficient for bad faith in the ACPA context.  You

2    have to allege a very, very specific, you know, allegation of

3    bad faith with respect to the Transamerica mark, that we

4    intended in bad faith to profit from John Doe defendants' use

5    of a Transamerica mark.  They haven't alleged that and they

6    can't allege that.

7         Even if you look at all the UDRP decisions that they

8    cite against these John Doe defendants, there's nothing there

9    that would give that specific bad faith as to a Transamerica

10   mark that's at issue in this case.  There's just nothing there

11   about this particular case, and in their opposition, I think

12   it's fairly implicit that they recognize that because they try

13   to rely on kind of a generalized bad faith intent, but it's

14   not.  It's not generalized.  It's a very specific bad faith

15   intent.

16        Then I'll just simply --

17        THE COURT:  You're seeking to dismiss all counts, the

18   entire case.

19        MR. DELGADO:  I think that, basically, those three

20   arguments eliminate all the Federal claims.  Let me just talk

21   now about the state claims and I can rest.

22        Basically, the FDUPTA claim, it's not a consumer

23   transaction.  That claim requires a consumer transaction and I

24   realize that there was an amendment, but I think the Courts out

25   of this district have uniformly held that that amendment didn't

1    change the nature of what is required.

2         There is this case Transamerica cites out of the

3    Middle District of Florida, but that case has not been adopted

4    here and certainly cases out of here, looking at the, I think,

5    Kertesz and Cannova cases out of this district still hold that

6    it be a consumer transaction.  There's nothing in the Complaint

7    that alleges that Transamerica is a consumer of Moniker.

8         Then as to the false advertising claim, again, the

9    statute doesn't reach the type of allegations that are in the

10   First Amended Complaint.  It's not typically applied to

11   trademark infringement claims.  It's stock and securities,

12   medical certificates, those types of things.  It's not intended

13   to be a catch-all and it doesn't cover what's at issue here,

14   and I don't think there's anything in the opposition that truly

15   opposed that notion.

16        So, I think that is why the motion to dismiss should

17   be granted again.  Privacy services are not an infringing use.

18   With respect to the other things, the monetization service,

19   it's not a direct use, so it can't be a direct infringement.

20   Not sufficient knowledge for a contributory infringement claim

21   and, again, hasn't met either prong of the ACPA claim.  So when

22   you total it all out that gets every defendant out of

23   everything.

24        THE COURT:  Thank you very much.  That provided a

25   great deal of clarity for me.

```
 1              MR. McDONALD:  Thank you, Your Honor.

 2              THE COURT:  Why don't i hear the response to the

 3    motion to dismiss and then I'll deal with the other one.

 4              MR. McDONALD:  Good morning, Your Honor.  I'm Bruce

 5    McDonald from Schnader, Harrison, Segal & Lewis, representing

 6    Transamerica Corporation, and I would like to applaud my

 7    opposing counsel on his zeal.  There's nothing short of extreme

 8    zeal in what they've done, but I think that what they need to

 9    learn is that there's a limit to how zealous you can be because

10    there are false issues, red herrings, false accusations, false

11    characterizations flying around here that have to be cleared up

12    before we can even start to talk about what actually is alleged

13    in the Complaint, and the worst part of that is that the

14    mischaracterizations are saying things that the plaintiff

15    didn't say.

16          The plaintiff didn't say that privacy services are

17    illegitimate.  The plaintiff doesn't have to prove it.  It

18    never alleged it.  It doesn't even have to prove or allege that

19    Moniker's privacy service is illegitimate.  In fact, the

20    plaintiff acknowledges that, as does the community in general,

21    that there are legitimate uses of a privacy service.  There are

22    noncommercial usages of the web that are entitled to protection

23    and anonymity.  There are political and religious uses in

24    respect of which people have a bona fide interest not being

25    tracked down and, you know, persecuted for their views.  There
```

1  are homeless shelters that may not want to have aggressive

2  spouses coming around.

3       The question is not whether privacy services are

4  legitimate or even whether Moniker's privacy service is

5  legitimate.  Now, there are a lot of allegations in the Amended

6  Complaint and there's a lot of allegations in the original

7  Complaint.  There are things that the plaintiff intends to

8  prove in this case that it doesn't have to prove now.  But one

9  of the legitimate uses of a privacy service is not to conceal

10  the origin and source of goods and services advertised and sold

11  on the Internet.  No vendor of goods and services has a privacy

12  right to conceal his identity and location from the public.

13  So, nobody believes that.  So, that's the narrow question.

14       In terms of whether Moniker Privacy Services does as a

15  trademark infringement or not, Moniker Privacy Services and

16  Moniker Online Services and oversee.net are all part of the

17  same group.  They're under common ownership.  They work

18  together.  If you go to the website at www.domainsponsor.com

19  they advertise themselves together.  So, there's no way that

20  one of the defendants can be surgically excised and examined in

21  isolation as though this isn't a part of a single enterprise,

22  and they are solid authorities for that.  That's what Vulvan

23  Golf holds and that's what the Northern District of Illinois

24  held in 2007 in Flentye versus Kathrein.  When defendants are

25  involved in a joint enterprise, they can be deemed a registrant

1   as a group, and Dell versus Belgium Domains, decided by Judge

2   Jordan in this Court, is no different, and, in fact, that case

3   is directly applicable in all material respects.

4        The defendants would, the defendants would have the

5   Court believe that the plaintiff needs to prove that every one

6   of their customers is a fictitious entity, and plaintiff

7   intends to show a lot at trial, but for purposes of this claim,

8   we're talking about the disputed domain names that are alleged

9   in the First Amended Complaint and that's all.  That's the only

10  thing that the Court needs to reach.

11       So, as far as whether Moniker Privacy Services can be

12  liable for trademark infringement, the question is whether the

13  defendants can be liable for trademark infringement, and before

14  we leave that issue, I just would like to address a matter of

15  vocabulary because we don't think that the word "infringement"

16  really captures the gravity of what is happening in this case

17  and the Court indicated at the outset that it might appreciate

18  a bird's eye look about what's going on in the industry, and

19  what we have are rampant prevalence of fictitious and anonymous

20  websites that are registered in the guise of shell, sham

21  entities.  Why is that?  Why is that?

22       Well, you can't own bulk registrations of monetized

23  names without risking trademark infringement, and, you know,

24  the defendants have made the argument that there's no such

25  thing as a counterfeit domain name, but when a domain name like

1    Transamerica is coupled with a website that advertises life

2    insurance and annuities, then it's a counterfeit domain name

3    and a counterfeit website, and if an individual or a company

4    wants to register large numbers of domain names at a time and

5    to link them up with websites, they're going to be at risk of

6    counterfeiting and that's why they're held in the guise of

7    fictitious entities and anonymous individuals.  That's why.

8    Nobody would have this in their own name.  The liability for

9    trademark infringement would put the company out of business,

10   and that's just, basically, exactly what the Court was looking

11   at in Dell and exactly what the Court was looking at in the

12   north circuit in the Verizon case.

13        Now, you know, as far as whether the plaintiff has

14   adequately alleged this, the monetization scheme in this case

15   is exactly the same as it was in Vulcan Golf where one of the

16   defendants before the Court today was a defendant in that case

17   and that Court rejected the same arguments about use in

18   commerce.

19        The Ford versus Greatdomains case and the Bird versus

20   Parsons and the trio of Lockheed cases -- the Lockheed cases

21   were decided in a time before domain name monetization even

22   existed or at least was known to the community.  In fact, they

23   needed a special cause of action called cybersquatting to

24   account for the fact that back in those days when the

25   Cybersquatting Act was passed, people would have large

1   portfolios of unused domain names and just exactly like

2   opposing counsel said, until you link up a domain name with a

3   website, there's no use in commerce.  That's true.  There was

4   no use in commerce in the Lockheed cases or in the Ford versus

5   Greatdomain cases.  Those cases were from 1997 before any of

6   this emerged, and those arguments have been flatly rejected in

7   Vulcan Golf.  The cases were distinguished, the same cases were

8   distinguished in Solid Host, in the Solid Host case just this

9   year out of the Central District of California.

10          So, the fact that these defendants are operating as a

11  group means that what they're doing as an activity has to be

12  judged as a group, and there's no doubt, there is no ambiguity,

13  there's no confusion about what they do.  All you have to do is

14  look at Oversees' service mark registration at the Patent and

15  Trademark Office.  They advertise themselves as monetizers.

16  There's no dispute that that's what they're doing.  The only

17  question is can Oversee do the monetization and Moniker Online

18  Services do the registration and can Moniker Privacy Services

19  hide the real, the identity and the location of the people who

20  are really responsible, and can the three of them collaborate

21  for this purpose, and the image comes to mind of the See No

22  Evil and Hear No Evil and the See No Evil.  It's not exactly

23  apt, but in terms of whether the registrar is immune under the

24  registrar immunity, that has been put to rest by Solid Host,

25  and, so, there's just a lot of flack going on here.

1          In terms of what the defendants are really saying,

2   they're proving too much because what's going on out there is

3   really bad.  This is more than a swarm of gnats, a cloud of

4   gnats around the heads of trademark owners that they're swiping

5   at and swatting at.  This is worse than that because the result

6   is, the result is a severe undermining of the rule of law in

7   electronic commerce because there is pervasive fraud on the

8   Internet because of this practice.

9          Again, I say that the plaintiff has not, the plaintiff

10  has not alleged that Moniker Privacy Services, per se, is

11  illegitimate.  Does that mean that we won't prove it at trial?

12  No, no.  You know, they raised for the first time, for example,

13  they raised in their reply brief, they cited privacy services

14  of the well-known reputable registrar Network Solutions, Inc.,

15  and the fact of the matter is that a University of Chicago

16  Legal Forum article by Block talks about that and why it is,

17  why it is that Network Solutions privacy service is legitimate.

18  But we don't have to go there, we don't have to go there in

19  this case.

20         All we have to conclude in this case is that privacy

21  service, legitimate or otherwise, as to which there is a raging

22  debate right now in the community in respect to which the

23  defendants' statements are blithe and incorrect, but we don't

24  have to go there.  What we do know is that a privacy service is

25  not a license to commit fraud, and that's what we're talking

 1   about in this case.  Another --

 2        THE COURT:  What allegations are there in your amended

 3   pleading with respect to Privacy Services' acts in infringing?

 4   You're saying they act in concert with the other defendants

 5   and, therefore, notwithstanding the fact that their services

 6   are privacy services, they're liable for infringing uses of the

 7   other defendants because they're working together?

 8        MR. McDONALD:  That's right.  They're part of --

 9   they're all under common ownership and acting together.

10        What the results of the privacy service is -- and this

11   you can see in the opinion of Gaylord Entertainment Company

12   versus Nevis Domains, which is appended as Exhibit A to our

13   opposition to the motion to dismiss, a truly extraordinary

14   minimum because of the depth and the detail and the degree of

15   analysis that was focused on in that case.  But that shows you,

16   that opinion shows you where the rubber hits the pavement in

17   terms of the privacy service and how the privacy service is

18   used in this case.  That's all, that's all, that's all we're

19   here today to talk about, is how it's used in this case.

20        Another false issue, the ownership issue.  My partner,

21   David Smith, will talk about Rule 11 and I'm not going to

22   address that, but there are egregious, egregiously mistaken

23   statements throughout the defendants' pleadings about what was

24   in the original Complaint and why it was, why it was amended.

25        Did the original Complaint allege ownership?  Yes.  Do

1  we intend to prove it?  Yes, yeah, we do.  Look at the

2  declaration of Craig Stein.  Look at the declaration of Scott

3  Filley.  Do we have to allege that in order to survive a motion

4  to dismiss?  No.

5       So, you know, there were unnecessary allegations in

6  the first Complaint.  There were no false allegations, nothing

7  that we don't intend to prove, and the suggestion that we have

8  been back-pedaling because of deficiencies, much less

9  sanctionable deficiencies in the first Complaint is something

10 I'll let my partner talk about.

11      But, you know, as to the -- what we really have here

12 are two basic, two basic issues.  One is what's going on out

13 there?  What's going on out there?  And, number two, who is

14 responsible?  Who's doing it?

15      Then, of course, for purposes of our Complaint, the

16 inquiry is limited to what we've alleged what these defendants

17 are doing.  We don't to, we don't have to prove sweeping

18 generalities about what's happening in the industry, although

19 it's probably helpful for the Court to know.  But the Court in

20 Flentye versus Kathrein and Hamptons Locations versus Rubens

21 held that for purposes of determining who is the registrant,

22 circumstantial evidence can carry the plaintiff's burden of

23 proof and a corporate veil can be pierced to determine who is

24 the real owner of a domain name, and I say, again, the Dell

25 case is all this Court needs to examine to get to the very

1   basic of this case, and what a lot of the argument, what a lot

2   of the argument and the guerrilla warfare -- whatever you want

3   to call it that has been going on -- involves the defendants'

4   emphatic, one might say "frantic" allegation, that they don't

5   own these names, and, therefore, this case cannot be similar to

6   Dell.

7           Well, the problem is that the only, the only

8   information that is necessary to examine the exact relationship

9   between the defendants and the John Doe false, fictitious

10  entities, the only information that would elucidate that is

11  peculiarly and exclusively accessible to the defendants and

12  they won't, they won't give it.

13          So the irony -- turning to their argument about

14  contributory liability, you know, the irony is sublime because

15  what they're saying is that the plaintiff can't make specific

16  enough allegations about the exact relationship between the

17  named defendants and the John Doe defendants when they've got

18  that information locked up.  There's no way that the plaintiff

19  can find that out.

20          They've -- for example, they submitted two

21  declarations, one from Ari Goldberger and one from John Barry.

22  They've at least another declaration in the record.  The sum

23  and substance of those declarations is that "We have a

24  customer.  There's a real customer."  But, for example, the

25  customer, Virtual Sky, who is one of the John Doe defendants in

1  our case, there's a declaration in the record saying they

2  exist.  Well, where?  Nobody ever says where they are.

3        The trademark owner has a grievance against Virtual

4  Sky.  They don't exist.  They may exist -- there may be a

5  certificate of incorporation somewhere.  We still don't know

6  where.  That doesn't make them -- that doesn't mean they're not

7  fictitious for any purpose relevant to this Complaint.

8        Their other declaration, John Berryhill (ph.), talks

9  about his client's ultimate search, who is not even one of the

10  John Doe defendants in this case, and he appends a certificate

11  of incorporation from the Virgin Islands to show, "Look, they

12  really exist."  Well, the ultimately search is supposed to be

13  in China.  They're one of the ostensible Chinese registrants.

14  So, the more you look at this, the worse it gets.  This is some

15  very bad stuff here.

16        THE COURT:  What are the allegations of knowledge and

17  control with respect to your contributory infringement claims?

18        MR. McDONALD:  Oh, well, Your Honor, if you look at

19  the first paragraph of the contributory count, you will see

20  that these, the Moniker defendants, Moniker Online, in

21  particular, has gone back and continued to register counterfeit

22  domain names to Virtual Sky time after time after time that

23  they have been required to release these counterfeit domain

24  names.

25        Now, they make an argument that not all UDRP cases are

1  well-founded, and that's certainly true, but as far as this

2  case is concerned, the UDRP cases that are not well-founded are

3  the rare case in which the trademark complainant fails to show

4  that he has a right to the name.  You're not going to find any

5  that hold that the registrant has a legitimate right to the

6  name or that the registrant isn't in bad faith.

7       The one or two, the handful of isolated cases where

8  the trademark owner has not prevailed in those cases are ones

9  where the arbitrator never reached the case, reached the

10  question of whether there was a legitimate use.

11       So, to answer the Court's question, our allegation is

12  that the defendants, with knowledge of what's going on, they

13  know very well.  You can read the Gaylord Entertainment Company

14  versus Nevis Domains and the allegations of our Complaint.

15  They know that, they know exactly what's going on and they

16  continue to register domain names to these entities.  Domains

17  Ventures allegedly of Xiamen, China where our investigator went

18  and interviewed the Chinese residential and municipal

19  authorities to establish beyond a scintilla of doubt, these

20  John Doe defendants, they don't exist.  If they do exist,

21  they're somewhere where they can't be found.

22       So, if the plaintiff is required to have some kind of

23  a wire recording or smoking gun or a memorandum or a document

24  between the Moniker defendants and the John Doe defendants to

25  establish that control and knowledge, Transamerica will have no

 1  remedy and neither will any other trademark owner.

 2       So, in terms of whether it's adequately pleaded in the

 3  Complaint, obviously, they know what's going on.  Obviously,

 4  they continue to supply registration services knowing that

 5  those services are being used for infringement.

 6       Regarding contributory liability, does the plaintiff

 7  have a contributory liability claim?  Yes.  Is the contributory

 8  liability claim adequately pleaded?  Yes.  Do we view this

 9  primarily as a contributory claim?  No.  We think that because

10  of the actual use, the actual use in commerce, which is

11  established by Vulcan Golf and Solid Host and Dell and

12  Verizon -- and I left out, of course, Compana versus Aetna out

13  of the Western District of Washington in 2006.  It's actually

14  cited in our Rule 11 response, but that doesn't mean I can't

15  say it here --  all these cases are exactly on point and show

16  that there's no registrar exemption for activities outside the

17  scope of registration.

18       That was, by the way, the specific issue in the Solid

19  Host case, was whether providing -- when a registrar provides a

20  privacy service, even if it's a legitimate privacy service and

21  even if it's used legitimately, which is not the case here, but

22  even if it were, it's still outside the registration context,

23  and the defendants would say "Well, yeah.  That's Moniker

24  Privacy Services doing that.  That's not Moniker Online."  They

25  say the same thing about the monetization.  "That's

 1   oversee.net.  That's not us."  That's absurd.  It's just wrong.

 2        If I could just finish up with a word about the

 3   Anti-Cybersquatting Consumer Protection Act.  Have we alleged

 4   it adequately?  Yes.  Did they do it?  Does cybersquatting even

 5   begin to capture the reality of what's really happening here?

 6   No.  But just to dot our Is, yes.  Why is it adequately

 7   pleaded?  Because we have the use in commerce.  They don't

 8   think that there's any trafficking going on.  I would simply

 9   direct the Court's attention to the paragraph in our Complaint

10   where we illustrate the exact domain names in dispute here.

11        They get tossed back and forth like a ball in the

12   playground between children who are the trying not to get

13   caught, which is even a better analogy than we think, now that

14   I mention it.  But as far as bad faith is concerned, now this

15   is where, this is where the cheese really starts to bind

16   because -- and I will say this, and you'll hear this from the

17   plaintiffs and not from the defendants because there are so

18   many ad hominem instances invective and malice in their

19   pleadings to the effect that the plaintiff is trying to trick

20   the Court, the plaintiff is trying to fool the Court, to make

21   the Court not understand what's going on here.  They're telling

22   the Court that they can't be guilty of bad faith because

23   they're infringing so many trademarks, they can't keep it

24   straight.  They're not looking microscopically or

25   telescopically at a particular trademark.  They're infringing

 1    everybody's trademark and, therefore, they can't have bad

 2    faith.  Well, if that was true, then Judge Jordan wouldn't have

 3    reached the decision that he did in Dell and the Court in the

 4    Northern District of California wouldn't have held what it did

 5    in Verizon and the monetization scheme in Vulcan Golf couldn't

 6    have been alleged if that were the case.

 7            That, basically, concludes  my diatribe, but I just

 8    would like to say that there's unnecessary, unnecessary, in

 9    fact, outrageous and impermissible and totally unacceptable

10    allegations in the pleadings in this case, but they're not the

11    plaintiff's pleadings, and that's something we're hoping the

12    Court is going to get to because there is a limit, there is a

13    limit to the zeal that is appropriate and permissible in

14    arguing to the Court and the Court sees it.

15            THE COURT:  Can you address for me the ACPA cause of

16    action and run through for me why it is you do state a claim.

17            MR. McDONALD:  Yes, Your Honor.  If you will just

18    permit me to make reference to our Complaint here.

19            Well, let me say while I'm paging through here the

20    case of Dell is directly on point.  So, I'll just recount

21    exactly what the Dell Court held and that is that they, the

22    defendants, have registered, have registered -- and I cite the

23    Court to paragraph 126 of the Amended Complaint.  The Amended

24    Complaint says "They have registered and are trafficking in

25    using and maintaining Internet domain names, incorporating and

1  imitating the Transamerica service mark with the bad faith

2  intent to profit from the goodwill associated with that mark."

3        We have, the plaintiff adequately pleaded this cause

4  of action in the present Complaint for the same one Vulcan Golf

5  did in that case, for the same reason that Dell did in this

6  court two years ago and the same reason Verizon did two years

7  ago in California.

8        If I may address more specific questions?

9        THE COURT:  Not at this time.  Thank you very much.

10       MR. McDONALD:  Thank you very much.

11       MR. DELGADO:  Your Honor, would you permit a few

12  minutes for rebuttal?

13       THE COURT:  Certainly.

14       MR. DELGADO:  Thank you, Your Honor.

15       I just have a few discrete points that I wanted to

16  point out in response to opposing counsel.

17       First, I want to start with this issue of common

18  ownership and whether that is sufficient.  As a general

19  proposition, I disagree with it.  General Electric, General

20  Motors, all these companies have many different subsidiaries

21  and there's not a principle that says "Well, if Saturn does

22  something, General Motors is on the hook" or "If NBC

23  does something, General Electric is"  --

24       THE COURT:  But the allegation here is that all these

25  companies are acting together, that the one can't perform its

1  function of doing registration without the privacy services

2  it's furnishing and they're doing it all together.

3       MR. DELGADO:  I'm not sure that that is the

4  allegation.  I think the allegation is, as I recall it, was

5  that Moniker is providing registrar services.  MTS is providing

6  privacy services and Oversee is the parent.  That's it.

7       When we look at the cases that were cited in support

8  of this idea of common ownership being sufficient, they are all

9  vastly different.  In Vulcan Golf, Oversee was the only

10  defendant so there was no allegation Oversee, Moniker or MTS

11  were acting in concert.  There couldn't have been because those

12  defendants weren't in the case.  What was actually happening

13  was that there was an allegation that Oversee was both

14  registrant and monetizer.  In Dell versus Belgium Domains, the

15  allegation, again, was that one person was acting as all three,

16  including as the registrant.

17       Here there is no allegation that the Moniker

18  defendants are the registrants, and then in Hamptons, in that

19  case the person that was ultimately found to be the registrant

20  was somebody who played a role in choosing the domain name.

21  You know, that's fine.  There is no allegation here that

22  Moniker or any, or MPS or Oversee played a role in choosing the

23  domain name.  None of those cases -- I should say this:  all of

24  those cases have an element that this case does not have, which

25  is that the person in that common ownership was the registrant.

1    That's not the case here and that's a crucial and vital

2    distinction.

3         The second point is at the beginning of kind of his

4    speech, opposing counsel said "When you take a domain name and

5    you couple it with a website or a web page that says

6    'Transamerica,' then we have a problem."  We agree with that.

7    You have to take the domain name and you have to couple it with

8    a website.  But then when the Court asked him "Well, what's

9    your allegation for contributory infringement?" he reverted to

10   saying "Well, they're registering counterfeit domain names."

11   Only the first part of it, the counterfeit domain name and kind

12   of backs away from this idea of you also need to couple it with

13   the website.

14        Let me come back to my first point which is

15   registering a domain name, whether it's counterfeit or you

16   think it might be counterfeit or whether it's perfectly

17   appropriate, that is insufficient.  There has to be a website

18   attached to it that does -- and something has to be wrong about

19   that website and if you are going to be pursuing a contributory

20   infringement claim, then what you have to allege is that the

21   person who you are seeking that claim against knew not only of

22   the domain name, but also that website.  When you asked him

23   "What was the allegation?" he never said they knew of the

24   website.  All he said was they knew of the domain name.  So,

25   again, I don't think that is sufficient.

1          Again, just to touch on Vulcan Golf, again, there was

2    an allegation, like I said, that Oversee was the registrant in

3    addition to being the trafficker or the monetizer and, again,

4    the allegation for trafficking included a sale.  Neither of

5    those allegations are here.  There is no allegation that

6    Oversee is the registrant.  There is no allegation of sale.

7    Without those allegations, there is no ACPA claim.

8          Solid Host, which comes out of Morrow's courtroom in

9    the Central District, two important things to note about that

10   case.  Number one, in that case the registrar was providing a

11   particular type of privacy service where upon providing that

12   privacy service, it became the owner of the registrant and then

13   licensed the domain name back to the original registrant.  That

14   allegation isn't present here.  They're not alleging that for

15   Moniker Privacy Services we have that particular arrangement.

16   In fact, as an aside, we do not.  We don't take ownership and

17   then license back.  We just provide the service itself.  But,

18   again, that distinction is crucial because now the registrar

19   offering privacy services became a registrant in the Solid Host

20   case.

21          That's not the case here.  Again, there's no

22   allegation that we became the registrant.  Also, ironically in

23   that case, the Court still found that there was no bad faith on

24   the part of the registrar, regardless of whether it was acting

25   as a registrar or providing services because there was nothing

1    specific to the domain name that was at issue in that case.

2          So, please feel free to look at that case all you want

3    because we think it actually supports what we're saying here.

4          THE COURT:  Was that a 12(b)(6) order?

5          MR. DELGADO:  It was a 12(b)(6) order.

6          Let me just kind of end by saying the thread or the

7    theme of what the plaintiff is saying is that there are a lot

8    of bad things going on on the Internet, and I think maybe

9    that's a direct quote about bad things.  You know, the problem

10   is grave and all these things.  These are precisely the types

11   of arguments that trademark owners make all the time when

12   seeking to establish secondary liability.

13         Lockheed did the same thing in the NSI cases.  They

14   said "Look, NSI, you registered the domain name skunkworks.com.

15   We sent you a cease and desist letter saying 'That is our

16   trademark.  Don't do it again.'"  What did NSI do?  They turned

17   around and they did it again and still they were not liable.

18         In Tiffany versus eBay, Tiffany wrote 1,182 different,

19   you know, what are called NOCIs, which are, basically, letters

20   to eBay, telling them "You are offering merchandise on your

21   website, eBay, that is not authentic Tiffany merchandise.

22   Stop."  They received 125 different customer complaints in the

23   operative time period from people saying "I have purchased

24   something that I thought was Tiffany and it was not," and

25   notwithstanding all of the complaints, eBay was still found not

1   liable for contributory infringement.

2          Perfect 10 in the copyright cases of Amazon and Visa,

3   upset that there were all these people out on the Internet

4   using their copyrighted images tried to go after the credit

5   card companies that were facilitating the payment to these

6   companies.  Again, the 9th Circuit found no liability.

7          Time and again, the argument is the same.  There's a

8   lot of bad things happening at this level and the only way for

9   us to handle it effectively is to go to the service providers

10  at the level above them.  While that might be a fine policy

11  argument for Congress, that's not the law and each of these

12  attempts to impose secondary liability on a service provider at

13  a higher level has failed, and failed for good reasons because

14  as I started by saying secondary liability in the trademark

15  context since Sony Corp. has been very narrow and the Courts

16  have been very good, and I would ask that this Court can follow

17  that and not expand it into a realm, particularly such a new

18  realm, without any significant reason to do so.

19         Thank you.

20         THE COURT:  Why don't we take a five minute recess.

21  I'll hear surrebuttal and move on to the motion for Rule 11.

22         [There was a short recess at 11:18 a.m.]

23         THE COURT:  Please be seated.

24         Mr. McDonald.

25         MR. McDONALD:  Thank you.

1          Very, very, very quickly.  On Vulcan Golf, one of the

2    defendants was a registrar.  So the efforts to distinguish that

3    case on the ground that Moniker wasn't a defendant in that case

4    are completely off base.

5          Number two, Solid Host has to do with registrar

6    immunity, not bad faith.  You know, whether the privacy service

7    in that case was used in bad faith or not isn't the question.

8    The point is there's no registrar immunity for that.

9          As far as the bad faith involved in the use of this

10   privacy service, look at Gaylord Entertainment Company versus

11   Nevis Domains appended as Exhibit 8 in our response to the

12   motion to dismiss.

13         Number three, Tiffany.  Tiffany, among other things,

14   recognized that willful blindness meets the test for knowledge

15   under contributory infringement, and the defendants have stated

16   that there is no authority for that and I'd simply like to

17   direct the Court to pages 9 and 10 of our response to the

18   motion to dismiss where we have a litany of cases that hold

19   exactly that, that willful blindness does meet any relevant

20   test for knowledge.

21         Finally, Perfect 10 versus Visa was a case about a

22   credit card processing, and the Court at page 797 said "If this

23   had to do with search engines, it would be a completely

24   different story."

25         So, that's all I have to say.  I just wanted to draw

1    those points out.

2              THE COURT:  Thank you.

3              Mr. Delgado, anything additional from you?

4              MR. DELGADO:  No, Your Honor.

5              THE COURT:  Thank you.

6              MR. de la O:  Good morning, Your Honor.

7              THE COURT:  Good morning.

8              MR. de la O:  Let me begin by setting forth why we

9    filed the motion for sanctions now.  I think we explained some

10   of it in our reply that we filed two gays ago.

11             When we initially got this Complaint, the initial

12   Complaint, based on our experience in this area, the first

13   thing we would normally do is move to dismiss it based on

14   registrar immunity and the usual arguments that we end up

15   presenting in our motion to dismiss.  But we read this

16   Complaint and we are accused, Moniker is accused, essentially,

17   of being a front of owning all of these domains.  I mean, there

18   are allegations in there that the vast majority, if not all of

19   the 2.5 million domain names that Moniker has registered, are

20   actually owned by Moniker.

21             Moniker knows that that's false, but can't file a

22   motion to dismiss based on that because that's the allegation.

23   So we filed a motion for sanctions.  The Complaint is amended.

24             We -- when the second motion for sanctions is filed

25   and the Complaint is not amended, we look at Rule 11 and we

1    look at the comments and the comments make very clear that we

2    should promptly notify the Court and notify the other party

3    when we believe the claims are frivolous.

4            Your Honor has set it for hearing and we're ready to

5    defend it, but I think, in candor, some of the arguments I'm

6    going to make and some of the arguments we have made in the

7    motion will ultimately be borne out but can't really be proven

8    at this point.  That is, how do we prove a negative?  How do we

9    prove we are not the registrant for all of these different

10   names?

11           Ultimately, it's not our burden, but we believe when

12   this case is over, whether it be through trial, which is highly

13   unlikely and more likely through a motion for summary judgment,

14   Transamerica will never meet its burden of showing Moniker is

15   actually the registrant for one simple fact.  They're not.

16           So, as Moniker sits here and says we're being accused,

17   essentially, of being these registrants and working with them

18   and they know it's not true, so we filed a motion and that's

19   why we're here.

20           Clearly, the motion for sanctions takes a broader view

21   of the facts than the motion to dismiss.  Mr. Delgado is

22   limited to arguing in the Complaint as to whether Transamerica

23   has met its burden.  I am unburdened by that.  I don't have to

24   limit myself to the Complaint.  So, what Moniker is doing here

25   is putting Transamerica on notice.  I've done it through two

1    motions for sanctions.  I've done it through a letter to

2    Mr. McDonald where we invited him to ask his questions, to

3    request whatever his client needed to see so that we could

4    convince them that we are not the registrants.  We got nothing

5    in return.

6          No discovery has ever been served on us to try to

7    establish whether we are or are not the registrant.  We have

8    not been engaged on that topic.

9          So, I believe that at the end of the day, it may be

10   premature for Your Honor to issue sanctions, but Transamerica

11   is on notice and we hope to educate Your Honor as to why they

12   should be sanctioned when this case is finally over.

13         THE COURT:  So, it's a premature motion.  I mean, in

14   other words, I can't rule on it now.

15         MR. de la O:  Not on the facts, I agree.

16         THE COURT:  Right.

17         MR. de la O:  But on the law I think Your Honor can.

18         I'm going to explain why the law, in light of the

19   facts, shows they should be sanctioned, because I think the law

20   is crystal clear, as Mr. Delgado has argued.  Mr. McDonald says

21   that our papers are frantic and we're emphatic that we are not

22   the owners.

23         Well, the reason for that, Your Honor, is every case

24   you will read on this topic where a registrar, where they are

25   not acting as a registrar, where a registrar is found to be

 1   liable or cannot survive a motion to dismiss, it is because

 2   there are allegations of ownership.  There are allegations that

 3   they are the registrant.

 4        Mr. McDonald keeps pointing to Dell versus Belgium

 5   Domains, which Judge Jordan goes through a long findings of

 6   fact on a motion for preliminary injunction.  There was domain

 7   kiting, a concept that was alien to me until I read this, but

 8   the defendants were the registrars, were multiple registrars,

 9   and were bouncing the domains back and forth to save the

10   registration fee that they have to pay to Icon, all of it came

11   back to one person.  He was actually manipulating all these

12   companies.  So, completely different than what the facts will

13   show is going on here.

14        One issue that I think needs to be addressed, and,

15   again, it can't be addressed in the motion to dismiss because

16   they don't allege how it is that Moniker and MPS and Oversee

17   are all acting jointly.  They just say Oversee owns Moniker and

18   MPS, but the facts will show that these different domains that

19   are named in the Complaint, some were registered by Moniker.

20   Some were not.  Some of them used MPS.  Some of them did not.

21   Most of them did not use Oversee services for monetizing.

22   These are three separate services.  You could register with

23   Moniker and not use MPS, or you could register with Go-Daddy

24   and come use Moniker's privacy services by switching over to

25   MPS.  These are not tied together.  They are three separate

1    services.

2          The most -- the reason, ultimately, I think Your Honor

3    should sanction them on the law is:  Your Honor asked

4    Mr. McDonald "What evidence" -- and I quoted you -- "What

5    evidence of use and control of the domain names is there?"  You

6    wanted him to explain that to you because that is Mr. Delgado's

7    argument, that there is no use and control.  His response was

8    "Moniker continuously registers to these fictitious entities."

9          That is not an answer.  That does not explain why

10   Moniker uses and controls.  All he's telling you is Moniker is

11   providing their service.  Some people who, apparently, there

12   may be a reason to believe are fictitious entities use that

13   service, but that doesn't prove that Moniker is using and

14   controlling the domain names.

15         There is simply no scienter that you can assign or

16   assume on Moniker's part.  Someone somewhere in the world sits

17   down at a computer, literally anyone in the world, logs into

18   Moniker's site and says "I'm buying disney.com."  That's what

19   they do.  We own 2.5 million -- that's in the Complaint -- 2.5

20   million domain names.  Somebody does that.  There's no human

21   sitting on the other side saying "Oh, Disney, gee.  That sounds

22   like it might infringe."  Even though it doesn't ipso facto

23   infringe, just because it's Disney's name, it has to, again, be

24   tied to a website -- something all sides agree on --

25   Transamerica's argument is because Moniker then registers it,

1  they are now using and controlling it.  That doesn't follow.

2        More importantly, they haven't even established, even

3  by the evidence they've presented in response to the motion for

4  sanctions, they have not established that these were all

5  fictitious entities.  They are assuming they are all fictitious

6  entities.  Their investigator has tracked down one.  That was

7  Domains Ventures in China, uses many qualifiers because,

8  apparently, in China it's not as easy to establish whether an

9  entity is legitimate, whether it exists or not, so he uses a

10  bunch of qualifiers and then they jump to the assumption,

11  literally jump to the assumption and state that most, if not

12  all of our clients, are fictitious because some are fictitious.

13        It is not a news flash that on the Internet people are

14  not who they say they are.  That happens to everyone.  There

15  are many people who register for Gmail, sign up for an account

16  and use a different name.  That doesn't mean that there aren't

17  real people behind it.

18        Even at the end of the day Mr. McDonald seems to

19  acknowledge that when he talks about the domain, the

20  registrant, Virtual Sky, because we get an affidavit from one

21  of their lawyers saying they do exist.  He's saying "Well, they

22  don't exist in China.  The documents that are attached are from

23  someone in the Caribbean."  Okay, but that's not on Moniker.

24  That's not Moniker's fault or problem.  That doesn't mean we're

25  acting in conjunction with them because a registrant comes to

1   us and lies about who they are.  That doesn't mean we own the

2   domain name.  That doesn't mean we're using it, we're

3   trafficking in it, we control it.  It doesn't mean any of that.

4          The only reason that there would be any import to

5   whether the entity is fictitious or not is when you're trying

6   to determine who is behind it.  The fact that someone has lied

7   about whether they are or are not Virtual Sky or whether

8   Virtual Sky is in Florida or in California, that doesn't mean

9   that there's any counterfeiting going on or any infringement.

10  You judge the infringement by their actions, not by who they

11  are.

12         The reason the whole concept of fictitious entities

13  comes up really stems from the first Complaint.  It is because

14  of the suspicion of Transamerica that it is Moniker who is

15  behind these registrants.  But if it isn't Moniker, it doesn't

16  matter that Moniker is doing business with people who have lied

17  to them about who they are.  There is no logical inference you

18  can draw from that that Moniker must have knowledge of

19  anything.

20         THE COURT:  Your motion, as you've acknowledged,

21  allows you to go outside the pleadings and present evidence to

22  the Court that the First Amended Complaint is deserving of

23  sanctions; it's without basis in law or fact.

24         MR. de la O:  Right.

25         THE COURT:  But you're asking me to do this at the

 1   same time that I have under consideration a motion that tests

 2   the sufficiency of that very pleading and you're asking me to

 3   do this at the inception of the case.

 4        I know you indicated you had told the plaintiffs,

 5   "Tell us what you need.  We'll show it to you" and they haven't

 6   propounded discovery, but discovery is at its inception and,

 7   so, I think it's inappropriate to sanction a plaintiff for

 8   bringing a lawsuit where I haven't even determined whether it

 9   survives a 12(b)(6) challenge and to require that plaintiff at

10   the beginning of the case, essentially, to prove its claims

11   without the benefit of discovery.

12        Isn't it a better course for us to simply table this

13   motion and if you want to resurrect it at a later date to do

14   that?  I mean, quite frankly, part of the reason I set this

15   case down for hearing was, as I had indicated to Mr. Delgado,

16   this, to me, was very much like Greek, but also because it was

17   rather unusual to have in the absence of a Court stating

18   definitively the Complaint fails to state any claim for relief

19   and no leave to amend will be granted and then seeing the Rule

20   11 motion, having the Rule 11 motion be pending at the same

21   time.

22        MR. de la O:  Our reading of the notes are that we are

23   supposed to file it early, as soon as we put them on notice and

24   that what we --

25        THE COURT:  Do you have to file it with the Court or

1    do you have to present it to the party and put them on notice

2    like you did with the first one that you didn't file and the

3    submit it --

4              MR. de la O:  The notes say both.  It says the Court

5    and the parties, put them on notice early in the case.  We

6    certainly have to serve it before Your Honor dismisses the

7    case.

8              My answer to your initial question would be this:  I

9    think it's certainly not inappropriate to put it off.  But if

10   Your Honor dismisses the case because it did not state any

11   legal grounds, then I think you could very quickly thereafter

12   rule on the motion for sanctions.

13             THE COURT:  But if I were to grant your motion -- and

14   I'm not ruling today.  I'm going to look at all of this very

15   carefully -- if I were to grant the motion, it would, in all

16   likelihood, be with leave to amend.

17             MR. de la O:  You mean if you granted the motion to

18   dismiss.

19             THE COURT:  To dismiss, it would be with leave for

20   plaintiff to amend.  So, we're not even there at Rule 11 yet.

21             MR. de la O:  Okay.

22             THE COURT:  So, with that being said, why don't I just

23   hear from the plaintiff on this issue of Rule 11 at this

24   juncture.

25             Mr. Smith.

 1          MR. SMITH:  Yes.

 2          Good morning, Your Honor.

 3          THE COURT:  From Philadelphia or D.C.?

 4          MR. SMITH:  From Philadelphia, but from the University

 5   of Miami Law School, so I spent a few years down here.

 6          THE COURT:  You didn't have a good week of it with the

 7   World Series.  The last game was particularly painful.

 8          MR. SMITH:  It was very painful and my son was reduced

 9   to tears.

10          I'm here as a senior member of the Schnader firm

11   because of the Rule 11, and we've had a senior member of the

12   firm watching the case since the first Rule 11 motion.

13          We take that very seriously.  I believe that the

14   motion, the first motion which I think improperly and contrary

15   to the rules was presented to the Court as an attachment to the

16   briefing in this motion was itself in bad faith, and I think

17   the second motion is also in bad faith.  I was astonished to

18   hear counsel say "Well, we filed this motion.  It's premature.

19   It's not ready for you to rule on it."  Well, then, why did

20   they do it?  Does that pass muster under Rule 11?

21          There was a time when in the Federal Courts you'd have

22   these battling Rule 11 motions.  That's why Rule 11 was

23   amended.  One of the reasons was to eliminate that and also

24   there has been at least for the last 20 years a greater

25   emphasis on civility, and you don't promote civility in the

1   courtroom with these battling Rule 11 motions.

2          There's some among my partners who wanted to assert a

3   Rule 11 motion in response to their Rule 11 motion.  I vetoed

4   it because I don't think that's the way litigation ought to be

5   conducted.

6          The suggestion that the Rule 11 motion be tabled, I

7   think that that would be a bad thing to do.  I don't think that

8   anybody ought to have to prosecute a case that passes rule

9   12(b)(6) muster with Rule 11 motion hanging over their heads.

10         They've said what they've said.  I think what they

11  said is without merit, but this motion ought to be dismissed.

12  If down the road they believe there's a basis for a Rule 11

13  motion -- I don't expect there will be one -- they can file it

14  then.  If they do file it then, though, I think it's open

15  season for a proper retaliatory response.

16         This case follows years of investigation and we've

17  presented to the Court the highlights of the investigation,

18  some investigator reports and affidavits.  We've presented

19  affidavits from counsel for other parties affected.  We have

20  presented affidavits by our firm indicating the extent to which

21  we have done not just fact investigation, but also legal

22  research and also collaborated with other counsel, well-known

23  nationally and internationally in the field, to make certain

24  what we're doing is well-grounded both in the facts, as the

25  Internet community understands them to be, and in the law, as

 1  those litigating these issues in Federal Courts understand them

 2  to be.

 3        Rule 11, as Your Honor pointed out, is not a 12(b)(6)

 4  motion.  It's not a Rule 56 motion.  Rule 11 imposes an

 5  obligation of good faith on counsel making any presentation to

 6  the Court, including in this case the Amended Complaint.

 7        There are varying standards for what defines good

 8  faith, depending on what it is that is being submitted.  When a

 9  legal argument is being submitted, the obligation of good faith

10  is that the argument is warranted by existing law or by a

11  nonfrivolous argument to change the law, either extend it,

12  overrule it, expand it, or whatever.

13        For factual allegations, there are two separate

14  standards.  There's a standard for what is alleged in the

15  Complaint to be a fact and there's a separate standard for what

16  is alleged in the Complaint on information and belief.

17        As to a fact, the obligation of good faith imposes

18  that we have evidential support for what is asserted as fact.

19  For what is alleged on information and belief, the obligation

20  of good faith is to represent that we've made an investigation,

21  to reveal what the investigation has found, and implicit,

22  although not stated in the Complaint, is the expectation that

23  in a litigation context, the additional investigation and

24  discovery will reveal evidential support.

25        It's not a question of who's going to win, although I

1    happen to believe that Transamerica will win.  It's a question

2    of whether there is evidential support.

3         The comments explain what is meant by "good faith."

4    When the rule was amended, the comment was made "The new

5         language stresses the need for some pre-filing inquiry into

6         both the facts and the law.  The standard is one of

7         reasonableness under the circumstances.  The rule is not

8         intended to chill an attorney's enthusiasm or creativity in

9         pursuing factual or legal theories.  Rule 11 does not

10        require an attorney or a client to walk away from a

11        difficult case at risk of Rule 11 sanctions.  It requires

12        reasonable investigation into the law and the facts," and

13   that's more than satisfied here.

14        Under the 11th Circuit law, there's a two-step test in

15   evaluating Rule 11 compliance.  The first is an objective look

16   at the Complaint, and if objectively the Complaint is

17   satisfactory, that's the end of it.  If the Complaint is found

18   to be deficient under Rule 11, then there is an additional

19   test, the subjective test, examining what it is counsel did to

20   get to this point.

21        Although we believe that the Complaint is sufficient,

22   and I will talk about that, we have disclosed a sufficient

23   amount of the background, attempting not to disclose unduly

24   work product privilege communications and that sort of thing

25   will not be disclosed, but if it's a concern to the Court,

1   we're prepared to go forward on that as well.

2         Let's start with good faith as to the law because

3   that's what counsel emphasized.  This is a new and emerging

4   area of the law.  There are changes constantly.  The statutory

5   framework is brand new and the technology that prompted that

6   has changed dramatically almost every day since the legislation

7   was passed.

8         There's an 11th Circuit case I think right on point,

9   Laborers Local 938, which we cite, which says "Sanctions are

10  not warranted when there is no binding precedent."  There's a

11  good faith argument here.  There is what I believe to be a

12  winning argument here.  You can't be sanctioned for making a

13  good faith argument in a changing area of the law that has a

14  reasonable basis.

15        Although it wasn't argued much in oral argument, the

16  briefing by the defendants goes on at length about the immunity

17  statute.  There are actually two immunity provisions.  Neither

18  one of them, when you look at them, is anything more than a

19  qualified immunity.  In § 1114, which is the one they emphasize

20  in their brief, the Anti-Cybersquatting Consumer Protection

21  Act, it says "A domain registrar" -- so, it has got to be

22  somebody acting as a registrar -- "shall not be liable for

23  damages."  In the other one, there's also a mention of

24  injunctive relief.  That statute, the Anti-Cybersquatting, does

25  not prohibit an injunction action for the registration and

1    maintenance of a domain name.  So, that means so long as they

2    are just registering or just maintaining the domain name, they

3    have this immunity, so long as they're doing it for another,

4    and, of course, our claim here is that they're doing much more

5    than registering and maintaining, and under the case law we

6    believe the facts that we have alleged as facts, not on

7    information and belief, are sufficient to establish that

8    they're not doing it for another.  They're doing it for their

9    own purposes.

10         Then, finally, it has got to be absent a showing of

11   bad faith intent to profit from such registration or

12   maintenance of a domain name.

13         The crux of this case is that the three affiliated

14   Moniker defendants act together to set up domain names that

15   will be maintained in privacy so there's nobody to chase for

16   their bad conduct that takes place on their websites and profit

17   by a monetization scheme that uses Transamerica's marks.

18         THE COURT:  The allegation, essentially, is that of a

19   conspiracy, is it not, these related entities working together

20   to achieve this common goal.

21         MR. SMITH:  It is, Your Honor.  I hate to use the word

22   "conspiracy."  When I think of it, I think of three guys

23   trapping somebody in the alley.  One holds them down.  The

24   other stands at the end of the alley as a lookout -- that's the

25   privacy service -- and the other wails away at them.  I don't

```
 1   know the agreement to do it is a conspiracy, but the actual

 2   conduct, the actual beating up of something, the actual misuse

 3   of Transamerica's intellectual property rights is more than a

 4   conspiracy.

 5            THE COURT:  Well, if I were looking at this as an

 6   Indictment, Count I would be the conspiracy, the agreement

 7   among these three related defendants, and then you'd have all

 8   the overt acts which would be the substantive offenses.

 9            MR. SMITH:  Exactly, Your Honor.

10            THE COURT:  So, none of this calls into question

11   piercing the corporate veil or that they didn't maintain the

12   corporate niceties and structure.  You're saying these are

13   three different companies, but they're all working together.

14            MR. SMITH:  That's right.  These are three companies

15   working together to put together what they thought, what they

16   hoped would -- if you divide up -- and I was actually

17   fascinated by their reply brief where they actually set it out

18   as well as I would like to --

19            THE COURT:  On the Rule 11 motion?

20            MR. SMITH:  On the Rule 11 motion.

21            In the reply brief on page 2 of 11, they say at the

22   very top of the page -- first they say Vulcan doesn't support

23   our claims.  Then they say "Transamerica merges the three

24       Moniker defendants and treats them as one.  In reality,

25       each played a distinct role with regard to some of the
```

1       named domains.  Moniker is a registrar.  MPS as a provider

2       of privacy services and Oversee as a provider of

3       monetization services through domain sponsor."

4           Then they bottom they concede that the conduct of

5   Oversee is immune from Rule 11 because of the Vulcan case.

6           So, I think what they say here is exactly what we say

7   happened.  These three affiliates under common ownership teamed

8   up to try to misuse Transamerica's intellectual property by

9   setting up sham corporations, by working with sham

10  corporations, hiding them, and when they're caught and we bring

11  the administrative proceeding to stop the use of

12  Transamerica -- missing a letter --  .com, they don't even show

13  up.  They turn over that domain name and they move to another

14  one, and as was stated earlier, this is a constant.  The ball

15  keeps on moving.  The only way to attack the problem is to go

16  after the three entities that are setting it up and making it

17  work.

18          In terms of the case law, Your Honor has already heard

19  Vulcan Golf held that conduct far less egregious than the

20  conduct involved here could qualify as trafficking under the

21  Lanham Act.  Compana versus Aetna is actually a very

22  interesting case because there are two holdings in Compana. The

23  first was that there was a fact issue whether Compana, as well

24  as a registrar, also had become a registrant for a user, and

25  the facts on which that holding was based were the assertions,

1   all of which are present here, that the registration was after

2   earlier registrations had been ordered transferred.  Virtually

3   no information exists about the named registrants and they

4   appear to be shams, and many of those registrants had common

5   mailing addresses in the database of the defendant, the

6   registrar, the Moniker of that case.

7        The second holding was the application of the bad

8   faith exception to immunity, and the Court made short shrift of

9   that and said the same fact analysis that we did on the first

10  issue as to who is, or what is the role of the registrar under

11  these facts also establishes the bad faith.

12       Now, that's not a final determination.  That was a

13  12(b)(6), but it certainly stands for the proposition that if

14  we prove what we allege, there is law to support it.

15       Dell versus Belgium Domains again involves the use of

16  the sham entities as registrants to perpetrate the trademark

17  infringements, that unless you go after the principals, the

18  Monikers of the world are too transitory to address or to

19  control, and in Dell the issue, again, was had the registrar

20  converted itself to a registrant or a user by its conduct with

21  these sham entities and that, again, is precisely what we

22  allege here.

23       Now, our Complaint, and it's massive, it's well

24  organized or well presented, but in a way it's an information

25  dump.  It's almost too much information to look at all at once,

1  but one thing it does do, which is perfectly compliant with

2  Rule 11, is it tells the Court for almost every allegation is

3  this a fact we know.  If so, why do we know it?  Is it a fact

4  we don't know?  If so, why don't we know it yet?  That, again,

5  is perfect transparent compliance with Rule 11.

6          Now, what I'd like to do, with the Court's permission,

7  is walk through an example of facts we do know to show its

8  application to this case, and the one I would like to take,

9  because it has been mentioned here in oral argument, is Domains

10 Ventures.

11          In Paragraph 59 on page 20 we allege "Domains Ventures

12     is a claimed customer of Moniker ostensibly located in

13     China for which Moniker has registered domain names."

14          In paragraph 66 we say that "Moniker shares in the

15     revenues generated by the use of that domain name."

16          In paragraph 62, we say that "Between May 4, 2004 and

17     March 14, 2008 Moniker was ordered to transfer 47 domain

18     names it had registered supposedly for this customer and

19     then shared in the monetization," and those names included

20 12 Wells Fargo sites, seven Citibank/Citimortgage sites, a

21 Fisher Price site, two Sears sites, a Home Depot's site.

22          In other words, the whole purpose of this Domains

23 Ventures' customer relationship is to create these sites that

24 somebody looking for Wells Fargo -- if I go online and I want

25 to apply for a Wells Fargo credit card and I mistype "Wells,

1   Fargo" I may end up on a Domains Ventures site and when I click

2   to ask for a credit card application, thinking I'm dealing with

3   Wells Fargo, I get switched off to somebody else.

4        In paragraph 61 on page 22, just like in Compana,

5   Compana versus Aetna, immediately after all of these orders,

6        "Beginning on March, 2008 and into 2009, Moniker

7        registered Transamerica domain names for Domains Ventures

8        and shared in the monetization of those domain names.

9        The monetization was for advertising counterfeit

10  Transamerica insurance policies and financial services and

11  there is precisely the use of the Transamerica intellectual

12  property that counsel for Moniker said is not in our Complaint.

13        Paragraphs 63 and 64, "The Domains Ventures

14        Transamerica websites used the Transamerica mark to market

15        insurance products and financial services that were not

16        really Transamerica."

17        Counsel, in argument of the 12(b)(6), talked about

18  Disney and the way there works is Disney, let's say, has the

19  website, disney.com, what these folks do is they registered

20  D-i-z-n-e-y, D-i-s-n-e-e, D-s-n-y, all of the possible

21  misspellings, and then what is the service, the monetization

22  service that's provided?  Well, by analogy to what's going on

23  with the Transamerica that we allege in the Complaint, you'd

24  have black market Disney products, Disney T-shirts for which

25  Disney isn't getting paid, black market versions from China of

1   Disney movies and sometimes pornographic parities of Disney.

2   Whatever it is, it's a misuse.  The reason they copied, the

3   reason they registered all of those Disney misspellings is so

4   that they can misrepresent themselves as Disney on the website,

5   misusing the name, and, again, the way this scheme works is

6   you've got Moniker doing the registration, Moniker Privacy

7   making it difficult to catch the entity that is the legal owner

8   and Oversee providing the monetization, the misuse of the

9   trademarks on the website.

10          Now, what we do say in the Complaint is that these

11  sham entities appear not to have any existence, and assuming we

12  prove that, we will argue from that that the registrant, that

13  this team of three, is the actual owner, is the actual

14  registrant.  But I think for purposes of Rule 11 and Rule

15  12(b)(6), what we have shown is that there is sufficient deep

16  involvement in the creation of these websites and in the

17  placement of offending misuses of Transamerica trademarks on

18  the website, that we have more than satisfied our pleading

19  obligations under either measure.

20          Now, what have we done on information and belief?  On

21  information and belief we've alleged, sticking with Domains

22  Ventures, in paragraph 23 we say "On information and belief,

23     Domains Ventures is a fictitious entity ostensibly located"

24  at a particular address in China that I would not be able to

25  pronounce without instruction.  "On information and belief,

1        there is not and during the relevant period was not any

2        such entity at that address or else where in that province

3        of China, according to Chinese authorities," and we've

4    supplied the source of our information and belief, which is the

5    Chinese authorities, and we've also, in connection with Rule

6    11, provided the affidavit of the investigator who actually

7    went to the location, looked for it, couldn't find it and asked

8    appropriate persons "Have you ever heard of Domains

9    Ventures?" and, of course, they hadn't.

10        Now, there is always an issue when one pleads like

11   that, what are the fair inferences from that?  And one thing I

12   didn't hear earlier today is any explanation how these

13   monetization schemes worked and I think it's instructive

14   because you know there's the old saying, you know, "Follow the

15   money."  Moniker is collecting or one of the Moniker entities

16   is collecting these fees for every time anybody accidentally

17   stumbles on to one of these sites and clicks the phony

18   Transamerica.

19        Now, Moniker says "We don't own that site.  We're just

20   providing a service."  Where does the money go?  If they

21   collect a dollar when I click on the Transamerica, they say

22   they've got to split it with somebody 'cause it's not their

23   money.  Well, we've tracked down the addresses and tried to

24   conduct a further investigation of where are these entities

25   that Moniker has represented to the world own these websites.

1   They don't appear to exist.  The addresses aren't real.  If

2   Moniker is keeping the money for itself, if it keeps the full

3   dollar, then it's, obviously, the owner of the website.  If

4   it's splitting the money with somebody that is other than who

5   is represented as the owner, then, again, that leads to a whole

6   issue of ownership and control that will deeply involve Moniker

7   and, perhaps, involve Moniker as a co-owner of the site.

8          That is a fair inference from the facts pleaded in the

9   Complaint and would establish each and every count of our

10  Complaint.

11         Now, we've alleged that sort of activity not just as

12  to Domains Ventures, but we've recited that with investigation

13  we've tried to track down Net41 Media, H.W. Barnes, G.H.

14  Wagenaars, Ron Oron, Omgi, all of those John Doe defendants

15  that we've alleged are defendants, Joe Doe defendants, for

16  which the Moniker entities have placed Transamerica counterfeit

17  trademarks on the websites and have provided -- they've

18  provided the monetization.  They've provided the privacy.  They

19  are all domain ventures, but we've not been able to track down

20  as much detail and facts.  That's what we're going to do in

21  discovery.

22         Thank you, Your Honor.

23         THE COURT:  Thank you very much.  That was very

24  helpful.

25         MR. de la O:  Your Honor, if I could address really

1   just one point.  I will not tax your patience.

2         THE COURT:  Certainly.

3         MR. de la O:  I do want to answer the question, why we

4   followed it, and I want to read from the comment to Rule 11,

5   and it says "A party seeking sanctions should give notice to

6     the Court and the offending party promptly upon discovering

7     a basis for doing so.  The time when sanctions are to be

8     imposed rests in the discretion of the Trial Judge."

9         It was on the basis of that comment that we made the

10  decision as to when we should file it after the 21 days

11  expired.

12         THE COURT:  Thank you.

13         I think consistent with my earlier remarks and

14  observations regarding, as I see it, the rather complex nature

15  of the claims asserted and the arguments raised in the motion

16  to dismiss, the better course is to deny that motion for

17  sanctions without prejudice and time will tell if the

18  defendants will want to file it one more time after we have the

19  pleading issue resolved and there has been some discovery.

20         So, that I will take care of after today's hearing.

21  Again, I'll deny it without prejudice.

22         The motion to dismiss I'm going to take under

23  advisement and look at the law a little bit more carefully now

24  that I've heard your arguments and hopefully get you my

25  decision in due course.

1              Is there anything additional?

2              MR. de la O:  No, Your Honor.

3              THE COURT:  I just want to commend all of the lawyers,

4    the briefing here has been excellent.  It was not a reflection

5    on the briefing that I didn't understand the technical stuff

6    that's going on here, and the oral arguments were equally very

7    well presented and I thank you all for being here today.

8              Thank you.

9                          - - - - -

10                      C E R T I F I C A T E

11             I hereby certify that the foregoing is an accurate

12   transcription of proceedin                       matter.

13

14   __11/16/09_____             _____
          DATE                    BARBARA MEDINA
15                                Official United States Court Reporter
                                  400 North Miami Avenue, Suite 12-2
16                                Miami, FL  33128 - 305.523.5518
                                            (Fax) 305.523.5519
17                                Email:  barbmedina@aol.com

18

19

20

21

22

23

24

25

**A**

ability 10:19
able 13:20 65:24 67:19
above-entitled 69:12
absence 52:17
absent 59:10
absolutely 7:8
absurd 36:1
accessible 32:11
accidentally 66:16
account 27:24 50:15
accurate 69:11
accusations 24:10
accused 45:16,16 46:16
achieve 59:20
acknowledge 50:19
acknowledged 51:20
acknowledges 24:20
ACPA 6:25 10:6 18:19 19:7 22:1
  23:21 37:15 41:7
ACPA's 21:14
act 6:24 7:9 10:5 18:20 27:25 30:4
  36:3 58:21 59:14 61:21
acted 11:9
acting 11:4,20 16:7 19:2 30:9
  38:25 39:11,15 41:24 47:25
  48:17 50:25 58:22
action 18:19 27:23 37:16 38:4
  58:25
actions 51:10
activities 18:23 35:16
activity 28:11 67:11
acts 7:7 30:3 60:8
actual 21:10 35:10,10 60:1,2,2
  65:13,13
ad 36:18
addition 41:3
additional 45:3 56:23 57:18 69:1
address 4:10 6:7 8:16,17 13:5
  20:13 26:14 30:22 37:15 38:8
  62:18 65:24 66:2 67:25
addressed 48:14,15
addresses 62:5 66:23 67:1
addressing 6:6
adequately 16:20 27:14 35:2,8
  36:4,6 38:3
administrative 4:8 61:11
adoppelt@addmg.com 1:18
adopted 23:3
advertise 25:19 28:15
advertised 25:10
advertisements 12:2
advertises 27:1
advertising 12:20 23:8 64:9
advisement 68:23
Aetna 3:13 35:12 61:21 64:5
affidavit 50:20 66:6
affidavits 55:18,19,20
affiliated 59:13
affiliates 61:7
affirmatively 18:11
affirmed 14:9
agent 10:17
aggressive 25:1
ago 38:6,7 45:10
agree 40:6 47:15 49:24
agreement 60:1,6
al 1:8
alien 48:7
allegation 14:18 15:13 16:5,14,19
  16:20,25 17:2,4,5 18:12 19:15
  20:21,22,24 21:1,4,10 22:2 32:4
  34:11 38:24 39:4,4,10,13,15,17
  39:21 40:9,23 41:2,4,5,6,14,22
  45:22 59:18 63:2
allegations 11:8,21 16:6 27:10
  23:9 25:5,6 30:2 31:5,6 32:16
  33:16 34:14 37:10 41:5,7 45:18
  48:2,2 56:13
allege 10:19 14:14 15:15 16:3
  18:21,23 19:1 22:2,6 24:18
  30:25 31:3 40:20 48:16 62:14,22
  63:11 64:23
alleged 6:20 13:1,9,21 18:15 19:21
  20:9 22:5,14 22:18 26:8 27:14
  29:10 31:16 36:3 37:6 56:14,16
  56:19 59:6 65:21 67:11,15

allegedly 34:17
alleges 14:16 18:24 23:7
alleging 11:20,21,23 41:14
Allen 1:16,19 5:5
alley 59:23,24
allows 51:21
ALTONAGA 1:12
Amazon 43:2
ambiguity 28:12
amend 52:19 53:16,20
amended 7:21 16:25 17:4 20:17
  23:10 25:5 26:9 30:2,24 37:23
  37:23 45:23,25 51:22 54:23 56:6
  57:4
amendment 15:12 22:24,25
amount 14:2 57:23
analogy 36:13 64:22
analysis 19:22 30:15 62:9
analyzing 21:18,18
and/or 20:18
Angeles 2:13 5:24 8:16
annoying 12:4,5
annuities 27:2
anonymity 24:23
anonymous 26:19 27:7
answer 34:11 49:9 53:8 68:3
Anti-Cybersquatting 18:19 36:3
  58:20,24
anybody 55:8 66:16
apart 8:20
apparently 49:11 50:8
appear 6:16 16:21 62:4 65:11 67:1
APPEARANCES 1:13
appears 17:9
appended 30:12 44:11
appends 33:10
applaud 26:3
applicable 26:3
application 62:7 63:8 64:2
applied 23:10
apply 63:25
appreciate 26:17
appropriate 37:13 40:17 66:8
apt 28:23
arbitrator 34:9
area 14:1 45:12 58:4,13
aren't 11:18 14:11 50:16 67:1
argue 65:12
argued 18:13 47:20 58:15
arguing 37:14 46:22
argument 1:11 26:24 32:1,2,13
  33:25 43:7,11 49:7,25 56:9,10
  56:11 58:11,12,13,15 63:9 64:17
arguments 6:2,7,16,18 14:5 22:20
  27:17 28:6 42:11 45:14 46:5,6
  68:15,24 69:6
Ari 32:21
arrangement 41:15
article 29:16
aside 41:16
asked 40:8,22 49:3 66:7
asking 51:25 52:2
aspect 16:17
assert 55:2
asserted 56:18 68:15
assertions 61:25
assign 49:15
associate 5:15
associated 38:2
assuming 12:20 14:25 15:1 49:16
assuming 50:5 65:11
assumption 50:10,11
astonished 54:17
attached 40:18 50:22
attachment 54:15
attack 61:15
attempting 57:23
attempts 43:12
attention 36:9
attorney 57:10
attorney's 57:8
authentic 42:21
authorities 25:22 34:19 66:3,5
authority 44:16
automobiles 17:20
Ava 1:15 5:5
available 8:9 15:1,1
avenue 1:17,20 2:9,17 11:18 69:15

avoid 15:8
aware 6:22
a.m 43:22

**B**

back 7:20 8:1 11:17 17:14 18:9,25
  27:24 33:21 36:11 40:14 41:13
  41:17 48:9,11
background 57:23
backs 40:12
back-pedaling 31:8
bad 9:9 18:23 21:13,19,20,21 22:1
  22:3,4,9,13,14 29:3 33:15 34:6
  37:2 41:3 37:1 41:23 42:8,9
  43:8 44:6,7,9 54:16,17 55:7
  59:11,16 62:7,11
ball 36:11 61:14
BARBARA 2:15 69:14
barbmedina@aol.com 2:19 69:17
Barnes 67:13
Barry 32:21
base 44:4
based 45:12,13,22 61:25
basic 7:20 31:12,12
basically 8:5 9:15,19 11:25 12:22
  13:4 16:9 17:7 18:10,11 21:19
  22:19,22 27:10 37:7 42:19
basis 51:23 55:12 58:14 68:7,9
battling 54:22 55:1
beachside 12:16,21
beachsiderentals.com 12:13,15
beating 60:2
beginning 40:3 52:10 64:6
behalf 10:14
Belgium 3:14 26:1 39:14 48:4
  62:15
belief 56:16,19 59:7 65:20,21,22
  65:25 66:4
believe 9:8 13:19 26:5 46:3,11
  47:9 49:12 54:13 55:12 57:1,21
  58:11 59:6
believes 25:13
benefit 52:11
Berryhill 33:8
best 13:16
better 21:5 36:13 52:12 68:16
beyond 11:20 34:19
bind 36:15
binding 58:10
Bird 3:11 15:23 27:19
bird's 26:18
bit 16:24 17:22 68:23
black 64:24,25
blindness 44:14,19
blithe 29:23
Block 29:16
bmcdonald@schnader.com 1:25
bona 24:24
borne 46:7
bottom 61:4
Boulevard 2:12
bouncing 48:9
brand 58:5
Brickell 1:20
brief 29:13 58:20 60:17,21
briefing 54:16 58:16 69:4,5
bring 61:10
bringing 52:8
brings 19:19
broad 19:13
broader 46:20
Bruce 1:22 5:9 24:4
bulk 26:22
bunch 50:10
bundle 20:6,7
burden 7:23,24 31:22 46:11,14,23
business 27:9 51:16
button 12:1
buying 49:18

**C**

C 69:10,10
CA 2:13
California 8:17 14:8 28:9 37:4 38:7
  51:8
call 12:6 32:3
called 8:5,8,12,23 15:9 27:23

42:19
calls 60:10
camp 17:19
candor 46:5
Cannova 3:12 23:5
can't 11:17 17:9,9 18:7 21:12 22:6
  23:19 26:22 32:15 34:21 35:14
  36:22,23 37:1 38:25 45:21 46:7
  47:14 48:15 58:12
capacity 11:20
capture 21:16 36:5
captures 26:16
card 43:6,9,24,22 63:25 64:2
care 7:1 68:20
carefully 53:15 68:23
Caribbean 50:23
carry 31:22
case 1:3 6:22 7:3,22 8:21 9:8,18
  11:4,12,13,14 13:13 14:21 15:22
  15:23 19:23 20:14,16,20 21:5,22
  22:10,11,18 23:2,3 25:8 26:2,16
  27:12,14,16,19 28:8 29:19,20
  30:1,15,18,19 31:25 32:1,5 33:1
  33:10 34:2,3,9 35:19,21 37:6,10
  37:20 38:5 39:12,19,24 40:1
  41:10,10,20,21,23 42:1,2 44:3,3
  44:7,21 46:12 47:12,23 52:3,10
  52:15 53:5,7,10 54:2 55:8,16
  56:6 57:11 58:8 59:5,13 61:5,18
  61:22 62:6 63:8
cases 11:6 14:1 19:22 23:4,5
  27:20,20 28:4,5,5,7,7 33:25 34:2
  34:7,8 35:15 39:7,23,24 42:13
  43:2 44:18
catch 65:7
catch-all 23:13
caught 36:13 61:10
cause 18:18 27:23 37:15 38:3
  66:22
cease 42:15
CECILIA 1:12
Cedar 5:16
Central 14:8 28:9 41:9
certain 17:13 55:23
certainly 5:18 7 19:17 23:4 34:1
  38:13 53:6,9 62:13 68:22
certificate 3:3 33:5,10
certificates 23:12
certify 69:11
challenge 52:9
change 23:1 56:11
changed 58:6
changes 58:4
changing 58:13
characterizations 24:11
chase 59:15
cheese 36:15
chevrons 4:12
Chicago 29:15
children 36:12
chill 57:8
China 33:13 34:17 50:7,8,22 63:13
  64:25 65:24 66:3
Chinese 33:13 34:18 66:3,5
choosing 39:20,22
circuit 14:9,11 15:23,24 19:22
  27:12 43:6 57:14 58:8
circumstances 57:7
circumstantial 31:22
CITATION 3:10
citations 14:10
cite 22:8 37:22 58:9
cited 9:9 29:13 35:14 39:7
cites 23:2
Citibank/Citimortgage 63:20
citing 7:22
City 3:24 13:24
civility 54:25,25
claim 7:4,9 10:3,21 11:22 16:15
  18:8 22:22,23 23:8,20,21 26:7
  35:7,8,9 37:16 40:20,21 41:7
  52:18 59:4
claimed 63:12
claims 7:23 13:2,4,6 22:20,21
  23:11 33:17 46:3 52:10 60:23
  68:15
clarity 23:25
clear 11:11,15 14:21 46:1 47:20

**cleared** 24:11
**Clearly** 46:20
**Cleland** 19:24
**click** 17:21 64:1 66:21
**clicks** 66:17
**client** 47:3 57:10
**client's** 33:9
**clients** 50:12
**client's** 33:9
**cloud** 29:3
**collaborate** 28:20
**collaborated** 55:22
**collect** 66:21
**collecting** 66:15,16
**com** 61:12
**come** 5:18 10:15 11:17,19,24 12:5 12:14 40:14 48:24
**comes** 10:15 17:21 28:21 41:8 50:25 51:13
**coming** 25:2
**commenced** 8:23
**commend** 69:3
**comment** 57:4 68:4,9
**comments** 46:1,1 57:3
**commerce** 27:18 28:3,4 29:7 35:10 36:7
**commit** 29:25
**common** 10:7 25:17 30:9 38:17 39:8,25 59:20 61:7 62:4
**communications** 57:24
**community** 24:20 27:22 29:22 55:25
**Compana** 3:13 35:12 61:21,22,23 64:4,5
**companies** 8:20 16:7 38:20,25 43:5,6 48:12 60:13,14
**company** 3:17 8:4,7,8,22 11:1 15:5 17:7 18:22 27:3,9 30:11 34:13 44:10
**complain** 15:9,9
**complainant** 34:3
**complaining** 20:19
**Complaint** 7:22 16:24 17:5 18:13 18:24 20:17 23:6,10 24:13 25:6 25:7 26:9 30:24,25 31:6,9,15 33:7 34:14 35:3 36:9 37:18,23 37:24 38:4 45:11,12,16,23,25 46:22,24 48:19 49:19 51:13,22 52:18 56:6,15,16,22 57:16,16,17 57:21 62:23 64:12,23 65:10 67:9 67:10
**complaints** 42:22,25
**completely** 44:4,23 48:12
**complex** 68:14
**compliance** 57:15 63:5
**compliant** 63:1
**comprehensive** 7:21
**computer** 12:6 49:17
**conceal** 25:9,12
**concede** 61:4
**concept** 48:7 51:12
**concern** 57:25
**concerned** 34:2 36:14
**concert** 30:4 39:11
**conclude** 29:20
**concludes** 22:3 27:7
**conduct** 59:16 60:2 61:4,19,20 62:20 66:24
**conducted** 55:5
**conference** 4:6,10
**confesses** 10:12
**confusion** 28:13
**Congress** 20:1 43:11
**conjunction** 50:25
**connection** 7:10 10:8,20 16:14 66:5
**consideration** 52:1
**consistent** 68:13
**conspiracy** 59:19,22 60:1,4,6
**constant** 61:14
**constantly** 12:5 58:4
**consumer** 22:22,23 23:6,7 36:3 58:20
**contact** 8:12,25 9:1,2,3
**CONTENTS** 3:1
**context** 19:2 21:18 22:1 35:22 43:15 56:23
**continue** 34:16 35:4
**continued** 33:21

**continuously** 49:8
**contrary** 54:14
**contrasting** 14:3
**contributory** 13:18 16:11,17 18:8 18:18 23:20 32:14 33:17,19 35:6 35:7,7,9 40:9,19 43:1 44:1
**control** 16:18,19 17:3,3,8 18:2,6,7 18:16 33:17 34:25 49:5,7 51:3 62:19 67:6
**controlled** 16:21
**controlling** 49:14 50:1
**controls** 49:10
**CONVENTIONS** 4:8
**converted** 62:20
**convince** 47:4
**copied** 45:5
**copyright** 43:2
**copyrighted** 43:4
**Corp** 43:15
**corporate** 31:23 60:11,12
**Corporation** 1:4 3:24 5:16 13:24 24:6
**corporations** 16:8 61:9,10
**correctly** 20:3
**couldn't** 37:5 39:11 66:7
**counsel** 4:9 5:3,16 20:12 24:7 28:2 38:16 40:4 54:18 55:19,22 56:5 57:19 58:3 64:12,17
**count** 33:19 60:6 67:9
**counterfeit** 14:17,19,20 15:14,15 26:25 27:2,3 33:21,23 40:10,11 40:15,16 64:9 67:16
**counterfeiting** 27:6 51:9
**counts** 22:17
**couple** 40:5,7,12
**coupled** 27:1
**course** 13:15 35:12 52:12 59:4 66:9 68:16,25
**court** 1:1 2:16 4:10 5:1,8,18,25 6:9 6:12 7:3,15,17 9:23 10:23 11:8 11:13 12:4,24 13:25 14:13,16 19:18 21:7 22:17 23:16 24:20 26:2,5,10,17 27:10,11,16,17 30:2 31:19,19,25 33:16 36:20,20 36:21,22 37:3,12,14,16 38:3,9 38:6,9,13,24 40:8 41:23 42:4 43:16,20,23 44:17,22 45:2,5,7 46:2 47:13,16 51:20,22,25 52:17 52:25,25 53:4,13,19,22 54:3,6 54:15 55:17 56:6 57:25 59:18 60:5,10,19 62:8 63:2 67:23 68:2 68:6,12 69:3,15
**Courthouse** 2:17
**courtroom** 41:8 55:1
**Courts** 9:9 15:24 21:19 22:24 43:15 54:21 56:1
**Court's** 34:11 36:9 63:6
**cover** 6:18 23:13
**covered** 20:23
**co-owner** 67:7
**Craig** 31:2
**create** 63:23
**creation** 65:16
**creativity** 57:8
**credit** 43:4 44:22 63:25 64:2
**criticize** 9:12
**crucial** 40:1 41:18
**crux** 59:13
**crystal** 47:20
**customer** 32:24,24,25 42:22 63:12 63:18,23
**customers** 26:6
**cybersquatters** 21:17
**cybersquatting** 27:23,25 36:4

**D**

**D** 2:16
**damages** 58:23
**database** 7:14,16 8:12,15 9:21 10:14 62:5
**date** 52:13 69:14
**David** 2:2 5:11 30:21
**day** 47:9 50:18 58:6
**days** 27:24 68:10
**de** 2:7,8 5:21,21,22 6:5,10 45:6,8 47:15,17 51:24 52:22 53:4,17,21 67:25 68:3 69:2

**deal** 23:25 24:3
**dealing** 64:2
**debate** 29:22
**decide** 17:9,12,17
**decided** 26:1 27:21
**decision** 17:25 18:2 37:3 68:10,25
**decisions** 22:7
**declaration** 31:2,2 32:22 33:1,8
**declarations** 32:21,23
**deemed** 25:25
**deep** 65:15
**deeply** 67:6
**defend** 46:5
**defendant** 2:6 6:19 7:2 23:22 27:16 39:10 44:3 62:5
**defendants** 1:9 5:20 6:4,14 9:18 13:14,18 15:18 18:11 21:24,25 22:4,8 25:20,24 26:4,4,13,24 27:16 28:10 29:1 31:21,24 33:10 33:20 34:12,20,24 35:23 36:17 37:22 39:12,18 44:2,15 48:8 58:16 59:14 60:7,24 67:14 67:15,15 68:18
**deficiencies** 31:8,9
**deficient** 16:16 57:18
**defines** 56:7
**definition** 20:23 21:7
**definitively** 52:18
**degree** 30:14
**delao@dmmllaw.com** 2:10
**Delgado** 2:11 5:24 6:5,11,13,14 7:6,16 8:1,16 10:1,24 11:10,15 12:9,25 14:15,18 22:19 38:11,14 39:3 42:5 45:3,4 46:21 47:20 52:15
**Delgado's** 49:6
**Dell** 3:14 26:1 27:11 31:24 32:6 35:11 37:3,20,21 38:5 39:14 48:4 62:15,19
**deny** 68:16,21
**depending** 56:8
**Depot's** 63:21
**depth** 30:14
**Description** 3:7
**Descriptions** 4:7
**deserving** 51:22
**designation** 6:25 10:6
**desist** 42:15
**detail** 30:14 67:20
**determination** 62:12
**determine** 31:23 51:6
**determined** 52:8
**determining** 31:21
**diatribe** 37:7
**dicey** 19:6
**didn't** 7:4 12:13 22:25 24:15,16 53:2 54:6 60:11 66:12 69:5
**different** 8:21 10:16,17 20:16,21 26:2 38:20 39:9 42:18,22 44:24 49:8 48:12,18 50:16 60:13
**difficult** 57:11 65:7
**dilution** 6:24 10:6
**direct** 13:6,7,9,9,14 23:19,19 36:9 42:9 44:17
**directly** 26:3 37:20
**disagree** 38:19
**disclose** 57:23
**disclosed** 57:22,25
**discovering** 68:6
**discovery** 47:6 52:6,6,11 56:24 67:21 68:19
**discrete** 38:15
**discretion** 68:8
**dismiss** 1:11 6:1,3,7 16:23 22:17 23:16 24:3 30:13 31:4 44:12,18 45:13,15,22 46:21 48:1,15 53:18 53:19 68:16,22
**dismissed** 55:11
**dismisses** 53:6,10
**Disney** 15:5,7,8,10,11 17:23 49:21 64:18,18,24,24,25 65:1,1,3,4
**Disney's** 49:23
**disney.com** 15:1,3,6 17:15,21 49:18 64:19
**dispute** 11:1,6,12 28:16 36:10
**disputed** 26:8
**distill** 6:17

**distinct** 60:25
**distinction** 19:4,12 40:2 41:18
**distinguish** 44:2
**distinguished** 28:7,8
**district** 1:1,1,12 14:8 19:24 22:25 23:3,5 25:23 28:9 35:13 37:4 41:9
**divide** 60:16
**DIVISION** 1:2
**document** 34:23
**documents** 50:22
**Doe** 6:21 9:18 15:17 17:1,6 18:11 21:24,25 22:4,8 32:9,17,25 33:10 34:20,24 67:14,15
**doesn't** 14:13 15:2 20:10 23:9,13 24:17,18 25:8 33:6,6 35:14 49:13,22 50:1,16,24 51:1,2,3,8 51:15 60:22
**doing** 7:12 10:10,13 11:17 17:15 21:1 28:11,16 31:14,17 35:24 39:1,2 46:24 51:16 55:24 59:3,4 59:8,8 65:6 68:7
**dollar** 66:21 67:3
**domain** 8:3 11:25 12:19 13:8,10 13:22 14:17,19,20 15:14,16,19 16:6,13,21 17:3,8,9,10 18:3,21 19:2,9,11,20,21 20:2,3,5,7,19,24 20:24 21:2,6 26:8,25,25 27:2,4 27:21 28:1,2,19 32:24 33:22,23 34:16 36:10 37:25 39:20,23 40:4 40:7,10,11,15,22,24 41:13 42:1 42:14 45:19 48:6 49:5,14,20 50:19 51:2 58:21 59:1,2,12,14 61:3,13 63:13,15,17 64:7,8 67:19
**domains** 3:14,17 9:20 16:3 26:1 30:12 34:14,16 39:14 44:11 45:17 48:5,9,18 50:7 61:1 62:15 63:9,11,22 64:1,7,13 65:21,23 66:8 67:12
**don't** 5:14 6:15 7:6,20 10:25 11:5 11:11 12:12,17 13:3,6 16:5,19 17:8 18:6,24 23:14 24:2 26:15 29:18,18,23 31:7,17,17 32:4 33:4,5 34:20 36:7 40:25 41:16 42:16 43:20 46:23 48:16 50:22 53:22 54:25 55:4,7,13 59:25 61:12 63:4,4 66:19 67:1
**Doppelt** 1:15,16,19 5:4,5,5,9
**dot** 36:6
**doubt** 28:12 34:19
**dramatically** 58:6
**draw** 44:25 51:18
**dsmith@schnader.com** 2:4
**due** 68:25
**dump** 62:25
**duties** 6:6
**Dyer** 1:16,19 5:5
**D-i-s-n-e-e** 64:20
**D-i-z-n-e-y** 64:20
**D-s-n-y** 64:20
**D.C** 1:24 54:3

**E**

**E** 69:10,10
**earlier** 17:16 61:14 62:2 66:12 68:13
**early** 52:23 53:5
**Eastern** 19:24
**easy** 19:5 50:8
**eBay** 3:25 42:18,20,21,25
**echo** 19:25
**educate** 47:11
**effect** 36:19
**effectively** 43:9
**efforts** 44:2
**egregious** 30:22 61:19
**egregiously** 30:22
**either** 8:20 16:20 18:21,24 19:14 23:21 56:11 65:19
**elections** 9:11
**Electric** 38:19,23
**electronic** 29:7
**element** 10:4 13:13 39:24
**elements** 10:2 11:22 13:2
**eliminate** 22:20 54:23
**elucidate** 32:10

email 1:18,21,25 2:4,10,13,19 8:17
    9:8 69:17
emerged 28:6
emerging 58:3
emphasis 54:25
emphasize 58:19
emphasized 58:3
emphatic 32:4 47:21
empire 15:10
engaged 47:8
engines 44:23
enterprise 25:21,25
Entertainment 3:17 30:11 34:13
    44:10
enthusiasm 57:8
entire 22:18
entities 14:17 16:8 26:21 27:7
    32:10 34:16 49:8,12 50:5,6
    51:12 59:19 61:16 62:16,21
    65:11 66:15,24 67:16
entitled 24:22
entity 6:20 7:5 26:6 50:9 51:5 65:7
    65:23 66:2
equally 69:6
especially 9:13
ESQ 1:15,19,22 2:2,7,7,11
essential 7:8
essentially 12:8 45:16 46:17 52:10
    59:18
establish 16:10 34:19,25 42:12
    47:7 50:8 59:7 67:9
established 35:11 50:2,4
establishes 62:11
et 1:8
evaluating 57:15
everybody 5:7 9:13
everybody's 37:1
evidence 3:6 31:22 49:4,5 50:3
    51:21
evidential 56:18,24 57:2
evil 21:25 28:22,22,22
exact 32:8,16 36:10
exactly 27:10,11,15 28:1,22 34:15
    35:15 37:21 44:19 60:9 61:6
examine 31:25 32:8
examined 25:20
examining 57:19
example 8:3 9:10,10 12:11,18
    14:24 21:23 29:12 32:20,24 63:7
examples 20:1
excellent 69:4
exception 62:8
excised 25:20
exclusively 32:11
exemption 35:16
Exhibit 30:12 44:11
Exhibits 3:5,6
exist 33:2,4,4,12 34:20,20 50:21
    50:22 67:1
existed 27:22
existence 65:11
existing 56:10
exists 50:9 62:3
expand 43:17 56:12
expect 55:13
expectation 56:22
experience 45:12
expired 68:11
explain 7:24 47:18 49:6,9 57:3
explained 45:9
explanation 66:12
explored 14:2
extend 56:11
extent 55:20
extraordinary 30:13
extreme 24:7
eye 26:18

F

F 69:10
facie 10:2 11:22
facilitating 43:5
fact 17:5 21:23 24:19 26:2 27:22
    27:24 28:10 29:15 30:5 37:9
    41:16 46:15 48:6 51:6,23 55:21
    56:15,17,18 61:23 62:9 63:3,3
facto 49:22

facts 46:21 47:15,19 48:12,18
    55:24 57:6,12 59:6,6 61:25
    62:11 63:7 67:8,20
factual 56:13 57:9
failed 43:13,13
fails 34:3 52:18
fair 66:11 67:8
fairly 7:21 12:12 19:25 22:12
faith 18:23 21:13,19,20,21 22:1,3,4
    22:9,13,14 34:6 36:14,22 37:2
    38:1 41:23 44:6,7,9 54:16,17
    56:5,8,9,17,20 57:3 58:2,11,13
    59:11 62:8,11
false 6:24 10:5 23:8 24:10,10,10
    30:20 31:6 32:9 45:21
far 5:19 26:11 27:13 34:1 36:14
    44:9 61:19
Fargo 63:20,24,25 64:1,3
fascinated 60:17
fault 50:24
Fax 2:18 69:16
FDUPTA 22:22
Federal 22:20 54:21 56:1
fee 48:10
feel 42:2
fees 66:16
Ferguson 2:16
fictitious 14:17 16:8 26:6,19 27:7
    32:9 33:7 49:8,12 50:5,5,12,12
    51:5,12 65:23
fide 24:24
field 19:4 55:23
file 45:21 52:23,25 53:2 55:13,14
    68:10,18
filed 7:21 45:9,10,23,24 46:18
    54:18
fill 8:5 21:17
Filley 31:3
final 62:12
finally 44:21 47:12 59:10
financial 64:10,15
find 12:15 32:19 34:4 66:7
findings 48:5
fine 15:11 33:19 34:11 40:10
finish 36:2
firm 5:10,23 54:10,12 55:20
firm's 5:13
first 6:4,19 10:15,24 14:13,22 17:4
    18:22,25 20:7,17 23:10 26:9
    29:12 31:6,9 33:19 38:17 40:11
    40:14 45:12 51:13,22 53:2 54:2
    54:14 57:15 60:22 61:23 62:9
Fisher 63:21
five 43:20
FL 1:17,21 2:9,18 69:16
flack 28:25
flash 50:13
flatly 28:6
Flentye 3:15 25:24 31:20
Florida 1:1,6 23:3 51:8
flying 24:11
focused 30:15
focusing 18:15
folks 64:19
follow 43:16 50:1 66:14
followed 68:4
following 18:25
follows 55:16
fool 36:20
foreclosed 11:18
foregoing 69:11
form 8:5
formulaic 19:16
forth 13:3 36:11 45:8 48:9
Forum 29:16
forward 58:1
found 34:21 39:19 41:23 42:25
    43:6 47:25 56:21 57:17
framework 58:5
frankly 52:14
frantic 32:4 47:21
fraud 29:7,25
free 15:12 42:2
frivolous 46:3
front 45:17
full 67:2
function 39:1

furnishing 39:2
further 66:24

G

game 54:7
gap 21:17
garbage 12:7
Gaylord 3:17 30:11 34:13 44:10
gays 45:10
gee 49:21
genealogy 15:7
general 5:15 24:20 38:18,19,19,22
    38:23
generalities 31:18
generalized 22:13,14
generated 63:15
generic 12:12
getting 64:25
Gilchrist 1:16,20 5:5
give 14:7 22:9 32:12 68:5
gives 10:5 20:1
Glad 5:19
Gmail 50:15
gnats 29:3,4
go 7:20 8:4 9:21 12:2,11 14:24,25
    17:14 18:11,25 21:15 25:18
    29:18,18,24 43:4,9 51:21 58:1
    61:15 62:17 63:24 66:20
goal 59:20
goes 8:12 48:5 58:16
going 6:17 9:12 11:10 13:5 14:10
    17:11,12,12 20:13,13 26:18 27:5
    28:25 29:2 30:21 31:12,13 32:3
    34:4,12,15 35:3 36:8,21 37:12
    40:19 42:8 46:6 47:18 48:13
    51:9 53:14 56:25 64:22 67:20
    68:22 69:6
Goldberger 32:21
Golf 4:3 20:14,14,16 21:3 25:23
    27:15 28:7 35:11 37:5 38:4 39:9
    41:1 44:1 61:19
good 5:1,4,21 6:11,12,13 17:18
    19:25 24:4 43:13,16 45:6,7 54:2
    54:6 56:5,7,9,17,20 57:3 58:2,11
    58:13
goodness 5:18
goods 7:10 10:8,12,20 15:4 16:14
    25:10,11
goodwill 38:2
Google 12:14
Go-Daddy 48:23
grant 53:13,15
granted 23:17 52:19 53:17
grave 42:10
gravity 26:16
great 23:25
Greatdomain 3:16 28:5
Greatdomains 19:23 27:19
greater 54:24
Greek 7:19 52:16
grievance 33:3
gripe 15:9
ground 44:3
grounds 53:11
group 25:17 26:1 28:11,12
guerrilla 32:2
guide 19:22
guilty 36:22
guise 26:20 27:6
gun 34:23
guys 59:22
G.H 67:13

H

H 1:19
hadn't 66:9
Hamptons 3:18 31:20 39:18
handful 34:7
handle 43:9
handles 21:7
Handley 5:15
hanging 55:9
happen 12:17 57:1
happened 8:19 12:17 61:7
happening 26:16 31:18 36:5 39:12
    43:8
happens 50:14

Harrison 1:23 2:2 5:10,11 24:5
hasn't 23:21
hate 59:21
haven't 22:5 50:2 52:5,8
heads 29:4 55:9
hear 6:4 24:2 28:22 36:16 43:21
    53:23 54:18 66:12
heard 61:18 66:8 68:24
hearing 7:18 46:4 52:15 68:20
held 22:25 25:24 27:6 31:21 37:4
    37:21 61:19
helpful 31:19 67:24
here's 13:3 14:24
herrings 24:10
Hey 12:14
He'll 6:6
he's 5:24 49:10 50:21
hide 28:19
hiding 61:10
higher 43:13
highlights 55:17
highly 46:12
history 21:15
hits 30:16
hold 23:5 34:5 44:18
holding 15:24 61:25 62:7
holdings 61:22
holds 25:23 59:23
Home 63:21
homeless 25:1
hominem 36:18
Honor 5:4,21 6:5,10,11,13,15 24:1
    24:4 33:18 37:17 38:11,14 45:4
    45:6 46:4 47:10,11,17,23 49:2,3
    53:6,10 54:2 56:3 59:21 60:9
    61:18 67:22,25 69:2
HONORABLE 1:12
hook 38:22
hope 47:11
hoped 60:16
hopefully 68:24
hoping 17:20 37:11
Host 3:23 28:8,8,24 35:11,19 41:8
    41:19 44:5
human 49:20
hyperlinks 12:1,2,20,23 17:17,19
    17:23
hypothetical 17:15
H.W 67:13

I

Icon 48:10
idea 39:8 40:12
identification 3:6 4:11
identify 4:9
identity 25:12 28:19
illegitimate 24:17,19 29:11
Illinois 25:23
illustrate 36:10
image 28:21
images 43:4
imagine 17:14
imitating 38:1
immediately 64:5
immune 28:23 61:5
immunity 28:24 44:6,8 45:14
    58:16,17,19 59:3 62:8
impermissible 37:9
implicit 22:12 56:21
import 51:4
important 19:3,4,11 21:14 41:9
importantly 50:2
impose 43:12
imposed 68:8
imposes 56:4,17
improper 16:4
improperly 13:18 54:14
inappropriate 52:7 53:9
inception 52:3,6
included 41:4 63:19
including 39:16 56:6
incorporating 37:25
incorporation 33:5,11
incorrect 29:23
INDEX 3:5,10 4:6
indicated 4:11 21:14 26:17 52:4
    52:15

indicating 55:20
Indictment 60:6
individual 8:9 27:3
individuals 27:7
inducement 18:10,14
industry 8:19 11:24 26:18 31:18
industry-standard 4:11
inference 51:17 67:8
inferences 66:11
information 7:13 8:7,12 9:1,2,2,3
9:5,6,16,17,21 32:8,10,18 56:16
56:19 59:7 62:3,24,25 65:20,21
65:22,25 66:4
infringe 13:23 15:2,3 18:12 49:22
49:23
infringement 6:23 7:1 10:3,5,21
13:6,7,9,10,15,19 14:3,23 15:21
16:11,12,13,17 18:6,8,16,18
23:11,19,20 25:15 26:12,13,15
26:23 27:9 33:17 35:5 40:9,20
43:1 44:15 51:9,10
infringements 21:16 62:17
infringing 18:17 23:17 30:3,6
36:23,25
initial 45:11 53:8
initially 45:11
injunction 48:6 58:25
injunctive 58:24
inquiry 31:16 57:5
instances 36:18
instruction 65:25
instructive 66:13
instrumentality 18:17
insufficient 40:17
insurance 27:2 64:10,15
intellectual 60:3 61:8 64:11
intend 31:1,7
intended 21:15 22:4 23:12 57:8
intends 25:7 26:7
intent 18:23 22:13,15 38:2 59:11
interest 20:4 21:12 24:24
interesting 61:2
interests 20:10
internationally 55:23
Internet 25:11 29:8 37:25 42:8
43:3 50:13 55:25
intertwined 6:2
interviewed 34:18
introduce 5:7
invective 36:18
investigation 55:16,17,21 56:20
56:21,23 57:12 66:24 67:12
investigator 34:17 50:6 55:18 66:6
invited 47:2
involve 67:6,7
involved 25:25 44:9 61:20
involvement 65:16
involves 32:3 62:15
Iowa 5:17
ipso 49:22
Iqbal 3:19 19:18
Iran 9:11,14
ironically 41:22
irony 32:13,14
Islands 33:11
isn't 10:10 14:22 25:21 34:6 41:14
44:7 51:15 52:12 64:25
isolated 34:7
isolation 25:21
issue 11:6,16 21:21 22:10 23:13
26:14 30:20,20 35:18 38:17 42:1
47:10 48:14 53:23 61:23 62:10
62:19 66:10 67:6 68:19
issues 24:10 31:12 56:1
it's 6:24 10:5,16,17 11:9 12:21
13:10 14:25 15:16,17,18 18:1
19:4,8,13 20:11,16,25 21:13,15
21:17,20,21 22:12,13,14,14,22
23:10,11,12,19 27:2 28:22 30:19
31:19 35:2,13,20,21,22 36:1
39:2 40:15,16 46:11,18 47:13
49:23 50:8 51:23 52:7 53:9
54:18,19 55:14 56:4,25 57:1,25
62:23,23,24,25 65:2 66:13,22
67:3,4
I'd 44:16 63:6
I'll 6:4,7 12:15 19:22 22:16 24:3
31:10 37:20 43:21 68:21

I'm 5:12 6:17 10:1 11:10 12:18
13:4 17:11,11,12,20 20:12,13
24:4 30:21 37:19 39:3 46:5
47:18 49:18 53:14,14 54:10 64:2
68:22
I've 46:25 47:1 68:24
i.e 4:12

## J

Jill 5:14
Joe 67:15
Joel 2:7 5:22
John 6:21 9:18 15:17 17:1,6 18:1,1
18:11 21:24,24 22:4,8 32:9,17
32:21,25 33:8,10 34:20,24 67:14
joint 25:25
jointly 48:17
Jordan 26:2 37:2 48:5
Jr 2:16
judge 1:12 19:24 26:1 37:2 48:5
51:10 68:8
judged 28:12
judgment 46:13
jump 50:10,11
juncture 53:24

## K

k 1:15 9:7
Kathrein 3:15 25:24 31:20
keep 17:2 36:23
keeping 67:2
keeps 48:4 61:15 67:2
Kertesz 3:20 23:5
keywords 12:21
kids 15:10
kind 7:8,9 10:6 16:5 20:4 21:8
22:13 34:22 40:3,11 42:6
kinds 9:8
kiting 48:7
knew 15:13,15 16:3,6,7,9 40:21,23
40:24
know 5:14 7:17,19 12:12,17 16:2,9
17:19 20:12,25 22:2 24:25 26:23
27:13 29:12,24 31:5,11,19 32:14
33:5 34:13,15,15 35:3 39:21
42:9,19 44:6 46:18 52:4 60:1
63:3,3,4,4,7 66:14,14
knowing 9:13 14:18 16:1 35:4
knowingly 14:16
knowledge 13:21 14:2,4,14 16:10
16:11,12,18,19 18:5,6,7,16
23:20 33:16 34:12,25 44:14,20
51:11
known 11:24 27:22
knows 45:21

## L

la 2:7,8 5:21,21,22 6:5,10 45:6,8
47:15,17 51:24 52:22 53:4,17,21
67:25 68:3 69:2
Laborers 58:9
language 57:5
Lanham 6:23 7:9 10:4 61:21
large 27:4,25
launch 15:6
law 5:9 6:22 7:3,22 11:4 14:21 20:7
29:6 43:11 47:17,18,19 49:3
51:23 54:5 55:25 56:10,11 57:6
57:12,14 58:2,4,13 59:5 61:18
62:14 68:23
lawsuit 52:8
lawyers 50:21 69:3
leads 67:5
learn 24:9
learned 20:6
leave 26:14 52:19 53:16,19
left 5:22 35:12
legal 6:6 29:16 53:11 55:21 56:9
57:9 65:7
legislation 58:6
legislative 21:15
legitimate 24:21 25:4,5,9 29:17,21
34:5,10 35:20 50:9
legitimately 35:21
length 58:16
letter 42:15 47:1 61:12

letters 42:19
let's 7:20 9:15 14:25 15:1 17:14
18:25 58:2 64:18
level 7:20 14:4 16:11 43:8,10,13
Lewis 1:23 2:3 5:10 24:5
Leyton 2:8 5:22
liability 13:20,25 27:8 32:14 35:6,7
35:8 42:12 43:6,12,14
liable 11:3 13:14,18 19:8 26:12,13
30:6 42:17 43:1 48:1 58:22
license 29:25 41:17
licensed 20:18 41:13
licensee 19:15,16,17 21:11
Lieb 2:12 5:24
lied 51:6,16
lies 51:1
life 27:17
light 47:18
likelihood 53:16
limited 39:4 37:12,13 46:24
limited 19:14 31:16 46:22
Line 3:7,7
lines 15:8
link 12:15 27:5 28:2
links 17:22
litany 44:18
literally 49:17 50:11
litigating 56:1
litigation 55:4 56:23
little 17:22 68:23
LLC 1:8,23 2:3
LLP 2:12
Local 58:9
located 63:12 65:23
location 25:12 28:19 66:7
Locations 3:18 31:20
locked 32:18
Lockheed 3:21 14:8 15:22 27:20
27:20 28:4 42:13
logical 51:17
logs 49:17
Loh 2:12 5:24
long 20:12 48:5 59:1,3
look 8:14,25 13:16 14:1 22:7 26:18
28:14 31:1,2 33:11,14,18 39:7
42:2,14 44:10 45:25 46:1 53:14
57:15 58:18 62:25 68:23
looked 11:7 21:19 66:7
looking 9:4,20 10:15 19:18 23:4
27:10,11 36:24 60:5 63:24
lookout 59:24
looks 20:1,1
Los 2:13 5:24 8:16
lot 6:15 11:1,5 14:10,12 25:5,6
26:7 28:25 32:1,4,2 42:7 43:8

## M

M 1:12 2:7
Magolnick 2:7,8 5:22,23
magolnick@dmmllaw.com 2:10
mailing 18:7 60:11
maintain 18:7 60:11
maintained 59:15
maintaining 37:25 59:2,5
maintenance 59:1,12
major 6:17
majority 45:18
making 56:5 58:12 61:16 65:7
malice 36:18
manipulating 48:11
March 63:17 64:6
mark 7:8,10 10:11 13:23 15:17
21:12 22:3,5,10 28:14 38:1,2
64:14
Marked 3:6
market 2:3 64:14,24,25
Marko 2:8 5:22
marks 59:17
massive 62:23
material 26:3
McDONALD 1:22 5:9 24:1,4,5 30:8
33:18 37:17 38:10 43:24,25 47:2
47:20 48:4 49:4 50:18
mean 17:14 19:20 29:11 33:6
35:14 45:17 47:13 50:16,24 51:1
51:2,3,8 52:14 53:17

means 7:4 19:2,25 20:2,3,23 21:5
28:11 59:1
meant 21:17 57:3
measure 65:19
Media 67:13
medical 23:12
MEDINA 2:15 69:14
meet 7:24 10:2 11:21 13:2,20 18:6
18:9,10 19:17 44:19 46:14
meets 13:7 44:14
member 54:10,11
memorandum 34:23
mention 36:14 58:23
mentioned 63:9
merchandise 42:20,21
merely 7:7 15:18
merges 60:23
merit 55:11
met 17:2 21:12,13 23:21 46:23
Miami 1:2,6,21 2:9,17,18 5:13,23
54:5 69:15,16
Michigan 19:24
microscopically 36:24
Middle 23:3
Miguel 2:7 5:21
Milbrath 1:16,20 5:5
million 45:19 49:19,20
mind 28:21
minimum 30:14
minute 43:20
minutes 38:12
mischaracterizations 24:14
misrepresent 65:4
missing 16:15 61:12
misspellings 64:21 65:3
mistaken 36:2
mistype 63:25
misuse 60:2 61:8 65:2,8
misuses 65:17
misusing 65:5
monetization 11:24,24 12:9,10,10
20:9 23:18 27:14,21 28:17 35:25
37:5 59:17 61:3 63:19 64:8,9,21
65:8 66:1,5 67:18
monetize 17:11,12,13,17
monetized 12:19 20:18,25 26:22
monetizer 39:14 41:3
monetizers 28:15
monetizes 18:3
monetizing 13:8 17:7 18:2 48:21
money 66:15,20,23 67:2,4
Moniker 1:8 5:2 6:14,19 8:6,21
9:22,23 10:10,22 11:17 13:14,18
14:5,16 15:13,15 16:3 17:1,5,6
23:7 25:14,15,16 26:11 28:17,18
29:10 33:20,20 34:24 35:23,24
39:5,10,17,22 41:15 44:3 45:16
45:19,20,21 46:14,16,24 48:16
48:17,19,23 49:8,10,10,13,25
50:23 51:14,15,16,18 59:14
60:24 61:1 62:6 63:12,13,14,17
64:6,12 65:6,6 66:15,15,19,25
67:2,6,7,16
Monikers 62:18
Moniker's 24:19 25:4 48:24 49:16
49:18 50:24
morning 5:1,4,21 6:11,12,13 24:4
45:6,7 54:2
Morrow's 61:8
motion 1:11 6:1,3,7,7 10:17 16:23
23:16 24:3 30:13 31:3 43:21
44:12,18 45:9,15,22,23,24 46:7
46:13,18,20,21 47:13 48:1,6,15
50:3 51:20 52:1,13,20,20 53:12
53:13,15,17 54:12,14,14,16,17
54:18 55:3,3,6,9,11,13 56:4,4
60:19,20 68:15,16,22
motions 5:25 6:1 7:18 47:1 54:22
55:1
Motors 38:20,22
move 43:21 45:13 61:13
moved 20:8
movies 65:1
moving 61:15
MPS 39:22 48:16,18,20,23,25 61:1
MTS 39:5,10
multiple 19:5 48:8
municipal 34:18

muster 54:20 55:9

**N**

name 5:4 8:3 10:14 11:25 12:12,19
13:8,10 14:20,22 15:19 16:13
17:4,8,9,10 18:3,22 19:2,9,11,20
19:21 20:2,5,8,19,24,25 21:6
26:5,25 27:2,8,21 28:2 31:24
34:4,6 39:20,23 40:4,7,11,15,22
40:24 41:13 42:1,14 49:23 50:16
51:2 59:1,2,12 61:13 63:15 65:5
named 32:17 48:19 61:1 62:3
names 5:3 13:22 14:17,19 15:14
15:16 16:1,6,21 20:3 21:2 26:8
26:23 27:4 28:1 32:5 33:22,24
34:16 36:10 37:25 40:10 45:19
46:10 49:5,14,20 59:14 63:13,18
63:19 64:7,8
narrow 14:1 21:15 25:13 43:15
nationally 55:23
nature 23:1 68:14
NBC 38:22
necessarily 9:13 12:10,22
necessary 32:8
need 16:2,2 24:8 40:12 52:5 57:5
needed 14:2,4 27:23 47:3
needs 26:5,10 31:25 48:14
nefarious 17:22
negative 46:8
neither 35:1 41:4 58:17
Network 29:14,17
Net41 67:13
never 10:21 24:18 34:9 40:23
46:14
Nevis 3:17 30:12 34:14 44:11
new 21:16 43:17 57:4 58:3,5
news 50:13
niceties 60:12
NOCIs 42:19
noncommercial 24:22
nonfrivolous 56:11
normally 45:13
north 2:17 27:12 69:15
Northern 25:23 37:4
note 41:9
noted 9:9
notes 52:22 53:4
notice 46:25 47:11 52:23 53:1,5
68:5
notify 46:2,2
notion 23:15
notwithstanding 30:5 42:25
NOVEMBER 1:7
no-gooders 16:9 21:25
NSI 42:13,14,16
number 13:20 31:13 41:10 44:5,13
numbers 8:18 27:4
N.W 1:24

**O**

O 2:7,8 5:21,22,22 6:5,10 45:6,8
47:15,17 51:24 52:22 53:4,17,21
67:25 68:3 69:2
objective 57:15
objectively 57:16
obligation 56:5,9,17,19
obligations 65:19
observations 68:14
obviously 35:3,3 67:3
offending 65:17 68:6
offenses 60:8
offering 8:23 10:8,12 41:19 42:20
office 5:14 28:15
Official 2:16 69:15
Oh 5:18 8:15 33:18 49:21
okay 8:1,9 12:3 50:23 53:21
old 66:14
Omgi 67:14
once 9:5 11:16 62:25
ones 34:8
online 1:8 5:2 25:16 28:17 33:20
35:24 63:24
open 55:14
operating 28:10
operative 42:23
opinion 30:11,16
opposed 23:15

opposing 20:12 24:7 28:2 38:16
40:4
opposition 16:23 18:13 22:11
23:14 30:13
optioned 20:18
oral 1:11 58:15 63:9 69:6
Orange 1:17
order 31:3 42:4,5
ordered 62:2 63:17
orders 64:5
organized 62:14
origin 6:25 10:6 25:10
original 16:24 25:6 30:24,25 41:13
Orlando 1:17 5:6
Oron 67:14
ostensible 33:13
ostensibly 63:12 65:23
ought 55:4,8,11
outrageous 37:9
outset 7:17 26:17
outside 35:16,22 51:21
overrule 56:12
Oversee 20:18 28:17 39:6,9,10,13
39:22 41:2,6 48:16,17,21 61:2,5
65:8
Oversees 28:14
oversee.net 25:16 36:1
overt 60:8
owned 8:15 11:25 45:20
owner 17:8 20:11 31:24 33:3 34:8
35:1 41:12 65:7,13 67:3,5
owners 29:4 42:11 47:22
ownership 20:10 25:17 30:9,20,25
38:18 39:8,25 41:16 48:2 61:7
67:6
owning 45:17
owns 8:14 9:20 13:10 48:17

**P**

PA 2:4
page 3:2,7,7,11 4:7 12:22 40:5
44:22 60:21,22 63:11 64:4
pages 15:16 44:17
paging 37:19
paid 64:25
painful 54:7,8
papers 6:16 47:21
paragraph 14:13 20:17 33:19 36:9
37:23 63:11,14,16 64:4 65:22
Paragraphs 64:13
parent 39:6
parities 65:1
Parsons 3:11 15:23 27:20
part 7:18 8:11 9:16 12:9 24:13
25:16,21 30:8 40:11 41:24 49:16
52:14
particular 7:2 10:1 11:4,6,7 13:22
16:15 21:7 22:11 33:21 36:25
41:11,15 65:24
particularly 43:17 54:7
parties 53:5 55:19
partner 30:20 31:10
partners 55:2
party 7:12 12:2 46:2 53:1 68:5,6
pass 15:4 54:20
passed 27:25 58:7
passes 55:8
passing 15:18
Patent 28:14
patience 68:1
pavement 30:16
pay 48:10
payment 43:5
peculiarly 32:11
pending 52:20
people 8:3 9:3,6,19 12:6,20 16:9
18:4 24:24 27:25 28:19 42:23
43:3 49:11 50:13,15,17 51:16
perfect 3:22 43:2 44:21 63:5
perfectly 40:16 63:1
perform 38:25
performs 19:24
period 42:23 66:1
permissible 37:13
permission 63:6
permit 37:18 38:11
perpetrate 62:16

persecuted 24:25
person 8:14 13:8,11 18:3 20:8,10
39:15,19,25 40:21 48:11
persons 66:8
pervasive 29:7
ph 33:8
Philadelphia 2:4 5:10,12 54:3,4
phony 66:17
phrase 19:25
physical 10:18
pick 9:6,7
pieced 31:23
piercing 60:11
place 59:16
placed 67:16
placement 65:17
plaintiff 1:5,14 7:4,21 11:14 24:14
24:16,17,20 25:7 26:5,6 27:13
29:9,9 32:15,18 34:22 35:6
36:19,20 38:3 42:7 52:7,9 53:20
53:23
plaintiffs 36:17 52:4
plaintiff's 31:22 37:11
played 39:20,22 60:25
playground 36:12
pleaded 16:20 35:2,8 36:7 38:3
67:8
pleading 14:14 30:3 52:2 65:18
68:19
pleadings 30:23 36:19 37:10,11
51:21
pleads 66:10
please 5:1,3 12:7 42:2 43:23
point 7:4 10:24,25 11:19 19:23
21:23 35:15 37:20 38:16 40:3,14
44:8 46:8 57:20 58:8 68:1
pointed 50:3
pointing 48:4
points 6:17 38:15 45:1
policies 64:10
policing 14:6
policy 43:10
political 24:23
populate 15:3
populating 12:1
pop-ups 12:4,9,22
pornographic 65:1
portfolios 28:1
possible 64:20
post-Twombly 19:18
practice 29:8
precedent 58:10
precisely 42:10 62:21 64:11
prejudice 68:17,21
preliminary 48:6
premature 47:10,13 54:18
prepared 58:1
present 38:4 41:14 51:21 53:1
62:1
presentation 56:5
presented 6:2 50:3 54:15 55:17,18
55:20 62:24 69:7
presenting 11:2 14:21 19:9 45:15
presents 8:8
pressing 12:5
pretty 7:1
prevailed 34:8
prevalence 26:19
pre-filing 57:5
Price 63:21
prima 10:2 11:22
primarily 35:9
principals 62:17
principle 38:21
privacy 6:20,21,23 7:6,11 8:21,23
9:3,15,19,22,23 10:10,22 23:17
24:16,19,21 25:3,4,9,11,14,15
26:11 28:18 29:10,13,17,20,24
30:3,6,10,17,17 35:20,20,24
39:1,6 41:11,12,15,19 44:6,10
48:24 59:15,25 61:2 65:6 67:18
privilege 57:24
probably 31:19
problem 32:7 40:6 42:9 50:24
61:15
proceeding 61:10
proceedings 69:12
process 8:11 9:16 10:18

processing 44:22
product 57:24
products 64:15,24
profit 18:23 22:4 38:2 59:11,16
prohibit 58:25
promote 54:25
prompted 58:5
promptly 46:2 68:6
prong 18:14,22,25 19:19 21:12,13
23:21
prongs 18:20
pronounce 65:25
proof 31:23
proper 55:15
property 20:4,9 21:12 60:3 61:8
64:12
proposition 38:19 62:13
propounded 52:6
prosecute 55:8
protectable 15:11
protection 18:20 24:22 36:3 58:20
prove 24:17,18 25:8,8 26:5 29:11
31:1,7,17 46:8,9 49:13 52:10
62:14 65:12
proven 46:7
provide 8:11,25 21:24 41:17
provided 20:11 23:24 64:22 66:6
67:17,18,18
provider 43:12 61:1,2
providers 43:9
provides 35:19
providing 6:21 7:11 13:17 35:19
39:5,5 41:10,11,25 49:11 65:8
66:20
province 66:2
proving 29:2
provision 6:23,24
provisions 58:17
proxy 7:7
public 25:12
publish 9:17
publishing 9:1
pull 18:4
pulled 16:25
purchase 20:5
purchased 42:23
purchasing 12:21
pure 20:25
purpose 28:21 33:7 63:22
purposes 15:20 26:7 31:15,21
59:9 65:14
pursuing 40:19 57:9
put 7:13 9:2 10:13 15:7 17:17,18
27:9 28:24 52:23 53:1,5,9 60:15
putting 46:25
P.A 1:16,20 2:8

**Q**

qualified 58:19
qualifiers 50:7,10
qualify 61:20
question 8:13 9:20 11:7 12:3 13:1
25:3,13 26:12 28:17 34:10,11
44:7 53:8 56:25 57:1 60:10 68:3
questions 38:8 47:2
quickly 44:1 53:11
quite 52:14
quote 42:9
quoted 49:4

**R**

R 69:10
raging 29:21
raised 29:12,13 68:15
rampant 26:19
Rapids 5:17
rare 34:3
reach 23:9 66:2
reached 34:9,9 37:3
read 34:13 45:15 47:24 48:7 68:4
reading 52:22
ready 46:4 54:19
real 28:19 31:24 32:24 50:17 67:1
reality 36:5 60:24
realize 14:10 21:14 22:24
really 18:14 26:16 28:20 29:1,3
31:11 33:12 36:5,15 46:7 51:13

64:16 67:25
realm 43:17,18
reason 7:18 9:5 14:24 38:5,6 43:18
    47:23 49:2,12 51:4,12 52:14
    65:2,3
reasonable 57:12 58:14
reasonableness 57:7
reasons 13:20 18:25 43:13 54:23
rebuttal 38:12
recall 39:4
recap 21:8
received 3:6 42:22
recess 43:20,22
recitation 19:16
recited 67:12
recognize 22:12
recognized 15:20 44:14
reconcilable 21:6
record 5:3 32:22 33:1
recording 34:23
recount 37:20
red 24:10
reduced 54:8
reference 37:18
referred 19:10
reflection 69:4
regard 60:25
regarding 35:6 68:14
regardless 41:24
register 8:6 14:19,25 16:1 19:5
    27:4 33:21 34:16 48:22,23 50:15
registered 10:17 26:20 37:22,22
    37:24 42:14 45:19 48:19 63:13
    63:18 64:7,19 65:3
registering 15:14 19:7,11 40:10,15
    59:2,5
registers 14:17 49:8,25
registrant 7:7,13 8:7,24 10:13 11:2
    12:1 13:10,17 17:3,6,10,11,25
    19:3,8,15 21:9 25:25 31:21 34:5
    34:6 39:14,16,19,25 41:2,6,12
    41:13,19,22 46:9,15 47:7 48:3
    50:20,25 61:24 62:20 65:12,14
registrants 6:21 8:2 13:22 16:8
    17:1 33:13 39:18 46:17 47:4
    51:15 62:3,4,16
registrar 8:5,6,20,22 11:1,5,9,18
    11:20 14:6 17:6 19:9 28:23,24
    29:14 35:16,19 39:5 41:10,18,24
    41:25 44:2,5,8 45:14 47:24,25
    47:25 58:21,22 61:1,24 62:6,10
    62:19
registrars 8:22 48:8,8
registration 11:2 14:22 15:19,25
    18:21 19:1,2,8,9 21:8 28:14,18
    35:4,17,22 39:1 48:10 58:25
    59:11 62:1 65:6
registrations 14:6 26:22 62:2
registry 8:8 11:3 19:10
reiterating 6:16
rejected 14:7,7 27:17 28:6
related 17:19 59:19 60:7
relationship 32:8,16 63:23
release 33:23
relevant 33:7 44:19 66:1
relief 52:18 58:24
relies 6:2
religious 24:23
rely 11:17 21:5 22:13
remarks 68:13
remedy 35:1
rent 12:16
rentals 12:16,21
reply 29:13 45:10 60:17,21
REPORTED 2:14
Reporter 2:16 69:15
Reporter's 3:3
reports 55:18
represent 56:20
represented 66:25 67:5
representing 24:5
reputable 29:14
request 47:3
require 10:6 52:9 57:10
required 21:19 23:1 33:23 34:22
requires 22:23 57:11
requisite 10:2 14:2 16:11
research 55:22

residential 34:18
resolve 11:16
resolved 68:19
respect 6:19 21:21 22:3 23:18
    24:24 29:22 30:3 33:17
respects 26:3
response 24:2 35:14 38:16 44:11
    44:17 49:7 50:3 55:3,15
responsible 13:9 28:20 31:14
rest 22:21 28:24
rests 68:8
result 29:5,6
results 30:10
resurrect 52:13
retaliatory 55:15
return 47:5
reveal 56:21,24
revenues 63:15
reverted 40:9
rid 12:7
right 6:9,23 6:9 7:24 10:23 12:24
    13:13 25:12 29:22 30:8 34:4,5
    47:16 51:24 58:8 60:14
rights 60:3
risk 27:5 57:11
risking 26:23
road 55:12
Robert 1:19 5:13
role 17:7 30:20,22 60:25 62:10
Ron 67:14
rthornburg@addmg.com 1:21
rubber 30:16
Rubens 3:18 31:20
rule 1:11 5:25 6:2 10:16 29:6 30:21
    35:14 43:21 45:25 47:14 52:19
    52:20 53:12,20,23 54:11,12,19
    54:20,22,22 55:1,3,3,6,8,9,12
    56:3,4,4 57:4,7,9,11,15,18 60:19
    60:20 61:5 63:2,5 65:14,14 66:5
    68:4
rules 54:15
ruling 53:14
run 37:16

                    S

s 2:7 21:5
sale 10:8 20:5,22,22 21:4 41:4,6
sales 10:8
sanction 49:3 52:7
sanctionable 31:9
sanctioned 47:12,19 58:12
sanctions 1:11 6:8 45:9,23,24
    46:20 47:1,10 50:4 51:23 53:12
    57:11 58:9 68:5,7,17
satisfactory 57:17
satisfied 57:13 65:18
Saturn 38:21
save 48:9
saying 7:12 9:23,25 10:1,13 24:14
    29:1 30:4 32:15 33:1 40:10 42:3
    42:6,7,15,23 43:14 49:21 50:21
    50:21 60:12 66:14
says 6:22 8:8 11:4 20:18 33:2
    37:24 38:21 40:5 46:16 47:20
    49:18 53:4 58:9,21 66:19 68:5
scheme 27:14 37:5 59:17 65:5
schemes 66:13
Schnader 1:23 2:2 5:10,11 24:5
    54:10
school 20:7 54:5
scienter 49:15
scintilla 34:19
scope 21:14 35:17
Scott 31:2
screen 12:11
se 29:10
search 33:9,12 44:23
Sears 63:21
season 55:15
seated 5:1 43:23
second 10:25 16:17 40:3 45:24
    54:17 62:7
secondary 13:25 42:12 43:12,14
securities 23:11
see 5:14 9:4 12:14,14,20 15:22,23
    28:21,22 30:11 33:19 47:3 68:14
seeing 9:21 52:19

seeking 22:17 40:21 42:12 68:5
sees 37:14
Segal 12:3 2:5 5:10 24:5
selling 20:24 21:2
senior 54:10,11
sent 42:15
separate 8:20 48:22,25 56:13,15
Series 54:7
seriously 18:13 54:13
serve 53:6
served 47:6
service 7:6 9:3 10:1,18 13:12
    20:11 21:1 23:18 24:19,21 25:4
    25:9 28:14 29:17,21,24 30:10,17
    30:17 35:20,20 38:1 41:11,12,17
    43:9,12 44:6,10 49:11,13 59:25
    64:21,22 66:20
services 1:8 5:2 6:20,21,23 7:10
    7:11,12 8:21,23,23 9:15,19,22
    11:9 14:15,17 15:4,14 16:18,19
    15:4 16:14,21:24 23:17 24:16
    25:3,10,11,14,15,16 26:11 28:18
    28:18 29:10,13 30:3,5,6 35:4,5
    35:24 39:1,5,6 41:15,19,25
    48:21,22,24 49:1 61:2,3 64:10
    64:15
set 7:18 13:3 17:15 46:4 52:14
setting 45:8 61:9,16
seven 63:20
severe 29:6
sham 26:20 61:9,9 62:16,21 65:11
shams 62:4
shared 63:19 64:8
shares 63:14
shell 16:8 26:20
shelters 25:1
She's 5:16
short 24:7 43:22 62:8
shouldn't 13:12 15:11
show 26:7 33:11 34:3 35:15 48:13
    48:18 52:5 61:12 63:7
showing 18:10 46:14 59:10
shown 65:15
shows 30:15,16 47:19
shift 62:8
side 5:13 49:21
SIDEBAR 4:6
sides 49:24
sign 8:25 50:15
significant 43:18
similar 10:11 15:17 32:5
simple 46:15
simply 11:8 22:16 36:8 44:16
    49:15 52:12
single 25:21
site 15:9 49:18 63:21,21 64:1
    66:19 67:7
sites 63:20,20,21,23 66:17
sits 46:16 49:16
sitting 49:21
situation 21:3,4
size 17:20
skunkworks.com 42:14
Sky 32:25 33:4,22 50:20 51:7,8
Smith 2:2 5:11,12 30:21 53:25
    54:1,4,8 59:21 60:9,14,20
smoking 34:23
sold 20:19 25:10
solid 3:23 25:22 28:8,8,24 35:11
    35:18 41:8,19 44:5
Solutions 29:14,17
somebody 8:14 10:14 13:8 17:21
    21:2 39:20 49:20 58:22 59:23
    63:24 64:3 66:22 67:4
son 54:8
Sony 3:24 13:24 43:15
soon 52:23
sorry 5:12
sort 10:21 57:24 67:11
sounds 49:21
source 25:10 66:4
South 1:17
SOUTHERN 1:1
Spammers 9:7
spamming 9:7
speaker 4:11
special 27:23

seeking 22:17 40:21 42:12 68:5
specific 14:4 16:12 18:16 21:3,10
    21:20 22:2,9,14 32:15 35:18
    38:8 42:1
specifically 19:14 20:22 21:17
speech 15:12 40:4
spent 54:5
split 66:22
splitting 6:6 67:4
sponsor 61:3
spouses 25:2
stand 7:13
standard 56:14,15 57:6
standards 56:7,14
stands 59:24 62:13
start 9:7 24:12 38:17 58:2
started 43:14
starts 36:15
state 5:3 7:4,9 22:21 37:16 50:11
    52:18 53:10
stated 13:25 44:15 56:22 61:14
statements 29:23 30:23
States 1:1,12 2:16,17 69:15
stating 52:17
statute 6:22 19:14 23:9 58:17,24
statutory 19:25 58:4
Ste 1:17,20,24 2:3,12,17
stead 7:13
Stein 31:2
stems 51:13
step 8:1 14:9 18:9
sticking 65:21
sticks 20:6,7
stock 23:11
stop 42:22 61:11
story 44:24
straight 6:25 36:24
Street 1:24 2:3
stresses 57:5
structure 60:12
stuff 33:15 69:5
stumbles 66:17
subjective 57:19
sublime 32:14
submit 9:16 53:3
submitted 32:20 56:8,9
subsequently 16:25
subsidiaries 38:20
substance 32:23
substantive 60:8
such-and-such 8:16
sued 9:2 62:6
sufficiency 52:2
sufficient 13:21 14:19,22 15:14,20
    15:25 16:2,10 22:1 23:20 38:18
    39:8 40:25 57:21,22 59:7 65:15
suggestion 31:7 55:6
Suite 69:15
sum 32:22
summary 46:13
supplied 66:4
supply 35:4
support 7:22 39:7 56:18,24 57:2
    60:22 62:14
supports 42:3
suppose 17:2
supposed 33:12 52:23
supposedly 63:18
Supreme 13:25 19:18
sure 39:3
surgically 25:20
surname 15:7
surrebuttal 43:21
survive 31:3 48:1
survives 52:9
suspicion 51:14
swarm 29:3
swatting 29:5
sweeping 31:17
swiping 29:4
switched 64:3
switching 48:24
system 18:4
S.W 2:9

                    T

T 69:10,10
table 3:1 52:12

**tabled** 55:6
**take** 6:15 8:1 14:9 15:3,6,7 18:9
  20:10 40:4,7 41:16 43:20 54:13
  63:8 68:20,22
**takes** 7:1 8:7 21:3 46:20 59:16
**talk** 22:20 24:12 30:19,21 31:10
  57:22
**talked** 17:16 64:17
**talking** 12:8 14:10 19:8 26:8 29:25
**talks** 19:7 20:14 29:16 33:8 50:19
**task** 11:4
**tax** 68:1
**team** 65:13
**teamed** 61:7
**tears** 54:9
**technical** 69:5
**technology** 58:5
**telephone** 4:10 8:18
**telescopically** 36:25
**tell** 7:23 8:24 52:5 68:17
**telling** 18:11 36:21 42:20 49:10
**tells** 63:2
**terms** 25:14 28:23 29:1 30:17 35:2
  61:18
**terrible** 15:10
**test** 13:7,20 17:3 44:14,20 57:14
  57:19,19
**tests** 52:1
**thank** 6:10 23:24 24:1 38:9,10,14
  43:19,25 45:2,5 67:22,23 68:12
  69:7,8
**that's** 12:7,25 14:11,18,19 15:2
  16:15,15 18:1,12,18,22 19:3,3
  19:11 20:11 22:1,10 25:13,22,23
  26:9,9 27:6,7,10 28:3,16 29:25
  30:8,18,18,18 34:1 35:23,24,25
  36:1,1 37:11 39:6,21 40:1,1
  41:21 42:9 43:11 44:25 45:21,22
  46:18 49:18,19 50:23,24 54:22
  55:4 57:13,17 58:3 59:24 60:14
  62:12 64:22 67:20 69:6
**theme** 42:7
**theories** 57:9
**theory** 9:24 10:4
**thereunder** 6:24
**there's** 7:3 8:13 10:25 11:5,11 13:4
  13:13 14:3,20 16:20 19:13,21
  20:22,24 21:1,3,4,8,9,10,11 22:8
  22:10 23:6,14 24:7,9 25:6,19
  26:24 28:3,12,13,16,25 32:18,24
  33:1 35:16 36:8 37:8 38:21
  41:21 43:7 44:8 49:20 51:9 55:2
  55:12 56:14,15 57:14 58:8,10,23
  59:15 66:14
**thesis** 19:25
**they're** 8:24 10:10,11 11:23 15:10
  16:1 21:1 25:17 27:5,6 28:11,16
  29:2,4 30:6,7,8,9 32:15 33:6,13
  34:21 36:21,23,24,25 37:10 39:2
  40:10 41:14 46:15 59:3,4,8,8
  60:13 61:10
**they've** 19:1 24:8 32:17,20,22 50:3
  55:10,10 66:22 67:17,18
**thing** 9:10 10:7 11:23 12:4 14:20
  26:10,25 35:25 42:13 45:13 55:7
  57:24 63:1 66:11
**things** 7:19 14:5 17:16 19:17
  21:25 23:12,18 24:14 25:7 41:9
  42:8,9,10 43:8 44:13
**think** 6:1,18 7:1,6,19 10:16,25 11:5
  11:11,18 13:3,6 14:7,15 15:10
  16:19 18:24 19:3 20:3 21:5
  22:11,19,24 23:4,14,16 24:8
  26:15 35:9 36:8,13 39:4 40:16
  40:25 42:3,8 45:9 46:5 47:17,19
  48:14 49:2 52:7 53:9,11 54:14
  54:16 55:4,7,7,10,14 58:8 59:22
  59:22 61:6 65:14 66:13 68:13
**thinking** 64:2
**third** 7:12 11:10,19 12:2
**Thornburg** 1:19 5:13,19
**thought** 42:24 60:15
**thread** 42:6
**three** 6:17 13:4,5 22:19 28:20
  39:15 44:13 48:22,25 55:19,22
  60:7,13,14,23 61:7,16 65:13
**tied** 48:25 49:24
**Tiffany** 3:25 42:18,18,21,24 44:13

**time** 4:9 6:15 12:6 15:19 18:4 27:4
  27:21 29:12 33:22,22,22 38:9
  42:11,23 43:7 52:1,21 54:21
  66:16 68:7,17,18
**tips** 15:7
**today** 14:11 27:16 30:19 53:14
  66:12 69:7
**today's** 68:20
**told** 52:4
**top** 60:22
**topic** 47:8,24
**tossed** 36:11
**total** 23:22
**totally** 37:9
**touch** 41:1
**track** 67:13,19
**tracked** 24:25 50:6 66:23
**trademark** 6:25 7:8 10:3,5,7,20,21
  11:22 14:1 15:2,2,20 21:16
  23:11 25:15 26:12,13,23 27:9
  28:15 29:4 33:3 34:3,8 35:1
  36:25 37:1 42:11,16 43:14 62:16
**trademarks** 36:23 65:9,17 67:17
**traditional** 21:16
**traffic** 9:8 19:20 20:2,3,23 21:6
**trafficker** 41:3
**trafficking** 18:21 19:1,19,21 20:15
  21:11 36:8 37:24 41:4 51:3
  61:20
**traffics** 20:1
**transaction** 22:23,23 23:6
**Transamerica** 1:4 5:2,16 10:11,12
  13:23 15:17,18 18:12 22:3,5,9
  23:2,7 24:6 27:1 34:25 38:1 40:6
  46:14,22,25 47:10 51:14 57:1
  60:23 61:12 64:7,10,11,14,14,16
  64:23 65:17 66:18,21 67:16
**Transamerica's** 49:25 59:17 60:3
  61:8
**transamerica.com** 13:11
**TRANSCRIPT** 1:11
**transcription** 69:12
**transfer** 20:4,9 21:12 63:17
**transferred** 62:2
**transitory** 62:18
**transparent** 63:5
**trapping** 59:23
**treats** 60:24
**trial** 26:7 29:11 46:12 68:8
**trick** 36:19
**tried** 43:4 66:23 67:13
**trio** 27:20
**true** 28:3 34:1 37:2 46:18
**truly** 23:14 30:13
**try** 6:17 8:5 14:25 15:4 17:23 22:12
  47:6 61:8
**trying** 7:24 8:24 16:1 36:12,19,20
  51:5
**turn** 61:13
**turned** 42:16
**turning** 32:13
**two** 5:25 6:1 13:20 18:20 21:6
  31:12,12,13 32:20 34:7 38:6,6
  41:9 44:5,15 46:25 56:13
  58:17 61:22 63:21
**Twombly** 4:1
**two-step** 57:14
**type** 10:4,7 12:13 21:19,20 23:9
  41:11
**types** 13:4 19:17 23:12 42:10
**typically** 23:10
**T-shirts** 64:24

**U**

**UDRP** 22:7 33:25 34:2
**ultimate** 33:9
**ultimately** 33:12 39:19 46:7,11
  49:2
**unacceptable** 37:9
**unburdened** 46:23
**undermining** 29:6
**understand** 36:21 56:1 69:5
**understands** 55:25
**unduly** 57:23
**unfortunately** 19:10,21
**uniformly** 15:24 22:25

**United** 1:1,12 2:16,17 69:15
**Universal** 3:24 13:24
**University** 29:15 54:4
**unnecessary** 31:5 37:8,8
**unused** 28:1
**unusual** 52:17
**upset** 43:3
**usages** 24:22
**use** 7:7,10 10:7,19 13:14 15:8
  16:13 17:23 18:21 19:1,5,13,13
  21:9 22:4 23:17,19 27:17 28:3,4
  34:10 35:10,10 36:7 44:9 48:21
  48:23,24 49:5,7,12 50:16 59:21
  61:11 62:15 63:15 64:11
**user** 61:24 62:20
**uses** 18:3 24:21,23 25:9 30:6
  49:10 50:7,9 59:17
**usual** 45:14
**utilized** 15:16

**V**

**variety** 10:21
**varying** 56:7
**vast** 45:18
**vastly** 39:9
**veil** 33:23 60:11
**vendor** 25:11
**ventures** 34:17 50:7 63:10,11,23
  64:1,7,13 65:22,23 66:9 67:12
  67:19
**Verizon** 4:2 27:12 35:12 37:5 38:6
**versions** 64:25
**versus** 3:11,13,14,15,16,17,18,24
  3:25 5:2 13:14 15:23 19:23
  25:24 26:1 27:19,19 28:4 30:12
  31:20,20 34:14 35:12 39:14
  42:18 44:10,21 48:4 61:21 62:15
  64:5
**vetoed** 55:3
**vice-president** 5:15
**view** 35:8 46:20
**views** 24:25
**Virgin** 33:11
**Virtual** 32:25 33:3,22 50:20 51:7,8
**Virtually** 62:2
**Visa** 43:2 44:21
**vital** 40:1
**vocabulary** 26:15
**vs** 1:7
**Vulcan** 4:3 20:14,14,16 21:3 27:15
  28:7 35:11 37:5 38:4 39:9 41:1
  44:1 60:22 61:5,19
**Vulvan** 25:22

**W**

**Wagenaars** 67:14
**wails** 59:25
**walk** 57:10 63:7
**Walt** 15:5,8 17:23
**want** 5:7 6:15 8:3 9:13 11:11,15
  12:13,16 25:1 32:2 38:17 42:2
  52:13 63:24 68:3,4,18 69:3
**wanted** 8:4 9:11 12:14 38:15 44:25
  49:6 55:2
**wants** 27:4
**warfare** 32:2
**warranted** 56:10 58:10
**Washington** 1:24 5:12 35:13
**wasn't** 18:13 44:3 58:15
**watch** 15:11
**watching** 54:12
**wavers** 16:24
**way** 5:2,13 6:14 17:13,18,22,24
  18:10 21:17 25:19 32:18 35:18
  43:8 55:4 61:15 62:24 64:18
  65:3
**ways** 19:5
**wdelgado@willenken.com** 2:13
**web** 15:16 24:22 40:5
**website** 9:11 15:4,6 17:17 25:18
  27:1,3 28:3 40:5,8,13,17,19,22
  40:24 42:21 49:24 64:19 65:4,9
  65:18 67:3
**websites** 16:21 21:1 26:20 27:5
  59:16 64:14 65:16 66:25 67:17
**week** 12:16 54:6
**Wells** 63:20,24,25,25 64:3

**well-founded** 34:1,2
**well-grounded** 55:24
**well-known** 3:14 55:22
**went** 15:22 17:4 34:17 66:7
**weren't** 39:12
**Western** 35:13
**We'll** 52:5
**we're** 14:10 18:15 21:2,9 26:8
  29:25 30:18 37:11 42:3 46:4,16
  46:19 47:21 50:24 51:2,2 53:20
  55:24 58:1 66:19 67:20
**we've** 31:16 54:11 55:16,18 56:20
  65:21 66:3,5,23 67:11,12,13,15
  67:19
**what's** 12:15 15:9 23:13 26:18
  29:2 31:12,13,18 34:12,15 35:3
  36:5,21 40:8 64:22
**WHOIS** 7:14,16 8:13 9:21 10:14
**who's** 31:14 56:25
**Wil** 5:23
**wildelgado.net** 8:4,6,9,14,15
**Wilkie** 2:16
**Willenken** 2:12
**willful** 44:14,19
**William** 2:11 6:13 8:16
**Wilshire** 2:12
**Wilson** 2:12 5:24
**win** 56:25 57:1
**winning** 58:12
**wire** 34:23
**won't** 29:11 32:12,12
**word** 19:14 26:15 36:2 59:21
**words** 47:14 63:22
**work** 25:17 57:24 61:17
**worked** 66:13
**working** 30:7 46:17 59:19 60:13
  60:15 61:9
**works** 64:18 65:5
**world** 7:25 8:2 9:2,4,6,17 10:18
  15:8 17:23 49:16,17 54:7 62:18
  66:25
**worry** 18:14
**worse** 29:5 33:14
**worst** 24:13
**wouldn't** 9:12 13:19 37:2,4
**wrong** 36:1 40:18
**wrote** 42:18
**www.domainsponsor.com** 25:18
**W-h-o-i-s** 8:13

**X**

**X** 12:5
**Xiamen** 34:17

**Y**

**yeah** 31:1 35:23
**year** 20:7 28:9
**years** 38:6,6 54:5,24 55:16
**you'd** 54:21 60:7 64:23
**you'll** 36:16
**you're** 7:23 9:6,23,24 11:25 22:17
  30:4 34:4 51:5,25 52:2 60:12
**you've** 5:18 17:2 51:20 65:6

**Z**

**zeal** 24:7,8 37:13
**zealous** 24:9

**0**

**09-60973-CIV-Altonaga** 1:3

**1**

**1st** 15:12
**1,182** 42:18
**10** 3:22 43:2 44:17,21
**11** 1:11 6:1,2 10:17 30:21 35:14
  54:11,12,20,22,22 55:1,3,3,6,9
  55:12 56:3,4 57:9,11,15,18
  60:19,20,21 61:5 63:2,5 65:14
  66:6 68:4
**11th** 14:11 19:22 57:14 58:8
**11:18** 43:22
**1114** 1:20 58:19
**12** 63:20

**12(b)(6)** 42:4,5 52:9 55:9 56:3
   62:13 64:17 65:15
**12-2** 2:17 69:15
**125** 42:22
**126** 37:23
**13** 3:24
**14** 3:21 63:17
**1401** 1:17
**15** 3:11
**1600** 2:3
**19** 3:16,19 4:1
**19103** 2:4
**1997** 28:5

**2**

**2** 60:21
**2.5** 45:19 49:19,19
**20** 4:3 54:24 63:11
**20001** 1:24
**2004** 63:16
**2006** 35:13
**2007** 25:24
**2008** 63:17 64:6
**2009** 1:7 64:6
**202.419.4235** 1:24
**209** 20:17
**21** 68:10
**213.955.8032** 2:13
**215.751.2249** 2:4
**22** 64:4
**23** 3:12,20 65:22
**25** 3:15
**255** 1:17
**26** 3:14
**27** 4:2
**28** 3:23

**3**

**3rd** 2:9
**30** 3:17
**3001** 2:9
**305.285.2000** 2:9
**305.374.8303** 1:21
**305.523.5518** 2:18 69:16
**305.523.5519** 2:18 69:16
**31** 3:18
**3128** 2:18
**32801** 1:17
**33128** 69:16
**33131** 1:21
**33139** 2:9
**35** 3:13
**3600** 2:3
**3850** 2:12

**4**

**4** 63:16
**400** 2:17 69:15
**407.841.2330** 1:17
**42** 3:25
**43** 3:22
**47** 63:17

**5**

**550** 1:24
**56** 56:4
**59** 63:11

**6**

**6** 1:7
**6th** 15:24
**61** 64:4
**62** 63:16
**63** 64:13
**64** 64:13
**66** 63:14
**69** 3:3

**7**

**707** 2:12
**750** 1:24
**777** 1:20
**797** 44:22

**8**

**8** 44:11

**9**

**9** 44:17
**9th** 1:24 14:9 15:23 43:6
**90017** 2:13
**938** 58:9