UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-60973-CIV-ALTONAGA/Brown

TRANSAMERICA CORPORATION,

      Plaintiff,

vs.

MONIKER ONLINE SERVICES, LLC,
*et al.*,

      Defendants.

_____/

## DEFAULT JUDGMENT

**THIS CAUSE** came before the Court upon Plaintiff, Transamerica Corporation's ("Transamerica['s]") Motion for Default Judgment Against Jan Stroh and Supporting Memorandum of Law ("Motion") [D.E. 113], filed on March 11, 2010.  A Clerk's Default [D.E. 110] was entered against Defendant, Jan Stroh ("Stroh") on February 25, 2010, as Stroh failed to appear, answer, or otherwise plead to the First Amended Complaint ("Amended Complaint") [D.E. 23], despite having been served.  (*See* Transamerica's Mot. for Clerk's Default [D.E. 100], Ex. C).  The Court has carefully considered the Motion, the record and the applicable law.

## I. BACKGROUND

This case involves the registration and use of counterfeit internet domain names. Transamerica, a long-established holding company for a group of subsidiaries engaged in the sale of life insurance, investment planning, and retirement services, brought this action against Moniker Online Services, LLC; Oversee.Net; Moniker Privacy Services, LLC; and 15 John Doe Defendants. (*See* Am. Compl. ¶¶ 10–28).  Transamerica now seeks a default judgment against one of the John

Case No. 09-60973-CIV-ALTONAGA/Brown

Doe Defendants, Jan Stroh.  (*See* Mot. at 1).  Stroh is believed to be an anonymous individual or fictitious entity.  (*See id.* at 2-3).

Transamerica alleges Stroh willfully engaged in service mark counterfeiting (Count I); service mark infringement (Count III); cybersquatting (Count V); unfair competition, false representation and false designation of origin (Count VII); trademark dilution under federal law (Count VIII); common law unfair competition (Count IX); and trademark dilution under Florida law (Count X).  (*See* Am. Compl. ¶¶ 91–108, 120–22, 125–34, 141–54).  Transamerica alleges Stroh registered and used Internet domain names incorporating or imitating its federally registered "Transamerica" service mark and profited from its actions through a "domain name monetization" scheme.  (*See id.* ¶¶ 61–85).  Specifically, Stroh was the owner of ONTRANSAMERICALIFE INSURANCE.COM.  (*See id.* ¶ 20).

Transamerica now seeks the entry of a default judgment against Stroh and asks the Court to award injunctive relief, statutory damages, attorney's fees and costs.  In support of the Motion, Transamerica filed the affidavit of Bruce A. McDonald, Transamerica's counsel in this action, and exhibits documenting the registration and ownership of the infringing domain. (*See* Mot., Exs. A-B).

## II. DEFAULT JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint.  "'[A] defendant's default does not in itself warrant the court entering a default judgment.'"  *DirecTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  Granting a motion for default judgment

2

Case No. 09-60973-CIV-ALTONAGA/Brown

is within the trial court's discretion.  *See Nishimatsu*, 515 F.2d at 1206.  Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment entered.  *See id.*; *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default . . . .").

### III.  ANALYSIS OF LIABILITY

Transamerica seeks a default judgment on its claims that Stroh willfully engaged in service mark counterfeiting (Count I); service mark infringement (Count III); cybersquatting (Count V); unfair competition, false representation and false designation of origin (Count VII); trademark dilution under federal law (Count VIII); common law unfair competition (Count IX); and trademark dilution under Florida law (Count X).

In support of the following analysis, the Court finds that Transamerica has registered and owns the series of service marks at issue in this case; that its marks are valid and incontestable under section 15 of the Lanham Act, 15 U.S.C. § 1065; and that Transamerica has the exclusive right to use the service marks in connection with the various services it provides, as alleged in the Amended Complaint.  (*See* Am. Compl ¶¶ 33–43).  The Court further finds that Stroh used Transamerica's service marks on its website without Transamerica's consent.

### A.      Count I – Service Mark Counterfeiting

The elements of a service mark counterfeiting claim require plaintiff to show the defendant used a "counterfeit" of plaintiff's registered mark without consent, and the defendant's use of the counterfeit mark is likely to cause confusion.  *See* 15 U.S.C. § 1114(1).  Adding a generic or

3

Case No. 09-60973-CIV-ALTONAGA/Brown

descriptive term to domain names associated with plaintiff's goods or services constitutes counterfeiting. *See Dell Inc. v. BelgiumDomains*, LLC, No. 07-22674-CIV, 2007 WL 6862342, at *7 (S.D. Fla. Nov. 21, 2007).

Transamerica sufficiently alleges all of the required elements of service mark counterfeiting by Stroh. Stroh employed Transamerica's service marks on his or her website in a manner likely to cause confusion. Moreover, the Court finds Stroh's actions to be willful in that Stroh has acted in "bad faith" and with "reckless disregard" for the known trademark rights of Transamerica.

**B.     Count III – Service Mark Infringement**

To prevail on a service mark infringement claim under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)(a), Transamerica must show (1) its mark has priority; (2) Stroh used Transamerica's mark in commerce; and (3) Stroh's use of the service mark is or was likely to deceive, cause confusion or result in mistake. *See Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc*., 303 F.3d 1242, 1248 (11th Cir. 2002).

Upon review of the allegations included in the Amended Complaint, there can be no dispute that Stroh's use of Transamerica's marks poses a substantial likelihood of consumer confusion. The Court concludes Transamerica has sufficiently alleged all of the required elements of service mark infringement and finds Stroh liable for infringement of Transamerica's service mark.

**C.     Count V - Cybersquatting**

The Anticybersquatting Consumer Protection Act (the "ACPA") defines cybersquatting as "the (1) registration, use, or trafficking in, a domain name (2) that is identical or confusingly similar

4

Case No. 09-60973-CIV-ALTONAGA/Brown

to a distinctive or famous trademark, (3) with a bad-faith intent to profit from the mark." *Dell Inc.*,

2007 WL 6862342, at *5 (citing 15 U.S.C. § 1125(d)).

To determine whether a defendant possesses the required bad-faith intent to profit from

Transamerica's marks, courts consider nine factors:

(1) the trademark or other intellectual property rights of the defendant, if any, in the domain names;

(2) the extent to which the domain names consist of the legal name or commonly used names of the defendant;

(3) the defendant's prior use of the domain names for the bona fide offering of goods or services;

(4) any bona fide noncommercial or fair use of the mark under the domain names;

(5) the defendant's intent to divert consumers from the plaintiff's websites to the defendant's websites by creating a likelihood of confusion;

(6) the defendant's offer to transfer, sell, or otherwise assign the domain names to the plaintiff or others for financial gain;

(7) the defendant's provision of material and misleading false contact information when registering the domain names and its intentional failure to maintain accurate contact information;

(8) the defendant's registration or acquisition of multiple domain names that they know are identical or confusingly similar to marks of others; and

(9) the extent to which the plaintiff's marks are or are not distinctive and famous.

*See* 15 U.S.C. §§ 1125(d)(1)(B)(i)(I)–(IX).

The Court finds that each of the bad-intent factors weighs in favor of Transamerica and

against Stroh.  In sum, Transamerica has alleged a sufficient basis to find Stroh liable for

cybersquatting.

5

Case No. 09-60973-CIV-ALTONAGA/Brown

**D.      Count VII – Unfair Competition**

To establish a claim of unfair competition under the Lanham Act, a plaintiff must show it has prior rights to the mark at issue, and the defendant adopted a name or mark that was the same or confusingly similar to plaintiff's mark such that consumers were likely to confuse the two. *See* 15 U.S.C. §1125(a). Transamerica has alleged facts sufficient to find Stroh engaged in unfair competition under federal law.

**E.      Counts VIII and X – Trademark Dilution Under Federal and Florida Law**

Federal and Florida law on trademark dilution require plaintiffs to plead facts sufficient to establish four elements: (1) the plaintiff's mark is famous; (2) the defendant adopted the mark after the plaintiff's mark became famous; (3) the defendant's mark diluted the plaintiff's mark; and (4) the defendant's use was commercial and in commerce. *See* 15 U.S.C. § 1125(c) and Fla. Stat. § 495.151.

Upon a review of the allegations in the Amended Complaint, the Court concludes the facts pleaded by Transamerica are sufficient to state a claim of trademark dilution. Transamerica has alleged facts, that if taken as true, show Stroh's actions constituted dilution of Transamerica's mark under federal and Florida law.

**F.      Count IX – Common Law Unfair Competition**

To prevail on its Florida common law unfair competition claim, Transamerica must prove (1) Transamerica is the prior user of the service mark; (2) the service mark is arbitrary or suggestive or has acquired secondary meaning; (3) Stroh is using a confusingly similar service mark to indicate or identify similar services rendered by Stroh in competition with Transamerica in the same trade

6

Case No. 09-60973-CIV-ALTONAGA/Brown

area in which Transamerica has already established its service mark; and (4) as a result of Stroh's actions, consumer confusion as to the source or sponsorship of the services is likely. *See Am. United Life Ins. Co. v. Am. United Ins. Co.*, 731 F. Supp. 480, 486 (S.D. Fla. 1990). "Under Florida law, the plaintiff must show either 'that the public would be tricked' or that the plaintiff will be damaged because persons dealing with the defendant are likely to believe they are dealing with the plaintiff." *Id.* (quoting *Sun Coast, Inc. v. Shupe*, 52 So. 2d 805, 806 (Fla. 1951)).

The Court concludes Transamerica has alleged sufficient facts to sustain a finding of common law unfair competition by Stroh. Accordingly, the Court concludes the Plaintiff's Motion for Default Judgment as to Defendant Jan Stroh for Counts I, III, V and VII-X should be granted.

**IV. RELIEF**

Transamerica seeks statutory damages for counterfeiting and cybersquatting, injunctive relief, and attorney's fees and costs against Stroh. "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). While Federal Rule of Civil Procedure 55(b)(2)(b) permits the court to conduct hearings on a default judgment when it needs to determine the amount of damages, an evidentiary hearing is not necessary if the plaintiff submits sufficient evidence to support the request for damages. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

7

Case No. 09-60973-CIV-ALTONAGA/Brown

**A.      Statutory Damages for Counterfeiting**

The Lanham Act permits statutory damages in lieu of actual damages for service mark counterfeiting.  *See* 15 U.S.C. § 1117(c).  Transamerica seeks $2,000,000.00 in statutory damages under the Lanham Act (*see* Mot. at 1), which is the maximum amount available when the court finds the use of the mark was willful.  15 U.S.C. § 1117(c)(2).  But Transamerica has not provided the Court with sufficient justification to support such an award, and thus no such damages are awarded.[1]

**B.      Statutory Damages for Cybersquatting**

The Lanham Act also permits statutory damages for cybersquatting in lieu of actual damages. *See* 15 U.S.C. § 1117(d); 1125(d)(1).  Statutory damages range from "not less than $1,000 and not more than $100,000 per domain name, as the court considers just."   15 U.S.C. § 1117(d). Transamerica seeks $100,000.00 for cybersquatting, which is the maximum amount available against Stroh for the use of a single domain name.  While damage awards provide restitution and reparation for injury, they also serve to deter wrongful conduct.  *See E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 278 (5th Cir. 2002).  Transamerica justifies its claim by pointing to the criminal intent, fraud and concealment, and the complexity of the scheme employed by Stroh.  (*See* Mot. at 17). Because Stroh has engaged in cybersquatting, fraud and concealment, the Court finds an award of $100,000.00 in damages to be appropriate.

---

[1]  By way of examples, the Court *again* directs Transamerica to *Abercrombie & Fitch Trading Co. v. Importrade USA, Inc.*, No. 07-23212-CIV (S.D. Fla. Aug. 18, 2009), and the analysis provided by the plaintiff in its motion for summary judgment regarding damages [D.E. 51], filed on July 10, 2009; and to *Nike, Inc. v. Lydner*, No. 6:07-cv-01654, 2009 WL 4426633, at *4 (M.D. Fla. Sep. 25, 2008).

Case No. 09-60973-CIV-ALTONAGA/Brown

**C.     Injunctive Relief**

Transamerica seeks injunctive relief under section 34(a) of the Lanham Act, 15 U.S.C. § 1116(a), asking the Court to permanently enjoin Stroh from further use of the Transamerica name and service marks.  Section 43(c) of the Lanham Act also provides injunctive relief against another party's commercial use of a trademark if the other's use begins after the mark has become famous and causes dilution of the distinctive quality of the mark.  *See* 15 U.S.C. § 1125(c); *Portionpac Chem. Corp. v. Sanitech Sys., Inc.*, 217 F. Supp. 2d 1238, 1250 (M.D. Fla. 2002).

"[A]n injunction is an equitable remedy . . . [that] should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'"  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)).  A plaintiff who seeks a permanent injunction must show (1) it has suffered irreparable injury; (2) remedies at law are inadequate to compensate it for that injury; (3) a remedy in equity is warranted in light of balancing the hardships between the plaintiff and defendant; and (4) the public interest would not be disserved by a permanent injunction.  *See id.*; *see also eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006).

The Court agrees with Transamerica's allegations it has suffered irreparable injury to its service marks by the infringement, dilution, counterfeiting and cybersquatting activities of Stroh.  Because monetary damages are unlikely to deter Stroh, who has failed to respond to this suit, remedies at law are unlikely to compensate Transamerica for its injury.  Moreover, if Stroh is not prohibited from using the Transamerica marks, the public will likely continue to be deceived by Stroh's conduct.

Case No. 09-60973-CIV-ALTONAGA/Brown

Hardship to Transamerica in the form of continued dilution to its marks, lost profits and commerce, and consumer misrepresentations about the quality of Transamerica's products will likely continue if Stroh is not enjoined.  The harm to Stroh as a result of an injunction is that Stroh will be precluded from continuing the trademark violations and be prohibited from benefitting from monetization schemes.  Thus, the balance of the hardship between the parties favors Transamerica and the issuance of an injunction.

Finally, the global public would surely benefit from an injunction because it would protect them from Stroh's unlawful conduct.

In sum, because Transamerica has demonstrated the factors necessary for a permanent injunction, and because the Court cannot be assured that Stroh will not engage in similar behavior in the future, the Court grants the injunctive relief sought by Transamerica.

**D.     Attorney's Fees and Costs**

Transamerica also seeks attorney's fees and costs.  Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a). Generally, courts award fees and costs upon evidence of "malicious, fraudulent, deliberate, or willful" conduct by the infringing party.  *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994) (internal quotation marks omitted).  "[T]he correct standard in the Eleventh Circuit is fraud or bad faith."  *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1320 (11th Cir. 2001) (citing *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160 (11th Cir. 1982)). Ultimately, "the decision to grant attorney fees remains within the discretion of the trial court."

Case No. 09-60973-CIV-ALTONAGA/Brown

*Burger King Corp.*, 15 F.3d at 168.  However, the court must articulate the basis for awarding fees. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1205 (11th Cir. 2001).

Transamerica's well-pleaded allegations, supported by the affidavit of Bruce A. McDonald and its attachments, establish Stroh has engaged in fraud and acted in bad faith.  (*See* Mot., Ex. A). The result of Stroh's infringement, dilution and cyberpiracy activities has been to not only harm Transamerica and its service mark, but to deceive unassuming consumers seeking out a reputable insurance company on the Internet.  Stroh's willful cybersquatting harmed Transamerica and its service mark.  This "malicious, fraudulent, deliberate [and] willful" conduct by Stroh substantiates Transamerica's claim for reasonable attorney's fees and costs under 15 U.S.C. § 1117(a).

However, an award of attorney's fees must be reasonable.  *See id.*  "The party seeking an award of fees should submit evidence supporting the hours worked and the rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (discussing reasonable fees under the Civil Rights Attorney's Fees Awards Act); *see also ALPO Petfoods, Inc. v. Ralston Purina Co.*, 778 F. Supp. 555, 566 (D.D.C. 1991),  amended by No. Civ. A. 86-2728, 1991 WL 1292963, at *12-13 (D.D.C. Dec. 4, 1991) (calculating and recalculating attorney's fees in Lanham Act case).

Transamerica seeks $50,000.00 in attorney's fees, but fails to provide any calculation of time and hourly rates in support of its request.  Rather, Transamerica states its attorney's fees have "exceeded all expectations by reason of multiple Rule 11 motions filed by the Moniker Defendants. Arguably the responsibility for attorney fees induced by the Moniker Defendants should be visited upon the John Doe Defendants."  (*See* Mot., Ex. A, ¶ 21).  The Court disagrees.  Transamerica agreed to dismiss the Moniker Defendants, "having amicably resolved their differences . . . ."  (*See*

11

Case No. 09-60973-CIV-ALTONAGA/Brown

Joint Stip. for Dismissal with Prejudice [D.E. 72]).  There is no relationship between the actions of the Moniker Defendants and Jan Stroh justifying the imposition of fees on Stroh.   While Transamerica is entitled to reasonable attorney's fees, those fees must be reasonable as to this defendant in default and with due consideration to the other John Doe Defendants named in this suit.

For these reasons, Transamerica's claim for attorney's fees against Stroh in the amount of $50,000.00 is denied.

## V.  CONCLUSION

Consistent with the foregoing analysis, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.      Plaintiff, Transamerica's Motion for Default Final Judgment Against Jan Stroh **[D.E. 113]** is **GRANTED in part** and **DENIED in part**.

2.      Transamerica is granted final judgment by default against Defendant Jan Stroh on Counts I, III, V, VII, VIII-X of the Amended Complaint for violations of the Anticounterfeiting Consumer Protection Act, 15 U.S.C. § 1114(1); the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); unfair competition under the Lanham Act, 15 U.S.C. 1125(a); trademark dilution under federal and Florida law, 15 U.S.C. § 1125(c) and Fla. Stat. § 495.151; and common law unfair competition.

3.      Defendant Jan Stroh, collectively and individually, and his or her officers, shareholders, partners, principals, agents, assignees, beneficiaries, successors, licensees, distributors, attorneys, proxies, alter egos, aliases, and all other persons

12

Case No. 09-60973-CIV-ALTONAGA/Brown

acting in concert with Jan Stroh collectively or individually, be, and hereby are permanently enjoined, from

(a)    registering or using as a trade name, trademark, service mark, Internet domain name, or portion thereof, any name or term that incorporates, imitates, or is confusingly similar to Plaintiff's "Transamerica" service mark;

(b)    purchasing, selling, or using any form of advertising including keywords or Adwords in Internet advertising containing any mark that incorporates, initiates, or is confusingly similar to Plaintiff's "Transamerica" service mark, and requiring Jan Stroh, when purchasing or selling Internet advertising using keywords, Adwords or the like, to activate the name "Transamerica" as a negative keyword or negative Adword in any Internet advertising purchased, sold or used;

(c)    infringing Plaintiff's "Transamerica" service mark, including all written and spoken terms equivalent or confusingly similar thereto;

(d)    using Plaintiff's "Transamerica" service mark, or any name or mark that incorporates, imitates, or is reminiscent of or confusingly similar thereto, for any product or service, or in any letterhead, sign, website, advertising or promotion, e-mail or other sales solicitation or business listing, either in print, broadcast, electronic or other form, either separately or compositely with other words;

13

Case No. 09-60973-CIV-ALTONAGA/Brown

(e)     using Plaintiff's "Transamerica" service mark, or any name or mark confusingly similar thereto, as a corporate and/or trade name and/or fictitious name or portion thereof;

(f)     making representations, directly or indirectly, to anyone, anywhere, by any means, including but not limited to unauthorized co-branding, that this Defendant is related to, associated or affiliated with, or sponsored, endorsed or approved by Plaintiff;

(g)     in any manner depicting, uttering or imitating Plaintiff's "Transamerica" service mark for the purpose of misappropriating the trade and goodwill of Plaintiff by association, imitation, fraud, mistake or deception; and

(h)     unfairly competing with Plaintiff in any manner.

4.     Transamerica is awarded statutory damages of $100,000.00, pursuant to the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

5.     Transamerica is entitled to reasonable costs pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a).

6.     Transamerica's claim for attorney's fees in the amount of $50,000.00 is **DENIED**.

7.     The Clerk is directed to mark this case as **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of April, 2010.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

14